| FIRE DEPARTMENT ADMINISTRATIVE PROCEDURE | | | City of Shreveport | |
|---|---|---|---|---|
| Issued by: | Distribution: | Effective Date: | Revised: | No. |
| Edwin S. Wolverton, Fire Chief | All Personnel | April 8, 2008 | 09/16/2021 | 7 |
| Subject: | Sick Leave and Family Medical Leave Act (FMLA) | | | |
| Review: April | | | | |

**1. Purpose and Scope**

1.1. To establish a clear and easily understood policy as it relates to civil service members who are unable to perform their duty due to illness or injury. To establish policy as it relates to members being fit for duty. To provide members with information concerning their rights under the Family Medical Leave Act (FMLA) and Civil Service **R. S. 33:1995:** *"Every firefighter in the employment of a municipality, parish, or fire protection district shall be entitled to full pay during sickness or incapacity not brought about by his/her own negligence or culpable indiscretion for a period of not less than fifty-two weeks."*

**2. Policy**

2.1. It shall be the policy of the Shreveport Fire Department to require regular and predictable attendance from every member employed by the Shreveport Fire Department. Members, who are absence due to a fraudulent use of leave, abuse of leave, or any situation where the member takes advantage of sick leave, will be subject to disciplinary action. Members who do not strictly adhere to this policy are subject to disciplinary action.

**3. Privacy Statement**

3.1. Shreveport Fire Department members shall take every possible and responsible action to secure and maintain confidentiality of protected health information they may encounter in the course of their duties. **Privacy Statement:** *Release of any member's protected health information to a non-covered entity, agency, department, or person must conform to the policy and procedures of the covered entity from which it was obtained, or as may be permitted under HIPAA, or as authorized or required herein, or by another law which supersedes. As such the employer will restrict the release of the following information to only those individuals that must have access to the information to complete their job function. Restricted information will include: Social Security Number; Date of Birth; Address or confinement location; Family information; Medical Condition or Disease; Dr. /Healthcare Provider notices; SFD Sick Leave Certificates; Substance Abuse Screening Results; Member Assistance Information; and FMLA Forms.*

**4. Fit for Duty**

4.1. Members reporting for duty must be able to perform the 14 essential job tasks according to NFPA 1582 and designated functions of their civil service position in a



EXHIBIT

1

safe, effective, efficient, and productive manner. Should reasonable cause exist to question a member's fitness for duty (e.g., injury, extensive use of sick leave, documented performance deficits, etc.), the member may be temporarily removed, reassigned, or temporarily prohibited from returning to duty until evaluated as ordered by the Fire Chief.

4.2. In the event a member has a serious health condition or upon reasonable cause, he or she must successfully complete "Fit for Duty" evaluations to return or remain in their positions as ordered by the Fire Chief. Members shall not be released back from sick leave unless they can perform the essential functions of their assigned position. Essential functions include but are not limited to:

4.2.1. Have regular and predictable attendance.

4.2.2. Meet production standards established by management for the position.

4.2.3. Meet efficiency standards established for doing a function.

4.2.4. Perform duties or tasks efficiently and safely.

4.2.5. Behave in a socially-acceptable manner.

**5. Fit for Duty Evaluation**

5.1. The nature and circumstances surrounding the "Fit for Duty" question will decide the type of evaluation and the necessary documentation required from the member. The Fire Chief reserves the right to make final decisions in determining the type of evaluation needed based on the facts associated with each member's sick leave usage.

**6. Sick Leave General Guidelines**

6.1. Permanent members may be granted up to 365 consecutive calendar days sick leave, if conditions warrant, as is provided for in LRS 33:1995. A Civil Service member on sick leave for 365 consecutive calendar days may be subject to termination on the 366th. Per the Shreveport Fire & Police Civil Service Board; any extension of sick leave beyond the 365 days maximum shall be with pay, as the board may determine to be in the public interest, at the request of the appointing authority or the employee at least 30 days prior to the expiration of the 365 days.

6.2. Members are responsible for providing their physicians with a clear description of their job duties and the availability of limited / modified duty assignments. When a member is placed on sick leave the Fire Chief or his designee may send a job description to the member's physician.

6.3. Incapacitation related to pregnancy shall be treated the same as any other incapacitating illness as far as it concerns eligibility for sick leave.

6.4. An interruption of any working test period due to injury or illness will be added to the

remaining working test period. Before the working test period ends, the total number of days of sick leave taken during the test period will be tabulated and that number of days added to the test period.

6.5. Sick leave may not be used in the following instances:

6.5.1. Result of intentional self-inflicted injury

6.5.2. Illegal substance abuse or alcohol abuse unrelated to treatment program (example: being unable to report to duty due to a hangover)

6.5.3. Illness or injury incurred while in the commission of a criminal act

6.6. Sick leave may be used in the following instances:

6.6.1. Illness

6.6.2. Injury

6.6.3. Pregnancy-related conditions in accordance with The Pregnancy Discrimination Act of 1978 states that discrimination on the basis of pregnancy or childbirth constitutes unlawful sex discrimination under Title VII of the Civil Rights Act of 1964 [1].

6.6.4. Exposure of a member to a contagious disease which would have the potential of jeopardizing the health of the member or the health of others

6.7. Members are expected to make every reasonable effort to schedule appointments for times when the member is not scheduled to be on duty or times that would cause the least disruption of their work responsibilities. Medical examination appointments that are not disruptive to operational efficiency are generally acceptable without use of sick leave however; members must have approval from their immediate supervisor.

6.8. Members working the 40-hour work week may be allowed to schedule medical, dental, or optical appointments and treatments with permission granted from their immediate supervisor.

**7. Reporting Sick Leave**

7.1. When a member is unable to report for duty due to illness or injury, the notification process is as follows:

7.1.1. Operations personnel must inform the on-duty Assistant Chief (or designee) at least four (4) hours before their duty shift begins.

7.1.2. Communications personnel must inform the Chief of Communications (or designee) at least 1 ½ hours before their duty shift begins.

7.1.3. All Other Divisions must contact their Division Chief (or designee) at least 1

hour before their duty shift begins.

7.2. If the member cannot reach their supervisor by phone, they shall contact Communications to have their supervisor paged.

7.3. If a member is unable to complete a tour of duty due to illness or injury they shall notify their immediate supervisor before leaving their assignment. The supervisor will then be responsible for reporting the member's leave up their chain of command to ensure that the Assistant Chief or Division Chief is notified in a timely manner.

**8. Validation of Illness or Injury**

8.1. If substantial evidence suggests that a member's reason for sick leave is questionable, the Fire Chief or his/her designee may require a licensed health care provider's certification of illness or injury, at the member's expense.

8.2. A second opinion may be requested at the expense of the department, upon approval of the Fire Chief.

8.3. Failure to provide requested certification within two business days may result in disciplinary action.

8.4. Per The Municipal Fire and Police Civil Service Board Shreveport, Louisiana Rules and Regulations Subpart C – Leaves of Absence Section 2. Sick Leave the department can verify the initial and continuing necessity for sick leave. For sick leave of more than (2) two weeks the verification is mandatory. The member's chain of command shall follow up with phone calls and/or visits to verify sick leave usage for more than (2) two calendar days. If the member is found to be in violation of Louisiana R.S. and/or SFD policies, procedures, rules and regulations; then SFD AP 2 Corrective Action and Commendation Procedures will be followed.

**9. Activities While on Sick Leave**

9.1. Members on sick leave for less than (30) days shall remain at their residence for the entire sick leave period except to participate in the following activities:

9.1.1. Voting

9.1.2. Religious activities

9.1.3. Obtaining medication

9.1.4. Doctors' Appointments.

9.1.5. Going to grocery store for food and/or restaurant

9.1.6. Taking or picking up children from school or childcare

9.2. Members on extended sick leave (30) days or more shall not be confined to their home or required to report to their department on a daily basis if they desire to leave their home per the Municipal Fire and Police Civil Service Board Shreveport, Louisiana Rules and Regulations Subpart C – Leaves of Absence Section 2. Sick Leave. The member may not engage in any activity that may hinder recovery, cause further injury or illness, or delay their return to duty in a timely manner. The member may not engage in any job/employment activity (compensated or not) while on sick leave. No employee shall engage in any activity (recreational, including, but not limited to, i.e. hunting, fishing, sport). No employee shall perform any other job employment duties or extra duty while on sick leave. Restrictions that apply for the police and fire department will be applicable to any other job employment.

9.3. The Fire Chief, Deputy Fire Chief, or member's Assistant Chief, or Division Chief for members in divisions other than Operations, must approve any activity that is a deviation from the restrictions mentioned above. All approved deviations from restrictions must be documented in the sick leave book to include who approved, date & time, and what the policy deviation was.

9.4. Members on sick leave shall not engage in any activity that would cause further illness or injury to present medical status.

9.5. Members shall not perform any secondary employment (Non-Shreveport Fire Department) duties while on sick leave. Restrictions that apply for the fire department will be applicable to any other job employment.

9.6. Members shall not attend college or vocational/technical courses while on sick leave unless approved by the Fire Chief. Members may attend SFD classroom classes at the Shreveport Fire Academy if their attendance does not jeopardize or delay their recovery process and their medical provider must provide a letter indicating this – The letter must be provided to the Chief of Special Operations and Safety prior to attending class. Attending classes while on sick leave does not indicate a release from sick leave or change in sick status to Limited/Light Duty. The member is still on sick leave and will be using sick leave time.

**10. Members Must Communicate**

10.1. Operations- Members who call in prior to their shift shall contact their Battalion Chief prior to their shift being relieved the next day and advise him/her if they will be reporting back to duty for the next shift. This will not be required if a member has a Sick Leave Use Certificate submitted for the sick leave usage period to the Assistant Chief's office. Operations Assistant Chiefs reserve the right to have the member's Battalion Chief to make welfare visits.

10.2. Communications- Communications members on sick leave are required to check in with the Chief of Communications daily unless they have a Sick Leave Use Certificate with a return to duty date or a next evaluation date on file. If they have the Sick Leave Use Certificate with that information, the member shall contact the Chief ofCommunications weekly. The Chief of Communications reserves the right to make welfare visits.

10.3. All other Divisions- Division personnel on sick leave are required to check in with their Division

Chief daily unless they have a Sick Leave Use Certificate with a return to duty date or a next evaluation date on file. If they have the Sick Leave Use Certificate with that information, the member shall contact their Division Chief weekly. Division Chiefs reserve the right to make welfare visits on the member utilizing sickleave

**11. Sick Leave Documentation**

11.1. Each time a member is off duty on sick leave, he or she must complete the top portion of the SFD Sick Leave Use Certificate and submit to their Assistant/Division Chief, even if the member is not required to seek medical care. The Sick Leave Use Certificate is to be filled out by the member. The member's supervisor shall sign the Sick Leave Form and the original shall be sent through the proper channels to the Chief of Special Operations and Safety to be filed in the individuals medical records. **Only original Sick Leave Use Certificates will be accepted, no Fax, Scanned, or emailed copies will be allowed.**

11.2. If a physician is required or if the members seeks medical care, the member and the physician shall complete the Sick Leave Use Certificate and the physician must complete the lower portion of the form (Physician's Report and Instructions) or provide a Doctor's note on the Doctor's letterhead with the required information. A physician must be seen if:

11.2.1. Operations personnel shall provide a Sick Leave Certificate with a physician's signature for any sick leave equal to or greater than two consecutive 24 hour shifts. Operations personnel will be required to submit a Sick Leave Use Certificate with physician's release for all sick leave use after (3) three non-consecutive sick leave usage within the fiscal year.

11.2.2. Communications personnel shall provide a Sick Leave Certificate greater than two consecutive 12 hour shifts (two calendar days). Communications personnel will be required to submit a Sick Leave Use Certificate with physician's release for all sick leave use after (6) six non-consecutive sick leave usage within the fiscal year.

11.3. All other Divisions shall provide a Sick Leave Certificate with a physician's signature for any sick leave greater than four (4) consecutive calendar days. Division personnel will require a Sick Leave Use Certificate with physician's release for all sick leave use after (6) six non-consecutive sick leave usage within the fiscal year.

11.4. Members who do not submit the proper documentation shall not be allowed to return to duty and shall be considered on sick leave until the form is completed as explained in 11.1 and 11.2. Operations and Communications personnel – calling in sick on the last shift of tour and 1st shift back is considered consecutive. Division Personnel – calling in sick on Friday and the following Monday is considered consecutive.

11.5. A copy of all SFD Sick Leave Use Certificates and healthcare provider documentation shall be forwarded to the Chief of Special Operations and Safety for documentation into member's medical file.

**12. Orthopedic or illness that does not incapacitate Employee**

12.1. When a member is off work with an orthopedic injury or illness that does not incapacitate the member they may be placed on limited/modified duty status. The member will inform their physician that there are other accommodations (modified duty assignment) available to Shreveport Firefighters. The modified assignment will be non-firefighting / emergency service duties.

12.2. Restrictions that apply for the fire department will be applicable to any other job employment.

12.3. Once a member is allowed to drive and is off narcotic medications they may be assigned to limited duty status at the discretion of the Fire Chief. The following conditions must be met:

- An expected full recovery date provided by Doctor
- Clear to drive
- Off narcotic medications
- Identified restrictions

**13. Post-Traumatic Stress Injury**

13.1. A member who submits a Sick Leave Certificate for PTSD/PTSI shall follow the guidelines established by the State of Louisiana Revised Statues 33:2581.2 and shall be diagnosed by a Psychiatrist or Psychologist.

13.2. Prior to returning to work from a PTSD/PTSI diagnosis the employee will complete a Return to Work evaluation from a Shreveport Fire Department contracted Mental Health Professional meeting or exceeding that stated in LA RS 33:2581.2.

**14. Pregnancy**

14.1 When a member of the department becomes pregnant they should consult their personal physician on what their work status should be. They should evaluate the hazards they be exposed to and the possible adverse effects to themselves and to the fetus. The pregnant member may continue full duty or accept a temporary modified assignment during the pregnancy period. The Hazards faced by pregnant firefighters are identified in NFPA 1582: Annex D.

14.2 The Pregnancy Discrimination Act of 1978 states that discrimination on the basis of pregnancy or childbirth constitutes unlawful sex discrimination under Title VII of the Civil Rights Act of 1964 [1]. Women who are pregnant or have related conditions must be treated in the same manner as other applicants or employees with similar abilities or limitations. An employer may not force a pregnant employee to take disability leave if she is able to work and cannot remove her from her duty assignment if she is able and willing to perform it. The Pregnancy Discrimination Act applies to most employers that have 15 or more employees.

**15. Long Term Sick Leave**

15.1. Members will be considered on "long term sick leave" once they have been on sick leave thirty (30) days for one sick leave usageperiod.

15.2. An initial SFD Sick Leave Use Certificate must be submitted to themember's Assistant/Division Chief within three days of day thirty (30) of sick leave.

15.3. Members on long term sick leave are expected to follow the same activity limitations as any other sick leave usage as outlined in Section 9 and Section 10 of thisdocument.

15.4. Members on long term sick leave are required to submit a completed Original SFD Sick Leave Use Certificate for each calendar month that they are on sick leave or when a work status change has taken place to their Assistant/Division Chief.

15.5 It shall be the responsibility of the member to ensure that these forms are submitted within the time requirements.

15.6 It shall be the responsibility of the member's Assistant/Division Chief to forwardcopies of all sick leave documentation to the Chief of Special Operations andSafety.

15.7 Members who have been on long term sick leave must obtain a "Release for Duty" from WK Work Kare or SFD designated Occupational /Mental Health provider, before reporting back to work. Once a member has the Sick Leave Use Certificate completed by their physician and has the proper documentation to show that the member has been cleared by his or her physician to return to duty, and there is a return to duty date, the member shall:

15.7.1 Call the Chief of Special Operations and Safety (318-673-6760) and request a Return to Work Physical.

15.7.2 The Chief of Special Operations and Safety will schedule a "Return to Duty" or "Fit for Duty" physical, depending on which is applicable, for the member through Willis Knighton Work Kare System or appropriate Occupational / Mental Health Medical Provider. Per Shreveport Fire and Police Civil Service Board Rules Section 2. Sick Leave (h) if an employee returns from sick leave of any duration with a release to full duty signed by a qualified medical provider, the employee may not be maintained on sick leave for more than seven (7) days for the Police Department or Fire Department to conduct any and all verification procedures. If the Appointing Authority is unable to complete its verification procedures within seven (7) days, the employee shall be transferred to Departmental Leave until said verification procedures are complete. Once transferred to Departmental Leave, said employee shall not be confined to the employee's home nor shall the employee be required to check in with anyone at either department when leaving their home. However, the employee shall notify the respective department if that employee intends to leave town overnight during the week so as not to interfere with any verification procedures.

15.7.3 Once the member has completed the physical and is released to return to duty, the occupational medical provider will notify the Chief of Special Operations and Safety. The Chief of Special Operations and Safety will notify the member's Assistant/Division Chief of the "Release for Duty" from Work Kare.

15.7.4 Members will be provided with re-entry training if off for more than 4 months (120 days) on

extended sick leave. The re-entry training will be completed at the academy prior to returning to work. The re-entry training may be completed after missed vacation time is taken, this will be coordinated with the Shift Commander/Division Chief and approved by the Deputy Fire Chief and/or Fire Chief.

**16. On-duty Injury or Illness**

16.1. A member who sustains a work related on-duty injury or illness is subject to receive Workers' Compensation and shall be treated at Willis Knighton Work Kare, unless it is a critical injury requiring emergency room care, or if it is after normal business hours. If a member sustains a work related injury or illness and cannot return to work, then the member shall be placed on sick leave.

16.2. The Chief of Special Operations and Safety shall be notified of any work related on-duty injury or illness as soon as possible.

16.3. On-duty injuries will be recorded on the all required Shreveport Fire Department and City of Shreveport accident and member injury reports.

16.4. Members on sick leave as result of a work-related injury or illness are subject to limited duty assignments.

16.5. Presumptive Disability Laws in Louisiana – Members who file a workers compensation claim due to presumptive laws should follow the specific Revised Statute requirements.

16.5.1. R.S. 33:1948. Development of Hepatitis B or Hepatitis C during employment in fire or police service
16.5.2. R.S. 33:2011. Development of cancer during employment in fire service
16.5.3. R.S. 33:2581. Development of heart and lung disease during employment in classified fire service
16.5.4. R.S. 33:2581.1. Development of hearing loss during employment in the classified fire service
16.5.5. R.S. 33:2581.2. Posttraumatic Stress Injury

**17. Sick Leave Usage While on Scheduled Time Off**

17.1. Members may become ill or have scheduled medical procedures (in-patient or out- patient) completed while on scheduled time off and are not required to use sick leave. However, it is the responsibility of the member to inform their Assistant Chief/Division Chief that a medical procedure was done and shall provide a return to full duty release from their physician on an SFD Sick Leave Use Certificate or on the physician's letterhead, prior to returning to work from the scheduled time off.

17.2. Any sick or injured member who deems it necessary to go on sick leave while on scheduled leave (Vacation or Holiday Time) will immediately contact the on-duty Assistant/Division Chief and explain the situation. The member will then see a physician for an examination and/or treatment. Immediately following the examination by a licensed physician, the member will

again contact the on-duty Assistant/Division Chief and provide written results of the examination.

17.3. Prior to returning to work or returning to scheduled leave, the member must submit a doctor's release, on the SFD Sick Leave Use Certificate to the Assistant/Division Chief.

17.4. A member who meets the requirements of this policy will not forfeit any scheduled leave from the date of documented illness or injury.

**18. Supervisors Recording Sick Leave Use**

Assistant Chiefs and Division Chiefs must record all sick leave used by their assigned members and maintain that information on their annual sick leave spreadsheet. This spreadsheet is located on the City of Shreveport shared "H" Drive in Common Forms under SFD Sick Leave ICON.

18.1. Assistant Chiefs and Division Chiefs shall ensure their assigned members complete all required documentation as required by this administrative procedure and copies are forwarded to the Chief of Special Operations and Safety in the designated sick leave folder.

**19. Patterns of Absenteeism and Fraudulent Use of Sick Leave**

19.1. Members should not establish patterns of absenteeism. This may indicate abuse of leave. Sick leave patterns that reflect trends such as calling in sick leave on weekends and 1st and 5th shifts shall be followed up with a physical visit to the member's residence by the Assistant/Division Chief's designee and documented in the Assistant/Division Chief's Sick Leave Spreadsheet. Members who display a pattern or trend of abuse shall be addressed with the department's progressive discipline policy in AP #2.

19.2. Members shall not abuse leave privileges or fraudulently use leave. Abusive Absenteeism is taking leave in a manner for which it was not intended. (Example: using it in a predictable pattern is substantial evidence of abusive use.)

**20. Family Medical Leave Act**

20.1. For any seventy-two consecutive hour period of sick leave for a serious health condition or for a covered relative, the member may be eligible for family medical leave under the Family Medical Leave Act (FMLA) of 1993. The member must apply for such leave within seven days of eligibility.

20.2. When it is foreseeable that a member's absence due to illness, injury or other circumstances may be covered by FMLA, the department will:

20.2.1. Provide the member with a Certification of Health Care Provider packet.

20.2.2. Send a letter, with delivery confirmation, to the member on the fifteenth day of the absence requesting that they return the completed packet.

20.3. A member's failure to return the completed Certification of Health Care Provider packet may disqualify them from access to FMLA leave for the event in question. See attached Appendix on FMLA for more information.

Louisiana Revised Statutes for Firefighters

**RS 33:1948. Development of Hepatitis B or Hepatitis C during employment in fire or police service; occupational disease**

A. Because of exposure to blood and saliva of accident and crime victims, when a firefighter or policeman in the classified service, who has completed two or more years of service, has contracted Hepatitis B or Hepatitis C, such disease shall be deemed an occupational disease or infirmity connected with the duties of a firefighter or policeman. The disease or infirmity shall be presumed to have been caused or to have resulted from such work performed. The presumption shall be rebuttable by evidence meeting judicial standards, and shall be extended to a member following termination of service for a period of three months for each full year of service not to exceed sixty months commencing with the last actual date of service. The presumption shall also be rebuttable by evidence that the otherwise eligible affected member was at the time of diagnosis of Hepatitis B or C, or within one year of such diagnosis, unlawfully using controlled substances by means of intravenous injection, or lived in an intimate relationship with any person who has been diagnosed with Hepatitis B or C.

B. The affected member or his survivors shall be entitled to all rights and benefits as granted by state or federal law to which one suffering from an occupational disease is entitled as service connected in the line of duty.

C. The provisions of this Section shall not be construed to affect in any way the provisions of R.S. 33:2011 or R.S. 33:2581.

Acts 2001, No. 443, §1.

**RS 33: 2011. Development of cancer during employment in fire service; occupational disease**

A. Because of exposure to heat, smoke, and fumes or carcinogenic, poisonous, toxic, or chemical substances, when a firefighter in the classified service who has completed ten or more years of service has developed cancer, the cancer shall be classified as an occupational disease or infirmity connected with the duties of a firefighter. The disease or infirmity shall be presumed to have been caused by or to have resulted from the work performed. This presumption shall be rebuttable by evidence meeting judicial standards, and shall be extended to a member following termination of service for a period of three months for each full year of service not to exceed sixty months commencing with the last actual date of service.

B. The cancer referred to in Subsection A of this Section shall be limited to the types of cancer which may be caused by exposure to heat, smoke, radiation, or a known or suspected carcinogen as defined by the International Agency for Research on Cancer. The cancer shall also be limited to a cancer originating in the bladder, brain, colon, liver, pancreas, skin, kidney, or gastrointestinal or reproductive tract, and leukemia, lymphoma, multiple myeloma, prostate cancer, and testicular cancer, or any other type of cancer, due to occupational exposure, for which firefighters are determined to have a statistically significant increased risk over that of the general population.

C. The affected employee or his survivors shall be entitled to all rights and benefits as granted by state law to which one suffering an occupational injury is entitled as service connected in the line of duty.

D. The provisions of this Section shall not be construed to affect in any way the provisions of R.S. 33:2581.

Acts 1995, No. 214, §1; Acts 2004, No. 641, §1; Acts 2017, No. 287, §1.

**RS 33: 2581. Development of heart and lung disease during employment in classified fire service; occupational disease**

Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.

Added by Acts 1968, No. 337, §1. Amended by Acts 1975, No. 30, §1.

**RS 33: 2581.1. Development of hearing loss during employment in the classified fire service; occupational disease**

A. Any loss of hearing which is ten percent greater than that of the affected employee's comparable age group in the general population and which develops during employment in the classified fire service in the state of Louisiana shall, for purposes of this Section only, be classified as a disease or infirmity connected with employment. The employee affected shall be entitled to medical benefits including hearing prosthesis as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled, regardless of whether the fireman is on duty at the time he is stricken with the loss of hearing. Such loss of hearing shall be presumed to have developed during employment and shall be presumed to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment in such classified service. This presumption shall be rebuttable by evidence meeting judicial standards and shall be extended to an employee following termination of service for a period of twenty-four months.

B. Each person selected for appointment to an entry level position in the classified fire service on July 1, 2006, or thereafter shall submit to a baseline audiology examination. The appointing authority shall develop and implement policies and procedures for the administration of such examination. Such examination shall take place not later than one year after the selection of such person for such appointment.

Acts 2006, No. 649, §2, eff. July 1, 2006.

**RS 33: 2581.2. Posttraumatic stress injury; presumption of compensability**

A. Except as provided in Subsection E of this Section, any benefit payable to any emergency medical services personnel, any employee of a police department, or any fire employee for temporary and permanent disability when the employee suffers an injury or disease arising out of and in the course and scope of his employment, shall include coverage for posttraumatic stress injury.

B. For purposes of this Section, the following definitions shall apply:

(1) "Emergency medical services personnel" shall have the same meaning as it is defined pursuant to R.S. 40:1075.3 so long as the emergency medical services personnel is employed pursuant to this Chapter.

(2) "Employee of a police department" shall have the same meaning as it is defined pursuant to R.S. 33:2211.

(3) "Fire employee" means any person employed in the fire department of any municipality, parish, or fire protection district that maintains full-time regularly paid fire department employment, regardless of the specific duties of such person within the fire department. "Fire employee" also includes employees of nonprofit corporations under contract with a fire protection district or other political subdivision to provide fire protection services, including operators of the fire-alarm system when such operators are members of the regularly constituted fire department.

(4) "Posttraumatic stress injury" means those injuries which are defined as "posttraumatic stress disorder" by the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association caused by an event occurring in the course and scope of employment.

(5) "Psychiatrist" shall have the same meaning as it is defined pursuant to R.S. 23:1371.1.

(6) "Psychologist" shall have the same meaning as it is defined pursuant to R.S. 23:1371.1.

C. Except as provided in Subsection E of this Section:

(1) Any emergency medical services personnel, any employee of a police department, any fire employee, or any volunteer fireman who is diagnosed by a psychiatrist or psychologist with posttraumatic stress injury, either during employment in the classified service in the state of Louisiana pursuant to this Chapter or thereafter, shall be presumed, prima facie, to have a disease or infirmity connected with his employment.

(2) Once diagnosed with posttraumatic stress injury as provided for in Paragraph (1) of this Subsection, the employee affected or his survivors shall be entitled to all rights and benefits as granted by state law to one suffering an occupational disease and who is entitled as service connected in the line of duty, regardless of whether the employee is employed at the time of diagnosis.

D. A posttraumatic stress injury that arises solely from a legitimate personnel action such as a transfer, promotion, demotion, or termination, is not a compensable injury pursuant to this Chapter.

E. (1) Nothing in this Section shall modify the qualifications necessary to establish eligibility to receive benefits or the calculation of benefits to be paid under any Louisiana public pension or retirement system, plan, or fund.

(2) In case of a conflict between any provision of Title 11 of the Louisiana Revised Statutes of 1950, including any provision in Subpart E of Part II of Chapter 4 of Title 11 of the Louisiana Revised Statutes of 1950, and any provision of this Section, the provision of Title 11 of the Louisiana Revised Statutes of 1950 shall control.

Acts 2019, No. 122, §2.

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felecia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 4/25/19 | Job Related Stress/PTSD |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ______________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 5/30/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ______________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations** on: ______________ (Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work**. Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** __________

□ **Limited use of: R / L** __________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ______________

□ **Other Instructions:** ______________

**Physician's Signature:** [signature], LCSW **Date:** 25 April 19

EXHIBIT 2

TO BE COMP

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 5/30/19 | PTSD F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☐ **Return to work on:** ____________________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 6/27/19.

☐ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________________

☐ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ **Return to work-with limitations on:** ____________________ (Limitations must be indicated on this form.)

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

☐ **Assigned to Full Duty – Limited Hours** - Work according to job description and capacity.

☐ **No twisting or bending**

☐ **No climbing of stairs or ladders**

☐ **No prolonged walking or standing**

☐ **No driving or operating machinery**

☐ **Must use: splint/sling/crutches**

☐ **Must keep injured area clean/dry**

☐ **No use of: R / L** __________

☐ **Limited use of: R / L** __________

☐ **No overhead use of: R / L** ______

☐ **No repetitive use of: R / L** ______

☐ **On medications that cause:** ____________________

☐ **Other Instructions:** ____________________

**Physician's Signature:** Nakia D. Sharp[illegible], LCSW **Date:** 30 May 19

EXHIBIT 3

TO BE COMPLE

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |
| Date of Most Recent Exam: 6/27/19 | Reason for Exam: F43.10 PTSD | |
| Reason and Date of Surgery (if applicable) | | |

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

□ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 7/25/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ____________
(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work**-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work**-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours** - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours** - Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ________

□ **Limited use of: R / L** ________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

**Physician's Signature:** [signature] LCSW **Date:** 27 June 19

TO BE COMPLE

EXHIBIT 4

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**
Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 7/25/19 | PTSD F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on**: ______________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 8/22/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ______________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ______________
(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work**. Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** __________

□ **Limited use of: R / L** __________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ______________

□ **Other Instructions:** ______________

**Physician's Signature:** [signature] LCSW **Date:** 25 Jul 19

EXHIBIT 5

TO BE COMPLE

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |
| Date of Most Recent Exam 8/22/19 | Reason for Exam F43.10 PTSD | |
| Reason and Date of Surgery (if applicable) | | |

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 9/19/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ____________ (Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ____________

□ **Limited use of: R / L** ____________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

**Physician's Signature:** M Sharon B-French, LCSW **Date:** 22 Aug 19

EXHIBIT

6

TO BE COMPLET

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 9/19/19 | F43.10 PTSD |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 10/17/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ____________

(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ________

□ **Limited use of: R / L** ________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

**Physician's Signature:** [signature], LCSW **Date:** 19 Sept 19

EXHIBIT 7

TO BE COMPLETE

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 10/17/19 | F43.10 PTSD |

Reason and Date of Surgery (if applicable)

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ Return to work on: ____________

☑ Unable to return to work-patient has limited ability. Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 11/18/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ Return to work-with limitations on: ____________ (Limitations must be indicated on this form.)

□ Assigned to Sedentary Work-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ Assigned to Light Work-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ Assigned to Medium Work-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ Assigned to Heavy Work. Lifting of 100lbs. Acceptable.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity.

□ No twisting or bending

□ No climbing of stairs or ladders

□ No prolonged walking or standing

□ No driving or operating machinery

□ Must use: splint/sling/crutches

□ Must keep injured area clean/dry

□ No use of: R / L ________

□ Limited use of: R / L ________

□ No overhead use of: R / L ______

□ No repetitive use of: R / L ______

□ On medications that cause: ____________

□ Other Instructions: ____________

Physician's Signature: Yakia D. Shon?, LCSW Date: 17 Oct 19

TO BE COMPLETE[D]

EXHIBIT
8

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 11/18/19 | F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ______

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 12/16/19.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ______.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ______
(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ______

□ **Limited use of: R / L** ______

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ______

□ **Other Instructions:** ______

**Physician's Signature:** [signature] **Date:** 18 Nov 19

TO BE COMPLETE

EXHIBIT 9

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 12/16/19 | F43.10 |

Reason and Date of Surgery (if applicable)

**Limitations and Special Instructions for Worker's Compensation**

| Patient's Work Status | Return to duty from Worker's Compensation Injury with restrictions: | |
|---|---|---|
| ◻ Return to work on: ____________ | ◻ Return to work-with limitations on: ____________ (Limitations must be indicated on this form.) | ◻ No twisting or bending |
| ☑ Unable to return to work-patient has limited ability. Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 1/13/20. | ◻ Assigned to Sedentary Work-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work) | ◻ No climbing of stairs or ladders<br>◻ No prolonged walking or standing<br>◻ No driving or operating machinery |
| ◻ Unable to return to work-patient is disabled but expected to make full recovery. Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________. | ◻ Assigned to Light Work-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.<br>◻ Assigned to Medium Work-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods. | ◻ Must use: splint/sling/crutches<br>◻ Must keep injured area clean/dry<br>◻ No use of: R / L ________<br>◻ Limited use of: R / L ________<br>◻ No overhead use of: R / L ________ |
| ◻ Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time. Patient will be re-evaluated on: ____________. | ◻ Assigned to Heavy Work. Lifting of 100lbs. Acceptable.<br>◻ Assigned to Full Duty – Limited Hours - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.<br>◻ Assigned to Full Duty – Limited Hours - Work according to job description and capacity. | ◻ No repetitive use of: R / L ________<br>◻ On medications that cause: ____________<br>◻ Other instructions: ____________ |

Physician's Signature: [signature], LCSW-BACS  Date: 16 Dec 19

EXHIBIT 10

TO BE COMPLETED

# Shreveport Fire Department

## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 1/17/20 | F43.10 |

Reason and Date of Surgery (if applicable)

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ Return to work on:

______________________

☑ Unable to return to work-patient has limited ability. Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 2/13/20.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on:

______________________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on:

______________________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ Return to work-with limitations on:

______________________

(Limitations must be indicated on this form.)

□ Assigned to Sedentary Work-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ Assigned to Light Work-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ Assigned to Medium Work-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ Assigned to Heavy Work. Lifting of 100lbs. Acceptable.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity.

□ No twisting or bending

□ No climbing of stairs or ladders

□ No prolonged walking or standing

□ No driving or operating machinery

□ Must use: splint/sling/crutches

□ Must keep injured area clean/dry

□ No use of: R / L __________

□ Limited use of: R / L __________

□ No overhead use of: R / L ______

□ No repetitive use of: R / L ______

□ On medications that cause:

______________________

□ Other Instructions:

______________________

______________________

Clinician's ~~Physician's~~ Signature: [signature] LCSW-BACA Date: 17Jan2020

EXHIBIT

11

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 2/13/2020 | F43.10 |

Reason and Date of Surgery (if applicable)

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ Return to work on: ____________

☑ Unable to return to work-patient has limited ability. Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 3/12/2020.

□ Unable to return to work-patient is disabled but expected to make full recovery. Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time. Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ Return to work-with limitations on: ____________

(Limitations must be indicated on this form.)

□ Assigned to Sedentary Work-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ Assigned to Light Work-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ Assigned to Medium Work-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ Assigned to Heavy Work. Lifting of 100lbs. Acceptable.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ Assigned to Full Duty – Limited Hours - Work according to job description and capacity.

□ No twisting or bending

□ No climbing of stairs or ladders

□ No prolonged walking or standing

□ No driving or operating machinery

□ Must use: splint/sling/crutches

□ Must keep injured area clean/dry

□ No use of: R / L ________

□ Limited use of: R / L ________

□ No overhead use of: R / L ______

□ No repetitive use of: R / L ______

□ On medications that cause:

____________

□ Other Instructions:

____________

____________

Physician's Signature: Nakia D. Thomas, LCSW Date: 13 Feb 2020

EXHIBIT 12

TO BE COMPLETED

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 3/12/2020 | F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☑ Return to work on: 3/20/2020

☐ Unable to return to work-patient has limited ability. Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: ________.

☐ Unable to return to work-patient is disabled but expected to make full recovery. Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ________.

☐ Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time. Patient will be re-evaluated on: ________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ Return to work-with limitations on: ________

(Limitations must be indicated on this form.)

☐ Assigned to Sedentary Work-Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ Assigned to Light Work-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ Assigned to Medium Work-Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ Assigned to Heavy Work. Lifting of 100lbs. Acceptable.

☐ Assigned to Full Duty – Limited Hours - Work according to job description and capacity but limited hours. Patient is allowed to work ____ hours per day/ ____ days per 40 hour week.

☐ Assigned to Full Duty – Limited Hours - Work according to job description and capacity.

☐ No twisting or bending

☐ No climbing of stairs or ladders

☐ No prolonged walking or standing

☐ No driving or operating machinery

☐ Must use: splint/sling/crutches

☐ Must keep injured area clean/dry

☐ No use of: R / L ________

☐ Limited use of: R / L ________

☐ No overhead use of: R / L ________

☐ No repetitive use of: R / L ________

☐ On medications that cause: ________

☑ Other Instructions: Next appointment 4/9/20

Physician's Signature: Nakia D. Shorts, LCSW-BACS Date: 12 March 2020

EXHIBIT 13

TO BE COMPLETE

# CITY OF SHREVEPORT-FIRE DEPARTMENT
# INTER-OFFICE MEMORANDUM

## SPECIAL OPERATIONS and SAFETY

**Phone:** **673-6760** **Fax: 673-6697**

**DATE:** March 17, 2020

**TO:** **Felicia Scroggins**
**Fire Engineer**

**FROM:** **Skip Pinkston**
**Chief of Special Operations and Safety**

**SUBJECT:** **Release for Duty Evaluation**

Per SFD AP 07 -Sick Leave and Family Medical Leave Act (FMLA) Release for Duty Evaluation has been scheduled for you. Our records indicate you were placed on sick leave on March 28, 2019 and were released from sick leave by your medical provider on March 20, 2020. The Release for Duty evaluation has been scheduled for Monday, March 23, 2020.

Release for Duty Evaluation:

**Location:** Personal Solutions, Inc.
**Address:** 8873 Quimper Place, Shreveport, La 71105
**Phone:** 318-686-0012
**Date:** March 23, 2020
**Time:** 10:00 a.m.
**Doctor:** Dr. Bob Clanton, Ph.D., LCP

If you have any further questions please call my office at 318-673-6760.

*Charles J. Pinkston, IV*
Charles J. Pinkston, IV
Chief of Special Operations and Safety
Shreveport (LA) Fire Department

EXHIBIT
14

PERSONAL SOLUTIONS

R. Craig Kennedy, MA, LPC, President
Patti Bornaman, Ph.D, LPC-S, LMFT
Bob Clanton, Ph.D, LCP
Thomas Davison, Psy.D, LPC
Tinisha Dawson, Office Manager
J. Durell Tuberville, Founder

# FITNESS FOR DUTY EVALUATION

| | |
|---|---|
| Examinee: | Felicia Scroggins |
| Age: | 42 |
| Date of Birth: | 05/22/1977 |
| Date of Examination: | 03/23/2020 |
| Examiner: | Robert Clanton, Ph.D. |

Ms. Scroggins was referred for Fitness for Duty evaluation and clearance to return to work by the Shreveport Fire Department. She has been on medical leave secondary to stress since 03/28/19.

Ms. Scroggins arrived promptly for her scheduled appointment. She displayed adequate grooming/hygiene and was dressed in casual attire. Affect was full range, becoming somewhat anxious and irritable when discussing issues that lead to her leave from the department. She reported that she has been employed by the Shreveport Fire Department for almost 19 years, where she serves as a driver.

Ms. Scroggins reported that she has been under the care of Nakia Thomas, LCSW, during the period she has been away from work. Ms. Scroggins stated that she suffered from PTSD, but the stressors identified were entirely related to her perception that she has been in a hostile work environment. She reported that she has filed multiple complaints and has litigation pending. Symptoms would be more accurately diagnosed as meeting DSM-5 criteria for Unspecified Anxiety Disorder.

Ms. Scroggins reported no significant current symptoms and expressed belief that she is prepared for return to work. She stressed that she has never had any difficulty performing job duties, but has experienced stress in dealing with supervisors and coworkers. I find no evidence of any issues that would prevent her return to full duties at this time. Ms. Scroggins reported that she has been seeing her outpatient social worker on a monthly basis. I recommend that she increase the frequency of counseling to at least every other week to aid in transition back into the work environment. If there are any questions, or if I may be of any further assistance, please do not hesitate to contact me.

Sincerely,

Robert Clanton, Ph.D.
Licensed Psychologist (1252)

8873 Quimper Place • Shreveport, LA 71105
318.686.0012 • www.personalsolutionsinc.com

EXHIBIT 15

# CITY OF SHREVEPORT-FIRE DEPARTMENT
# INTER-OFFICE MEMORANDUM

**FIRE CHIEF**

**Phone:** **673-6655** **Fax: 673-6656**

**DATE:** **July 31, 2020**

**TO:** **Felicia Scroggins**
**Fire Engineer**

**FROM:** **Edwin Scott Wolverton**
**Fire Chief**

EXHIBIT
16

**SUBJECT:** **Fit for Duty Evaluation**

The Shreveport Fire and Police Municipal Civil Service Board Rules state on page 11; Section 2. Sick Leave, part b: The appointing authority is directed to institute and implement reasonable procedures to document and verify the initial and continuing necessity for sick leaves, as well as the ability of the employee to qualify for and perform his/her normal duties before he/she is permitted to return to work after a sick leave. Verification procedures will be mandatory in the case of sick leaves of more than two weeks and discretionary in the case of shorter leaves, and may include reports or statements from the attending physician, examination and reports by a doctor designated by the appointing authority or the board, and/or reasonable physical fitness tests.

SFD Administrative Procedure #7- Sick Leave and Family Medical Leave Act states:

4. Fit for Duty

4.1. Members reporting for duty must be able to perform the position in a safe, effective, efficient, and productive manner. Should reasonable cause exist to question a member's fitness for duty (e.g., injury, extensive use of sick leave, documented performance deficits, etc.), the member may be temporarily removed, reassigned, or temporarily prohibited from returning to duty until evaluated as ordered by the Fire Chief.

5. Fit for Duty Evaluation

5.1. The nature and circumstances surrounding the "Fit for Duty" question will decide the type of evaluation and the necessary documentation required from the member. The Fire Chief reserves the right to make final decisions in determining the type of evaluation needed based on the facts associated with each member's sick leave usage.

8. Validation of Illness or Injury

8.1. If substantial evidence suggests that a member's reason for sick leave is questionable, the Fire Chief

may require a licensed health care provider's certification of illness or injury, at the member's expense.

8.2. A second opinion may be requested at the expense of the department, upon approval of the Fire Chief.

18. Patterns of Absenteeism and Fraudulent Use of Sick Leave

18.2. Members shall not abuse leave privileges or fraudulently use leave. Abusive Absenteeism is taking leave in a manner for which it was not intended. (Example: using it in a predictable pattern is substantial evidence of abusive use.)

State of Louisiana Revised Statues 33:2581.2 states PTSD shall be diagnosed by a licensed Psychiatrist or Psychologist.

There have been two sick leave usages in the past with a claim for mental illness. In 2016, you were given a full Mental Fitness for Duty and cleared by Licensed Psychologist Mark Vigen and he stated, "Ms. Scroggins is fit to return to duty. She is not mentally ill, and she presents as quite psychologically competent."

The second sick leave usage was for 360 days from March 28, 2019-March 23, 2020. Again you were given a full Mental Fitness For duty. This evaluation was done by a different Licensed Psychologist, Robert Clanton, from an entirely different company and the conclusion stated, "Ms. Scroggins reported that she has been under the care of Nakia Thomas, LCSW, during the period she has been away from work.. Ms. Scroggins stated that she suffered PTSD, but the stressors identified were entirely related to her perception that she has been in a hostile work environment. She reported that she has filed multiple complaints and has litigation pending. Symptoms would be more accurately diagnosed as meeting DSM-5 criteria for Unspecified Anxiety Disorder."

Upon being released on March 23, 2020, you took accumulated vacation time and returned to duty to complete re-entry training on June 8, 2020. After working 16 shifts, you have now returned to sick leave with the same diagnosis, PTSD (F43.10) by LCSW Nakia Thomas.

This pattern of sick leave usage brings into question if you are fit to perform your public safety position and able to function and perform your job duties for any meaningful period of time. Therefore, I am sending you again for a full Mental Fitness for Duty evaluation to validate this continuing diagnosis by your LCSW, in accordance with Civil Service Board Rules, SFD Administrative Procedure, and to abide by the LA RS 33.2181.2 that PTSD shall be diagnosed by a licensed Psychologist or Psychiatrist. **You shall report for the following appointment below for a fit for duty evaluation:**

**Personal Solutions, Inc.**
**8873 Quimper Place**
**Shreveport, LA 71105**
**318-686-0012**
**Dr. Robert Clanton**
**Monday, August 10, 2020 at 1300 hours**

Edwin Scott Wolverton
Fire Chief

PERSONAL SOLUTIONS

R. Craig Kennedy, MA, LPC, President
Patti Bornaman, Ph.D, LPC-S, LMFT
Bob Clanton, Ph.D, LCP
Thomas Davison, Psy.D, LPC
Tinisha Dawson, Office Manager
J. Durell Tuberville, Founder

# FITNESS FOR DUTY EVALUATION

| | |
|---|---|
| Examinee: | Felicia Scroggins |
| Age: | 43 |
| Date of Birth: | 05/22/1977 |
| Date of Examination: | 08/10/2020 |
| Examiner: | Robert Clanton, Ph.D. |

Ms. Scroggins was referred for Fitness for Duty evaluation and clearance to return to work by the Shreveport Fire Department. She is currently on leave due to stress.

Ms. Scroggins arrived promptly for her scheduled appointment. She displayed adequate grooming/hygiene and was dressed in casual attire. Affect was anxious and somewhat dysthymic. Ms. Scroggins displayed rapid, tangential speech, and had difficulty providing a linear history of the problems leading to her current leave. Ms. Scroggins was cleared for return to work on 03/23/2020 after an extended period of stress leave. She stated that she had accrued vacation time that she was required to use, so did not actually return to work until approximately the first part of July. At the previous fitness for duty evaluation, Ms. Scroggins identified a hostile work environment as her primary stressor. She reported no related issues upon return to work and no specific stressors contributing to her current anxiety. Ms. Scroggins stated that she experienced panic symptoms while at work to include racing heart, shortness of breath, and feeling as if she were dying. She was examined and no physical causes for these symptoms were identified.

Ms. Scroggins reported that she continues to see Nakia Thomas, LCSW, for outpatient counseling. She has been prescribed Hydroxyzine by her primary care physician. She reported that prescribed medication seems to have little impact on her anxiety, but does cause drowsiness. I encouraged her to schedule weekly counseling with her LCSW. I also encouraged her to discuss medication management with her physician regarding medications that might be more effective and that would not impact her ability to perform duties at work. It is recommended that Ms. Scroggins remain on medical leave and return for reassessment for possible return to work on or about 09/01/2020. If there are any questions, or if I may be of any further assistance, please do not hesitate to contact me.

Sincerely,

Robert Clanton, Ph.D.
Licensed Psychologist (1252)

8873 Quimper Place · Shreveport, LA 71105
318.686.0012 · www.personalsolutionsinc.com

EXHIBIT
17

*COMMUNITY COLLABORATION*
745 Olive Street Suite 112
Shreveport, Louisiana 71104
(318) 207-0267
844-871-2020 Fax

25 August 2020

This letter is clarify the diagnosis of Engineer Felecia Scroggins. Ms. Scroggins initially presented to this office on March 28, 2019. She complained of difficulty sleeping, recurrent dissociative reactions, avoidance of certain people, persistent anger and fear, and diminished interest in activities. After administration of the GAD7, PHQ9, and PCL and Ms. Scroggin's self-report of several incidents she suffered at the hands of several superior officers, it was determined that she met the criteria for Post Traumatic Stress Disorder (PTSD, F43.10), as set forward in the DSM-5. The DSM-5 is a manual developed by the American Psychiatric Association used by professionally trained therapist to diagnose and treat individuals. This exert is from the DSM-5 and gives the criteria for a diagnosis of PTSD:

> The following criteria apply to adults, adolescents, and children older than 6 years. For children 6 years and younger, see the DSM-5 section titled "Posttraumatic Stress Disorder for Children 6 Years and Younger" (APA, 2013a).
>
> A. Exposure to actual or threatened death, serious injury, or sexual violence in one (or more) of the following ways:
>
> 1. Directly experiencing the traumatic event(s).
> 2. Witnessing, in person, the event(s) as it occurred to others.
> 3. Learning that the traumatic event(s) occurred to a close family member or close friend. In cases of actual or threatened death of a family member or friend, the event(s) must have been violent or accidental.
> 4. Experiencing repeated or extreme exposure to aversive details of the traumatic event(s) (e.g., first responders collecting human remains; police officers repeatedly exposed to details of child abuse). **Note:** Criterion A4 does not apply to exposure through electronic media, television, movies, or pictures, unless this exposure is work related.
>
> B. Presence of one (or more) of the following intrusion symptoms associated with the traumatic event(s), beginning after the traumatic event(s) occurred:
>
> 1. Recurrent, involuntary, and intrusive distressing memories of the traumatic event(s). **Note:** In children older than 6 years, repetitive play may occur in which themes or aspects of the traumatic event(s) are expressed.

EXHIBIT
18

2. Recurrent distressing dreams in which the content and/or affect of the dream are related to the traumatic event(s). **Note:** In children, there may be frightening dreams without recognizable content.

3. Dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic event(s) were recurring. (Such reactions may occur on a continuum, with the most extreme expression being a complete loss of awareness of present surroundings.) **Note:** In children, trauma-specific reenactment may occur in play.

4. Intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).

5. Marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).

C. Persistent avoidance of stimuli associated with the traumatic event(s), beginning after the traumatic event(s) occurred, as evidenced by one or both of the following:

1. Avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event(s).

2. Avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event(s).

D. Negative alterations in cognitions and mood associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:

1. Inability to remember an important aspect of the traumatic event(s) (typically due to dissociative amnesia, and not to other factors such as head injury, alcohol, or drugs).

2. Persistent and exaggerated negative beliefs or expectations about oneself, others, or the world (e.g., "I am bad," "No one can be trusted," "The world is completely dangerous," "My whole nervous system is permanently ruined").

3. Persistent, distorted cognitions about the cause or consequences of the traumatic event(s) that lead the individual to blame himself/herself or others.

4. Persistent negative emotional state (e.g., fear, horror, anger, guilt, or shame).

5. Markedly diminished interest or participation in significant activities.

6. Feelings of detachment or estrangement from others.

7. Persistent inability to experience positive emotions (e.g., inability to experience happiness, satisfaction, or loving feelings).

E. Marked alterations in arousal and reactivity associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:

1. Irritable behavior and angry outbursts (with little or no provocation), typically expressed as verbal or physical aggression toward people or objects.
2. Reckless or self-destructive behavior.
3. Hypervigilance.
4. Exaggerated startle response.
5. Problems with concentration.
6. Sleep disturbance (e.g., difficulty falling or staying asleep or restless sleep).

F. Duration of the disturbance (Criteria B, C, D and E) is more than 1 month.

G. The disturbance causes clinically significant distress or impairment in social. occupational, or other important areas of functioning.

H. The disturbance is not attributable to the physiological effects of a substance (e.g., medication, alcohol) or another medical condition.

Specify whether:

**With dissociative symptoms:** The individual's symptoms meet the criteria for posttraumatic stress disorder, and in addition, in response to the stressor, the individual experiences persistent or recurrent symptoms of either of the following:

1. **Depersonalization:** Persistent or recurrent experiences of feeling detached from, and as if one were an outside observer of, one's mental processes or body (e.g., feeling as though one were in a dream; feeling a sense of unreality of self or body or of time moving slowly).
2. **Derealization:** Persistent or recurrent experiences of unreality of surroundings (e.g., the world around the individual is experienced as unreal, dreamlike, distant, or distorted). **Note**: To use this subtype, the dissociative symptoms must not be attributable to the physiological effects of a substance (e.g., blackouts, behavior during alcohol intoxication) or another medical condition (e.g., complex partial seizures).

Specify whether:

**With delayed expression:** If the full diagnostic criteria are not met until at least 6 months after the event (although the onset and expression of some symptoms may be immediate).

Source: APA, 2013a, pp. 271–272.

This diagnosis does not affect her ability to effectively complete her job duties. However, it is interactions with certain staff that causes lack of sleep, fear, flashbacks of shaming and humiliating events, and not being supported by administration after filing grievances. If there is any further question as to the validity of this diagnosis, I can be contacted at (318) 207-0267 of communitycollaboration318@gmail.com. Thank you for your cooperation in this matter.

Sincerely,

Nakia S. Thomas, LCSW-BACS

PERSONAL SOLUTIONS

R. Craig Kennedy, MA, LPC, President
Patti Bornaman, Ph.D, LPC-S, LMFT
Bob Clanton, Ph.D, LCP
Thomas Davison, Psy.D, LPC
Tinisha Dawson, Office Manager
J. Durell Tuberville, Founder

# FITNESS FOR DUTY EVALUATION

| | |
|---|---|
| Examinee: | Felicia Scroggins |
| Age: | 43 |
| Date of Birth: | 05/22/1977 |
| Date of Examination: | 08/31/2020 |
| Examiner: | Robert Clanton, Ph.D. |

Ms. Scroggins was referred for Fitness for Duty evaluation and clearance to return to work by the Shreveport Fire Department. She is currently on leave due to stress.

Ms. Scroggins arrived promptly for her scheduled appointment. She displayed adequate grooming/hygiene and was dressed in casual attire. Affect was anxious and somewhat dysthymic. She did not exhibit the rapid, tangential speech displayed on 08/10/2020, but appeared more depressed. She reported that she has been unable to sleep for more than 2-3 hours per night, even after taking medication prescribed by her physician. She stated that both her primary care physician and outpatient social worker have recommended that she not return to work at this time. I encouraged Ms. Scroggins to talk to her physician about making medication adjustments to address symptoms of depression and insomnia (she reported that she is still prescribed that same medication that she was taking at out last meeting). Also encouraged her to continue seeing her mental health provider on a regular basis. Ms. Scroggins's difficulty sleeping and resultant fatigue are cause for concern with regard to her ability to adequately perform duties at work. I recommend that she remain off work at this time and return for re-evaluation for possible return to work on or about 10/01/2020. If there are any questions, or if I may be of any further assistance, please do not hesitate to contact me.

Sincerely,

Robert Clanton, Ph.D.
Licensed Psychologist (1252)



EXHIBIT 19

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**
Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | ~~5/20~~ error MR 7/25/2020 |
| **Date of Most Recent Exam** 9/24/20 | **Reason for Exam** F43.10 | |
| **Reason and Date of Surgery (if applicable)** | | |

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☐ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 10/22/2020.

☐ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

☐ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ **Return to work-with limitations** on: ____________ (Limitations must be indicated on this form.)

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

☐ **No twisting or bending**

☐ **No climbing of stairs or ladders**

☐ **No prolonged walking or standing**

☐ **No driving or operating machinery**

☐ **Must use: splint/sling/crutches**

☐ **Must keep injured area clean/dry**

☐ **No use of: R / L** ____________

☐ **Limited use of: R / L** ____________

☐ **No overhead use of: R / L** ______

☐ **No repetitive use of: R / L** ______

☐ **On medications that cause:** ____________

☐ **Other Instructions:** ____________

Clinician's ~~Physician's~~ **Signature:** Makia D. Shore, LCSW-BACS **Date:** 24 Sept 20

TO BE COMPL

EXHIBIT 20

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 7/25/2020 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 11/13/2020 | F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 12/11/2020.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations** on: ____________

(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ________

□ **Limited use of: R / L** ________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

Clinician's ~~Physician's~~ Signature: [signature] LCSW-BACS Date: 13 Nov 2020

TO BE COMPLET

EXHIBIT 21

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 8/27/2020 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 12/24/2020 | F43.10 |

Reason and Date of Surgery (if applicable)

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ______

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 01/21/2021.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ______.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations** on: ______ (Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ______

□ **Limited use of: R / L** ______

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ______

□ **Other Instructions:** ______

**Physician's Signature:** [signature] LCSW-BACS **Date:** 24 Dec 2020

EXHIBIT 22

TO BE COMPLET

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 7/25/2020 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 1/21/2021 | F.43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☐ **Return to work on**: ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 2/18/21.

☐ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

☐ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ **Return to work-with limitations** on: ____________
(Limitations must be indicated on this form.)

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

☐ **No twisting or bending**

☐ **No climbing of stairs or ladders**

☐ **No prolonged walking or standing**

☐ **No driving or operating machinery**

☐ **Must use: splint/sling/crutches**

☐ **Must keep injured area clean/dry**

☐ **No use of: R / L** ________

☐ **Limited use of: R / L** ________

☐ **No overhead use of: R / L** ______

☐ **No repetitive use of: R / L** ______

☐ **On medications that cause:** ____________

☐ **Other Instructions:** ____________

Clinician's ~~Physician's~~ Signature: Nakia [signature] LCSW-BACS Date: 21 Jan 2021

EXHIBIT 23

TO BE COMPLETED

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 3/28/19 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 2/24/21 | |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☐ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 3/24/21.

☐ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

☐ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ **Return to work-with limitations** on: ____________ (Limitations must be indicated on this form.)

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

☐ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

☐ **No twisting or bending**

☐ **No climbing of stairs or ladders**

☐ **No prolonged walking or standing**

☐ **No driving or operating machinery**

☐ **Must use: splint/sling/crutches**

☐ **Must keep injured area clean/dry**

☐ **No use of: R / L** ____________

☐ **Limited use of: R / L** ____________

☐ **No overhead use of: R / L** ______

☐ **No repetitive use of: R / L** ______

☐ **On medications that cause:** ____________

☐ **Other Instructions:** ____________

Clinician's ~~Physician's~~ **Signature:** [signature] NCAW-BACS **Date:** 24 Feb 21

TO BE COMPL

EXHIBIT 24

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for **each** exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 7/25/2020 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 3/24/21 | F43.10 |

**Reason and Date of Surgery (if applicable)**

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 4/2/21.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ____________

(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ____________

□ **Limited use of: R / L** ____________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

**Physician's Signature:** N Shore, MSW-BACD **Date:** 24 March 21

EXHIBIT 25

TO BE COMPLE

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**

Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 7/25/20 |

| Date of Most Recent Exam | Reason for Exam |
|---|---|
| 4/21/21 | F43.10 |

**Reason and Date of Surgery (If applicable)**

[illegible]

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

□ **Return to work on:** ____________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 5/19/21.

□ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ____________.

□ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________.

**Return to duty from Worker's Compensation Injury with restrictions:**

□ **Return to work-with limitations on:** ____________

(Limitations must be indicated on this form.)

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

□ **Assigned to Full Duty – Limited Hours -** Work according to job description and capacity.

□ **No twisting or bending**

□ **No climbing of stairs or ladders**

□ **No prolonged walking or standing**

□ **No driving or operating machinery**

□ **Must use: splint/sling/crutches**

□ **Must keep injured area clean/dry**

□ **No use of: R / L** ____________

□ **Limited use of: R / L** ____________

□ **No overhead use of: R / L** ______

□ **No repetitive use of: R / L** ______

□ **On medications that cause:** ____________

□ **Other Instructions:** ____________

Clinician's **Physician's Signature:** [signature] BACA **Date:** 21 April 21

TO BE COMPL

EXHIBIT 26

# Shreveport Fire Department
## PHYSICIAN'S REPORT AND INSTRUCTIONS

**Note to Physician:**
Shreveport Fire Department employees perform many duties, other than fire fighting. **Our department offers limited duty assignments for worker's compensation injuries only.** Please complete this form for each exam.

| Employee Name | Date of Injury/Illness | Date of First Physician's Exam |
|---|---|---|
| Felicia Scroggins | | 7/25/2020 |
| Date of Most Recent Exam: 5/19/21 | Reason for Exam: F43.10 | |
| Reason and Date of Surgery (If applicable) | | |

**Limitations and Special Instructions for Worker's Compensation**

**Patient's Work Status**

☐ Return to work on: ______________

☑ **Unable to return to work-patient has limited ability.** Patient is convalescing. He/she has the ability to drive and/or perform daily functions without assistance. Patient is not released to return to work at this time. Patient will be re-evaluated on: 6/16/21.

☐ **Unable to return to work-patient is disabled but expected to make full recovery.** Patient is unable to take care of self without some assistance. Patient will be re-evaluated on: ______________.

☐ **Unable to return to work-patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________.

**Return to duty from Worker's Compensation Injury with restrictions:**

☐ **Return to work-with limitations on:** ______________
(Limitations must be indicated on this form.)

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-Maximum** of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Assigned to Heavy Work.** Lifting of 100lbs. Acceptable.

☐ **Assigned to Full Duty – Limited Hours** - Work according to job description and capacity but limited hours. Patient is allowed to work ______ hours per day/ ______ days per 40 hour week.

☐ **Assigned to Full Duty – Limited Hours** - Work according to job description and capacity.

☐ **No twisting or bending**

☐ **No climbing of stairs or ladders**

☐ **No prolonged walking or standing**

☐ **No driving or operating machinery**

☐ **Must use: splint/sling/crutches**

☐ **Must keep injured area clean/dry**

☐ **No use of: R / L** ______

☐ **Limited use of: R / L** ______

☐ **No overhead use of: R / L** ______

☐ **No repetitive use of: R / L** ______

☐ **On medications that cause:** ______________

☐ **Other Instructions:** ______________

Clinician's **Physician's Signature:** Nakia D. Shore-Crenshaw-BACA **Date:** 19 May 21

TO BE COMPL

EXHIBIT 27

PERSONAL SOLUTIONS

R. Craig Kennedy, MA, LPC, President
Patti Bornaman, Ph.D, LPC-S, LMFT
Bob Clanton, Ph.D, LCP
Thomas Davison, Psy.D, LPC
Tinisha Dawson, Office Manager
J. Durell Tuberville, Founder

# FITNESS FOR DUTY EVALUATION

| | |
|---|---|
| Examinee: | Felicia Scroggins |
| Age: | 44 |
| Date of Birth: | 05/22/77 |
| Date of Examination: | 07/15/21 |
| Examiner: | Robert Clanton, Ph.D. |

Ms. Scroggins was referred for Fitness for Duty evaluation and clearance to return to work by the Shreveport Fire Department. She is currently on leave due to stress.

Ms. Scroggins arrived promptly for her scheduled appointment. She displayed adequate grooming/hygiene and was dressed in casual attire. She wore a mask due to COVID-19 precautions, Affect was full range and appropriate to the situation. She reported that anxiety and depressive symptoms have largely resolved. She stated that she has been seeing her mental health provider on a regular basis and has been released for return to work. Ms. Scroggins expressed belief that she is prepared do so. She reported that she has been sleeping much better and has experienced no panic attacks. Ms. Scroggins indicated that she will continue to follow up with outpatient counseling as needed. There do not appear to be any significant psychological symptoms that would prevent her return work, so she is cleared to do so effective this date. If there are any questions, or if I may be of any further assistance, please do not hesitate to contact me.

Sincerely,

Robert Clanton, Ph.D.
Licensed Psychologist (1252)



EXHIBIT
28

Recording Inbox x

HotGirlFe Live
At about 4mins

Fri, Sep 3, 2021, 2:29PM

Scott Wolverton <Scott.Wolverton@shreveportla.gov>
to Clarence, me

Fri, Sep 3, 2021, 3:22PM

Felicia,

This recording is just over 4 minutes of what you stated was an hour conversation. I would like to have the entire recording as I am sure I explained to you I could do a 90 day temporary assignment if I have an assignment that can be made. Right now, I don't have a vacancy in a support division to assign you to per LA RS 33:2496- Temporary Appointments. I also do not have any special duty to temporarily assign you.

I would recommend you apply for FMLA based on your conversation to help with your parents. Ms. Faison Autry, our timekeeper, can get you signed up for FMLA.

As far as acclimating to the fire station, you have been off from July of 2020-July 15, 2021 and then went on accrued vacation and will work your first shift at the fire station beginning September 5, 2021. That is over 13 months away from work. Your doctor has released you and our doctor has agreed you are clear to return to work. Our department needs all the staffing it can get right now with COVID leave, sick leave, staffing shortages, vacation usage and all the other natural disaster events that are going on right now in our state. Your re-entry is completed with no shortcomings noted and the Academy saying you are ready to return and do your job as an engineer. Our citizens and this department need you to fulfill your oath and report to work.

Please let me know if you have any questions.

Edwin Scott Wolverton
Fire Chief, Shreveport Fire Department
263 North Common Street
Shreveport, LA 71101
318-673-6655
318-455-2401

EXHIBIT
29

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| Employee Name | Date of Birth | Cell Phone | Alternate Phone |
|---|---|---|---|
| Felicia Scroggins | 5/22/77 | 349-8944 | 686-8057 |

| RANK | SHIFT | ASSIGNMENT |
|---|---|---|
| Fire Engineer | C | E-13 |

| Date(s) of Absence | Place of Recovery( Address, City, State, ZIP) |
|---|---|
| FROM 11/15/21 TO Present | 9314 Sandalwood Dr 7118 |

| Reason for Absence (Include Specific Illness or Injury) | Date of Injury / Illness / Surgery: | Date of First Physician's Exam: |
|---|---|---|
| Knee | 11-14-21 / 11-22-21 | 10-7-21 |

| Date of Most Recent Physicians Exam: | PRINT the physician's name. | Was illness/injury job-related? | SFD Accident Pkg.? |
|---|---|---|---|
| 11/17/21 | Dr. Timothy Talbert | ☐ YES ☑ NO | ☐ YES ☑ NO |

| Physician Address: | Physician Phone #: |
|---|---|
| 1455 E. Bert Kouns Spt LA 71105 | 798-4623 |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☐ **Return to work on:** ____________ with No Restrictions or Limitations **(REGULAR DUTY)**

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________

☑ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ____________

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: 12/6/21

**LIMITED / MODIFIED DUTY RESTRICTIONS**

☐ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work** ________ **hours a day** ________ **days a week. Employee has the following restrictions:**

| Physician's Name (Printed) | Physician's Signature | Date |
|---|---|---|
| Timothy W. Talbert, M.D | [signature] | 11/17/21 |
| **Employee's Name (Printed)** | **Employee's Signature** | **Date** |
| Felicia Scroggins | [signature] | 11/17/21 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | **Date** |
| | | |

EXHIBIT 30

HIGHLAND CLINIC

12/06/2021

To Whom It May Concern:

FELICIA SCROGGINS is currently under my medical care.
Please excuse FELICIA for 4 week(s).
She may return to work on 01/03/2022.

**Additional Details:** excuse until next appt date on this day 1/3/22

If you require additional information please contact our office.

Sincerely,

Timothy W. Talbert MD

*Provider:*
Talbert, Timothy W 12/06/2021 2:36 PM

**Document generated by: Olivia Smith 12/06/2021**



EXHIBIT
31

HIGHLAND CLINIC

01/03/2022

To Whom It May Concern:

FELICIA SCROGGINS is currently under my medical care.
Please excuse FELICIA for 1 month(s).

Activity is restricted as follows: none.

**Additional Details:** Patient is unable to work will be reevaluated on future appointment 01/31/2022.

If you require additional information please contact our office.

Sincerely,

Timothy W. Talbert MD

*Provider:*
Talbert, Timothy W 01/03/2022 1:54 PM

**Document generated by: Tymeka Jones 01/03/2022**



EXHIBIT 32

HIGHLAND CLINIC

01/31/2022

To Whom It May Concern:

FELICIA SCROGGINS is currently under my medical care.

Please excuse FELICIA for 4 week(s).

She may return to work PENDING NEXT APPOINTMENT ON 02/28/22.

If you require additional information please contact our office.

Sincerely,

Timothy W. Talbert MD

*Provider:*
Davis, Hillary G 01/31/2022 1:47 PM

**Document generated by: Krystal Bell 01/31/2022**



EXHIBIT
33

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| Employee Name | Date of Birth | Cell Phone | Alternate Phone |
|---|---|---|---|
| Felicia Scroggins | 8/20/77 | 3498944 | |

| RANK | SHIFT | ASSIGNMENT |
|---|---|---|
| Fire Engineer | C | E-18 |

| Date(s) of Absence | Place of Recovery( Address, City, State, ZIP) |
|---|---|
| FROM NOV 15 TO present | stress free zone |

| Reason for Absence (Include Specific Illness or Injury) | Date of Injury / Illness / Surgery: | Date of First Physician's Exam: |
|---|---|---|
| Knee surgery | | Nov 15 |

| Date of Most Recent Physicians Exam: | PRINT the physician's name. | Was illness/injury job-related? | SFD Accident Pkg.? |
|---|---|---|---|
| 1/31/22 | Dr Talbert | ☐ YES ☑ NO | ☐ YES ☑ NO |

| Physician Address: | Physician Phone #: |
|---|---|
| | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

□ **Return to work on:** ________________________ with No Restrictions or Limitations

□ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ________________________

□ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ____________

□ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ______________

### LIMITED / MODIFIED DUTY RESTRICTIONS

□ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Employee may work ________ a day _________ days a week. Employee has the following restrictions:**

| Physician's Name (Printed) | Physician's Signature | Date |
|---|---|---|
| | | |
| **Employee's Name (Printed)** | **Employee's Signature** | **Date** |
| Felicia Scroggins | [signature] | 2/6/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | |
| | | |

EXHIBIT 34

HIGHLAND CLINIC

02/28/2022

To Whom It May Concern:

FELICIA SCROGGINS is currently under my medical care.

Please excuse FELICIA for 4 week(s).

She may return to work PENDING NEXT APPOINTMENT ON 03/28/22

If you require additional information please contact our office.

Sincerely,

Timothy W. Talbert MD

*Provider:*
Talbert, Timothy W 02/28/2022 2:07 PM

**Document generated by: Candace Gardener 02/28/2022**



EXHIBIT
35

Highland Clinic
Orthopedics
1455 E. Bert Kouns Ind. Loop, Suite 210
Shreveport, La 71105

FELICIA SCROGGINS
9314 SANDALWOOD DR

SHREVEPORT, LA 71118

02/28/22

Dear FELICIA SCROGGINS

We would like to take this opportunity to remind you of an upcoming appointment scheduled with Talbert, Timothy W on 03/28/22 at 01:30 P.

We ask that you arrive 15 minutes prior to your appointment time for registration. Also we would like for you to bring a complete list of medications along with the dosages to this visit.

If you are unable to make this appointment, call our office at (318) 798-4623 at least 24 hours prior and we will be happy to reschedule the appointment for a more convenient time.

Sincerely,

The Physicians and Staff at
Highland Clinic

EXHIBIT
36

HIGHLAND CLINIC

March 28, 2022

RE: FELICIA SCROGGINS

To Whom It May Concern:

Felicia Scroggins is unable to return to work as a firefighter. She will be re-evaluated in 6 weeks. She should remain off work until her follow up evaluation.

Sincerely,

Timothy W. Talbert MD

EXHIBIT 37

HIGHLAND CLINIC

May 10, 2022

RE: FELICIA SCROGGINS

To Whom It May Concern:

Patient is under my care for right knee pain and is unable to work at this time. We will re-evaluate this in 4 weeks.

Sincerely,

George W. Byram III MD

EXHIBIT 38

5/31/22 HR 1523

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| Employee Name | Date of Birth | Cell Phone | Alternate Phone |
|---|---|---|---|
| Felicia Scroggins | 5/22/77 | 3173498944 | — |

| RANK | SHIFT | ASSIGNMENT |
|---|---|---|
| FE | C | 18 |

| Date(s) of Absence | Place of Recovery( Address, City, State, ZIP) |
|---|---|
| FROM 11/15/21 TO Present | 9314 Sandalwood Dr Sport LA 71118 |

| Reason for Absence (Include Specific Illness or Injury) | Date of Injury / Illness / Surgery: | Date of First Physician's Exam: |
|---|---|---|
| Knee Surgery | 11/14/21 - 11/22/21 | 10/7/21 |

| Date of Most Recent Physicians Exam: | PRINT the physician's name. | Was illness/injury job-related? | SFD Accident Pkg.? |
|---|---|---|---|
| 5/10/22 | Dr Byram / Dr Talbert | ☐ YES ☒ NO | ☐ YES ☒ NO |

| Physician Address: | Physician Phone #: |
|---|---|
| 1455 E Bert Kouns Sport LA 71105 | 798-4423 |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

☐ **Return to work on:** ______________ with No Restrictions or Limitations

☒ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ~~July 14~~ June 14

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ______________

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ______________

### LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work** ________ **a day** ________ **days a week. Employee has the following restrictions:**

| Physician's Name (Printed) | Physician's Signature | Date |
|---|---|---|
| George Byram MD | [signature] | 5/27/22 |
| **Employee's Name (Printed)** | **Employee's Signature** | **Date** |
| Felicia Scroggins | [signature] | [illegible] |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | |
| | | |

EXHIBIT 39

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| **Employee Name** Felicia Scroggins | **Date of Birth** 5/22/77 | **Cell Phone** 318 349 9944 | **Alternate Phone** |
| **RANK** FE | **SHIFT** C | | **ASSIGNMENT** E18 |
| **Date(s) of Absence** FROM Nov 15 2021 TO | | **Place of Recovery( Address, City, State, ZIP)** 9314 Sandalwood Dr, Spt 71118 | |
| **Reason for Absence (Include Specific Illness or Injury)** Knee Surgery | | **Date of Injury / Illness / Surgery:** 11/14/21 - 11/22/21 | **Date of First Physician's Exam:** 10/7/21 |
| **Date of Most Recent Physicians' Exam:** 6/14/22 | **PRINT the physician's name.** Dr Talbert Dr Byram | **Was illness/injury job-related?** ☐ YES ☒ NO | **SFD Accident Pkg.?** ☐ YES ☒ NO |
| **Physician Address:** 1455 E. Bert Kouns | | **Physician Phone #:** 318 798-4623 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☑ **Return to work on:** 7/8/22 with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ____________

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ____________

**LIMITED / MODIFIED DUTY RESTRICTIONS**

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work ________ a day ________ days a week. Employee has the following restrictions:**

| | | |
|---|---|---|
| **Physician's Name (Printed)** Byram | **Physician's Signature** [signature] | **Date** 6/14/22 |
| **Employee's Name (Printed)** Felicia Scroggins | **Employee's Signature** [signature] | **Date** 6/14/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | |

EXHIBIT 40

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| Employee Name: Felicia Scroggins | Date of Birth: 3/22/77 | Cell Phone: 349-8744 | Alternate Phone: — |
| RANK: Fire Engineer | SHIFT: C | ASSIGNMENT: E-18 | |
| Date(s) of Absence FROM 8/29/22 TO 9/26/22 | | Place of Recovery( Address, City, State, ZIP) | |
| Reason for Absence (Include Specific Illness or Injury): F43.0 | | Date of Injury / Illness / Surgery: 8/15/22 | Date of First Physician's Exam: 8/29/22 |
| Date of Most Recent Physicians Exam: 8/29/22 | PRINT the physician's name. Nakia S. Thomas | Was illness/injury job-related? ☐ YES ☑ NO | SFD Accident Pkg.? ☐ YES ☑ NO |
| Physician Address: 745 Olive St Shreveport, LA 71104 | | Physician Phone #: (318) 207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☐ Return to work on: ______________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ______________

☑ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: 9/26/22

**LIMITED / MODIFIED DUTY RESTRICTIONS**

☐ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☑ **Employee may work** 4 hr **a day** 5 **days a week. Employee has the following restrictions:**

______________

______________

| | | |
|---|---|---|
| Physician's Name (Printed): Nakia S. Thomas | Physician's Signature: [signature] | Date: 29Aug22 |
| Employee's Name (Printed): Felicia Scroggins | Employee's Signature: [signature] | Date: 8/29/22 |
| Supervisor's Name (Printed) | Supervisor's Signature | |

EXHIBIT 41

THE FAMILY DOCTORS

The Family Doctors

8383 MILLICENT WAY
SHREVEPORT, LA 71115
Phone: (318) 797-6661
Fax: (318) 795-8512

RE: Felicia R. Scroggins Date of Birth: 05/22/1977

I am Ms Scroggins primary care physician. She is currently going through some mental health issues. She is under the care of a therapist. In this situation we allow the therapist to make decisions regarding employment schedule. Please follow the Sick Leave Use Certificate instructions given by her.

Sherin Mer

Sherin Hanna Mercer MD

EXHIBIT
42

Needing help Inbox x

**HotGirlFe Live** <lrscroggins@gmail.com>
to michaelperser, dusc2288@aol.com

Thu, Sep 1, 2022, 12:44 PM

As union president and Chaplain I wanted you both to be aware of this and maybe help in that aide of an emergency plan for fellow firefighters stugging with mental health. Telling staff you are not ok and they just say ok and hang up or leave the room with out seeing if u even need any type of assistance, is horrific. A few did ask but not in the position to actually help, most move on like it was never said. People have to place their personal feelings aside for members and focus on what's going on. How would you feel if u r hurt, down, depressed and all u hear is ppl fighting over who's gotta reach out because for whatever reason they don't care for the person seeking help. We all need to start asking what's the reason one has a problem with another, is it legitimate problem and is there anything that can be done to resolve. Im willing to fix whatever problem ANYONE has with ME because all thats been done to me has been forgiven, not forgotten but forgiven, in aspects of this job. Its only one person on this job I never want to work with and thats to keep down confusion.

I sent this to Fire, Deputy Chief and Safety Officer.

GM. I am struggling with all this and I'm asking for HELP. No one seems to care. I do not want to place my life, coworkers life or patients life n danger. Im not focused. Instead of being completely off, I asked to work 4hours to see how I cope but was denied because it wasn't signed by a doc. I can't get in to see a doctor until the 13th. It states in section 8.1 If sustainable evidence suggest that a members reason for sick leave is questionable, the Fire Chief or his/her designee may require a licensed health care provider's certification of illness or injury at members expense and that was provided by a licensed health care provider. I still made an appointment with Person Solutions due to the harassment I normal receive for trying to be open about my mental health. My dad is DEAD, I repeated watch health care provider try to KILL him, I left for a few days and never was able to say GOODBYE thinking he would be here when I returned. Im stugging with should I have stayed to ensure these people don't kill him and properly take care of him, im struggling with the way in which he left and conditions they had him him from lack of care. I dont feel I should have to go into details to get help, but this is just a few of the things. I also struggle with several ppl trying to take his life but they are still operating in a healthcare environment. I have had a time dealing with what I have endured during the process. My mom is wanting to DIE and Im an having trouble coping with that and the struggles of trying to take care of her and keep her alive. I merely asking for some light duty work to see how I can cope, some interaction help but all the negative from this job is making it even more overwhelming. I am asking for HELP.

2

**michael perser**

Thu, Sep 1, 2022, 8:33 PM

I apologize for taking so long to respond back. I have been at work at the hospital al day. You have raised several troubling issues. I am working to help with

**HotGirlFe Live** <lrscroggins@gmail.com>
to michael

Sat, Sep 3, 2022, 7:51 PM

I am just seeing your response. Thank you so much. I appreciate it. Our policy is not setup for light duty for illness but no one reads it. Most just read enough to enforce discipline. This job is very sad. Im sure I'm not the only one dealing with issues, aim just no ashamed to speak out.

...

EXHIBIT

43

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| **Employee Name** Felicia Scroggins | **Date of Birth** 5/28/77 | **Cell Phone** 318-349-9944 | **Alternate Phone** — |
| **RANK** Fire Engineer | **SHIFT** C | **ASSIGNMENT** E-18 | |
| **Date(s) of Absence** FROM 9-6-22 TO 9-7-22 | **Place of Recovery( Address, City, State, ZIP)** 9314 Sandalwood Dr S'port LA 71118 | | |
| **Reason for Absence (Include Specific Illness or Injury)** Medical procedure | **Date of Injury / Illness / Surgery:** 9-7-22 | **Date of First Physician's Exam:** 9-7-22 | |
| **Date of Most Recent Physicians Exam:** 9-7-22 | **PRINT the physician's name.** Dr Linzay | **Was illness/injury job-related?** ☐ YES ☑ NO | **SFD Accident Pkg.?** ☐ YES ☑ NO |
| **Physician Address:** 8001 Youree Dr Suit 540 | | **Physician Phone #:** 318-631-9121 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

□ **Return to work on:**________________ with No Restrictions or Limitations **(REGULAR DUTY)**

□ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ________________

□ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on:____________

□ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ____________

**LIMITED / MODIFIED DUTY RESTRICTIONS**

□ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Employee may work**________**hours a day**________**days a week. Employee has the following restrictions:**

| | | |
|---|---|---|
| **Physician's Name (Printed)** See attached form | **Physician's Signature** | **Date** |
| **Employee's Name (Printed)** Felicia Scroggins | **Employee's Signature** [signature] | **Date** 9/8/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | |

EXHIBIT 44

GIS GastroIntestinal Specialists A.M.C.
3217 Mabel Street
Shreveport, LA 71103
318-631-9121

Date: 9/6/22

To whom it may concern,

This is a note to confirm that Felicia Scroggins was seen in my office today for a doctor's appointment and may return to work/school on 9/8/22

If you have any questions in this regard, please do not hesitate to call me.

Sincerely,
Abby Linzay, MD /Angela Dewerff RN

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| **Employee Name** Felicia Scroggins | **Date of Birth** 5/22/77 | **Cell Phone** | **Alternate Phone** |
| **RANK** | **SHIFT** | | **ASSIGNMENT** |
| **Date(s) of Absence** FROM 9/26/22 TO 10/24/22 | **Place of Recovery( Address, City, State, ZIP)** | | |
| **Reason for Absence (Include Specific Illness or Injury)** | **Date of Injury / Illness / Surgery:** | | **Date of First Physician's Exam:** |
| **Date of Most Recent Physicians Exam:** 9/26/22 | **PRINT the physician's name.** Nakia S. Thomas | **Was illness/injury job-related?** ☐ YES ☒ NO | **SFD Accident Pkg.?** ☐ YES ☒ NO |
| **Physician Address:** 745 Olive St Shreveport, LA 71104 | | **Physician Phone #:** 207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

☐ **Return to work on:** ________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ________

☒ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: 10/24/22

### LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☒ **Employee may work** 4hr **a day** 5 **days a week. Employee has the following restrictions:**

| | | |
|---|---|---|
| Clinician **Physician's Name (Printed)** Nakia Thomas | Clinician **Physician's Signature** NSThomas, LCSW-BACA | **Date** 26 Sept 22 |
| **Employee's Name (Printed)** Felicia Scroggins | **Employee's Signature** [signature] | **Date** 9/26/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | |

EXHIBIT 45

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| **Employee Name** Felicia Scroggins | **Date of Birth** 5/22/77 | **Cell Phone** 3183499944 | **Alternate Phone** 3186363037 |
| **RANK** Fire Engineer | **SHIFT** C | **ASSIGNMENT** E-18 | |
| **Date(s) of Absence** FROM 10/25/22 TO 11/22/22 | | **Place of Recovery( Address, City, State, ZIP)** 9314 Sandalwood Dr Shreveport LA 71118 | |
| **Reason for Absence (Include Specific Illness or Injury)** F41.1 | | **Date of Injury / Illness / Surgery:** 8/15/22 | **Date of First Physician's Exam:** 8/29/22 |
| **Date of Most Recent Physicians Exam:** 10/25/22 | **PRINT the physician's name.** Nakia S. Thomas | **Was illness/injury job-related?** ☐ YES ☑ NO | **SFD Accident Pkg.?** ☐ YES ☑ NO |
| **Physician Address:** 745 Olive St Suite 112 Shreveport, LA | | **Physician Phone #:** (318)207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☐ **Return to work on:** ____________ with No Restrictions or Limitations **(REGULAR DUTY)**

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ____________

☑ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: 11/22/22

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ____________

**LIMITED / MODIFIED DUTY RESTRICTIONS**

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work** 4 **hours a day** 5 **days a week. Employee has the following restrictions:**

clinician

| | | |
|---|---|---|
| **Physician's Name (Printed)** Nakia Thomas | **Physician's Signature** [signature] LCSW-BACA | **Date** 25 Oct 22 |
| **Employee's Name (Printed)** Felicia Scroggins | **Employee's Signature** [signature] | **Date** 10/25/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** [signature] | **Date** 11/3/22 |

EXHIBIT 46

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| **Employee Name** Felicia Scroggins | **Date of Birth** 5/22/77 | **Cell Phone** 318 348 9846 | **Alternate Phone** 318 686 8037 |
| **RANK** Fire Engineer | **SHIFT** C | **ASSIGNMENT** E18 | |
| **Date(s) of Absence** **FROM** 11/22/22 **TO** 12/20/22 | **Place of Recovery( Address, City, State, ZIP)** 9314 Sandalwood Dr Sport LA 71118 | | |
| **Reason for Absence (Include Specific Illness or Injury)** F41.1 | **Date of Injury / Illness / Surgery:** 8/15/22 | **Date of First Physician's Exam:** 3/29/22 | |
| **Date of Most Recent Physicians Exam:** 12/1/22 | **PRINT the physician's name.** Nakia S. Thomas | **Was illness/injury job-related?** ☐ YES ☑ NO | **SFD Accident Pkg.?** ☐ YES ☑ NO |
| **Physician Address:** 745 Olive St Suite 112 Shreveport, LA 71104 | | **Physician Phone #:** (318)207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☐ **Return to work on:**________________ with No Restrictions or Limitations **(REGULAR DUTY)**

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ________________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: 12/20/22

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ____________

## LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work** 4 **hours a day** 5 **days a week. Employee has the following restrictions:**

| | | |
|---|---|---|
| Clinician's **Physician's Name (Printed)** Nakia Thomas | **Physician's Signature** [signature] LCSW-BACS | **Date** 1 Dec 22 |
| **Employee's Name (Printed)** Felicia Scroggins | **Employee's Signature** [signature] | **Date** 12/1/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | **Date** |

EXHIBIT 47

**APPENDIX A**

# SHREVEPORT FIRE DEPARTMENT
## SUPERVISORY ACTION REPORT

**Name:** Felicia Scroggins **Date:** 12/2/2022 (MM/DD/YYYY)

**Rank/Position:** Fire Engineer **Duty Assignment:** E-18-C

**Officer Filing Report:** Chief Ward Fields

**Location where incident occurred:**

**N/A**

**Describe the incident in detail (include date, time, place, parties involved):**

**N/A**

**List specific rules and/or policy violated:**

**The Shreveport Fire Department is a continual, first responder based service organization that provides emergency fire and medical services to the citizens of shreveport. In the last Five(5) years, you have either failed to perform, or was unwilling to perform, your duties as a Shreveport Fire Engineer for a total of 1153 days. This investigation will include but is not limited to, the total number of shifts and total hours of service that you failed or were unwilling to render in connection with your employment as a Shreveport Fire Engineer. Your personnel file and other records concerning your service with the Shreveport Fire Department will be reviewed and considerd in regard to this investigation and possible disciplinary action for excessive absentessism. The ability to fulfill your duties as required by the bona fide occupational qualification of a Fire Engineer shall be compared to your actual service time, or the amount of time that you failed or were unwilling to perform your duties, for the aforementioned periord of time.**

**RS 33:2500.A(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.**

**Expected improvement and/or standards for the future:**

**Compliance with all Departmental policies**

**Describe action if employee does not meet the improvement/standard required:**

**To be determined by the Fire Chief or his designee**

**Employee Comments:**



EXHIBIT 48

**APPENDIX A**

**I acknowledge that the above evaluation has been discussed with me and any signature does not imply agreement or disagreement.**

EMPLOYEE SIGNATURE

OFFICER'S SIGNATURE

WITNESS SIGNATURE

DATE: 12-02-2022
MM/DD/YYYY

(SIGNATURES NOT REQUIRED FOR ORAL COUNSELING)

**To be filled out after initial inquiry or preliminary investigation.**

| Type of Action Taken | |
|---|---|
| | Recommendation for Commendation |
| | Record of Oral Counseling |
| | Written Directive for Corrective Action |
| X | Referral for Administrative Investigation |



SFD FORM 90/05-0001
SAR FORM
Revised 1/2017

# SHREVEPORT FIRE DEPARTMENT
# NOTICE OF FORMAL INVESTIGATION AND/OR INTERROGATION

| | |
|---|---|
| **Individual Being Investigated:** Felicia Scroggins | |
| **Date Investigation Begins:** 12/2/2022 | **Investigating Officer:** Fire Clarence Reese, Jr. or his designee |

Per the rules set forth by RS 33:2181, the individual named above is being informed by virtue of this document:

- Nature of the investigation
- Identity and authority of person(s) conducting such investigation
- Specific charges or violations being investigated

If this notice is being issued for interrogation purposes the identity of all persons present during such interrogation shall also be listed below. Employees being investigated shall be given a copy of the Fire Fighter Bill of Rights.

**Nature of investigation:**

LA R.S. 33:2500 A. (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.

**Identify and authority of person(s) conducting such investigation:**

Chief Clarence Reese, Jr. or his designee

**Specific charges or violations being investigated:**

The Shreveport Fire Department is a continual, first responder based service organization that provides emergency fire and medical services to the Citizens of Shreveport. In the last Five (5) years, you have either failed to perform, or was unwilling to perform, your duties as a Shreveport Fire Engineer for a total of 1153 days. This investigation will include but is not limited to, the total number of shifts and total hours of service that you failed or were unwilling to render in connection with your employment as a Shreveport Fire Engineer. Your personnel file and other records concerning your service with the Shreveport Fire Department will be reviewed and considered in regard to this investigation and possible disciplinary action for excessive absentessism. The ability to fulfill your duties as required by the bona fide occupational qualification of a Fire Engineer shall be compared to your actual service time, or the amount of time that you failed or were unwilling to perform your duties, for the aforementioned period of time.

RS 33:2500.A(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.

| | | |
|---|---|---|
| **Signature of Officer Serving Notice of Formal Investigation:** | Ward L. Fields | **Date:** 12-2-22 |
| **Signature of Individual Being Investigated:** | [signature] | **Date:** 12/2/22 |

**STOP HERE—If Issuing A Notice of Formal Investigation Only—STOP HERE**

ALL QUESTIONS ASKED TO THE MEMBER IDENTIFIED IN THIS NOTICE OF FORMAL INVESTIGATION BY ANY PERSON IDENTIFIED AS THE PERSON(S) CONDUCTING THE INVESTIGATION OR THEIR DESIGNEE **SHALL BE RECORDED**. THE ONLY EXCEPTION TO THIS SHALL BE INITIAL QUESTIONING BY THE DIRECT

EXHIBIT 49

# SHREVEPORT FIRE DEPARTMENT
# NOTICE OF FORMAL INVESTIGATION AND/OR INTERROGATION

## The Following Applies to Interrogations

**Name of Officer Conducting Interrogation:** Chief Clarence Reese, Jr.

**Place where Interrogation Conducted:** 263 North Common Street, Shreveport, Louisiana 71101

| **Date/Time Interrogation Began:** | | **Date/Time Interrogation Ended:** | |
|---|---|---|---|

**Name of all persons present during this Interrogation:**

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**Additional Information/Notes:**

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| Employee Name: Felicia Scroggins | Date of Birth: 5/22/77 | Cell Phone: 3499944 | Alternate Phone: — |
| RANK: Fire Engineer | SHIFT: C | ASSIGNMENT: E-18 | |
| Date(s) of Absence FROM 2/20/22 TO | Place of Recovery( Address, City, State, ZIP) | | |
| Reason for Absence (Include Specific Illness or Injury): F41.1 | Date of Injury / Illness / Surgery: 8/15/22 | Date of First Physician's Exam: 3/29/22 | |
| Date of Most Recent Physicians Exam: 12/15/22 | PRINT the physician's name. Nakia S. Thomas | Was illness/injury job-related? ☐ YES ☑ NO | SFD Accident Pkg.? ☐ YES ☑ NO |
| Physician Address: 745 Olive St Suite 112 Shreveport, LA 71104 | | Physician Phone #: (318) 207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

□ Return to work on: ______________ with No Restrictions or Limitations

□ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________

□ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: 1/17/22

□ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ______________

**LIMITED / MODIFIED DUTY RESTRICTIONS**

□ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

□ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

□ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

□ **Employee may work** 4 a day 5 days a week. **Employee has the following restrictions:**

| | | |
|---|---|---|
| Physician's Name (Printed): Nakia S. Thomas | Physician's Signature: [signature] LCSW-BACS | Date: 15 Dec 22 |
| Employee's Name (Printed): Felicia Scroggins | Employee's Signature: [signature] | Date: 12/27/22 |
| Supervisor's Name (Printed): Ward Fields | Supervisor's Signature: Ward Fields | Date: 12-27-22 |

EXHIBIT 50

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

Employee Name: Felicia Scroggins
Date of Birth: 5/22/77
Cell Phone: 3498944
Alternate Phone: —
RANK: Fire Engineer
SHIFT: C
ASSIGNMENT: E-13
Date(s) of Absence FROM 8/29/22 TO 1/11/23
Place of Recovery( Address, City, State, ZIP): 9314 Sandalwood blvd CA 71118 + Light Duty
Reason for Absence (Include Specific Illness or Injury): F41.1
Date of Injury / Illness / Surgery: 8/15/22
Date of First Physician's Exam: 8/29/22
Date of Most Recent Physicians Exam: 12/15/22
PRINT the physician's name: Nakia Thomas
Was illness/injury job-related? ☐ YES ☑ NO
SFD Accident Pkg.? ☐ YES ☑ NO
Physician Address: 745 Olive St Suite 112 Shreveport, LA 71104
Physician Phone #: (318)207-0267

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

☐ Return to work on: ______________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ______________

☑ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: 1/11/23

### LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☑ **Employee may work** 4hr **a day** 5 **days a week. Employee has the following restrictions:**

Physician's Name (Printed): Nakia Thomas
Physician's Signature: [signature]
Date: 15Dec22

Employee's Name (Printed): Felicia Scroggins
Employee's Signature: [signature]
Date: 12/30/22

Supervisor's Name (Printed):
Supervisor's Signature:
Date:

EXHIBIT 51

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| Employee Name | Date of Birth | Cell Phone | Alternate Phone |
|---|---|---|---|
| Felicia Scoggins | 5/20/77 | 3498944 | — |

| RANK | SHIFT | ASSIGNMENT |
|---|---|---|
| Fire Engineer | C | E18 |

| Date(s) of Absence | Place of Recovery( Address, City, State, ZIP) |
|---|---|
| FROM 12/12/22 TO 12/12/22 | 9314 Sandlewood Dr Spt LA |

| Reason for Absence (Include Specific Illness or Injury) | Date of Injury / Illness / Surgery: | Date of First Physician's Exam: |
|---|---|---|
| ill | 12/12/22 | 12/16/22 |

| Date of Most Recent Physicians Exam: | PRINT the physician's name. | Was illness/injury job-related? | SFD Accident Pkg.? |
|---|---|---|---|
| 12/19/22 | Dr Sherry Mercer | ☐ YES ☒ NO | ☐ YES ☒ NO |

| Physician Address: | Physician Phone #: |
|---|---|
| 8383 Millicent Way | 318-797-6661 |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

☐ **Return to work on:** ________________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ________________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ________

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ________

### LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work ________ a day ________ days a week. Employee has the following restrictions:**

| Name (Printed) | Signature | Date |
|---|---|---|
| Physician's Name (Printed): | Physician's Signature: | Date: |
| Employee's Name (Printed): Felicia Scoggins | Employee's Signature: [signature] | Date: 12/29/22 |
| Supervisor's Name (Printed): Ward Fields | Supervisor's Signature: Ward Fields | Date: 12-29-22 |

EXHIBIT 52

GastroIntestinal Specialists A.M.C.
3217 Mabel Street
Shreveport, LA 71103
318-631-9121

Date: 12/14/2022

To whom it may concern,

This is a note to confirm that Felicia Scroggins was seen in my office today for a doctor's appointment and may return to work/school on Friday 12/16/2022

If you have any questions in this regard, please do not hesitate to call me.

Sincerely,
Abby Linzay, MD /Jolene Jackson, LPN

Abby Linzay

EXHIBIT
53

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| Employee Name | Date of Birth | Cell Phone | Alternate Phone |
|---|---|---|---|
| Felicia Scroggins | 5/23/77 | 349-3944 | — |

| RANK | SHIFT | ASSIGNMENT |
|---|---|---|
| Fire Engineer | C | E13 |

| Date(s) of Absence | Place of Recovery( Address, City, State, ZIP) |
|---|---|
| FROM 12/15/22 TO 12/23/22 | 9314 Sandalwood Dr Spt LA |

| Reason for Absence (Include Specific Illness or Injury) | Date of Injury / Illness / Surgery: | Date of First Physician's Exam: |
|---|---|---|
| COVID | 12/15/22 ~~12/23/22~~ | 12/16/22 |

| Date of Most Recent Physicians Exam: | PRINT the physician's name. | Was illness/injury job-related? | SFD Accident Pkg.? |
|---|---|---|---|
| 12/19/22 | Dr Sherin Mercer | ☐ YES ☒ NO | ☐ YES ☒ NO |

| Physician Address: | Physician Phone #: |
|---|---|
| 8333 Millicent Way | 318-797-6661 |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

### EMPLOYEE'S WORK STATUS

☐ **Return to work on:** ______________________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ____________

☐ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: ____________

### LIMITED / MODIFIED DUTY RESTRICTIONS

☐ **Assigned to Sedentary Work**- Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work**-Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work**- Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☐ **Employee may work ________ a day ________ days a week. Employee has the following restrictions:**

______________________________________________

______________________________________________

| Physician's Name (Printed) | Physician's Signature | Date |
|---|---|---|
| | | |
| **Employee's Name (Printed)** | **Employee's Signature** | **Date** |
| Felicia Scroggins | [signature] | 12/27/22 |
| **Supervisor's Name (Printed)** | **Supervisor's Signature** | **Date** |
| Ward Fields | [signature] | 12-27-22 |

EXHIBIT 54

## RETURN TO WORK/SCHOOL

- ☐ John B. Pope, M.D.
- ☐ Marion N. Cash, M.D.
- ☐ Ann R. Landry, M.D.
- ☐ Jeffrey A. German, M.D.
- ☑ Sherin H. Mercer, M.D.
- ☐ C. Scott Patton, M.D.
- ☐ Timothy E. Mathis, M.D.
- ☐ C. Ross Hamic, M.D.
- ☐ Elizabeth O. Hudnall, M.D.
- ☐ Katie B. Kerr, M.D.
- ☐ Mary M. Eskander, M.D.
- ☐ Mary S. McFerren, P.A.-C
- ☐ Cassie Miller, P.A.-C
- ☐ Colleen Cline, P.A.-C
- ☐ Caitlin Willsie, FNP-C

8383 Millicent Way
Shreveport, Louisiana 71115
Phone (318) 797-6661 • Fax (318) 795-8512

Date: 12-22-22

Patient Name: Felicia Scroggins

Excused from work/school:

From: 12-22-22 Through: 12-23-22

Doctor: Sherin Mercer

Return Appointment: 

The Family Doctors

WWW.FAMDOCS.COM

## RETURN TO WORK/SCHOOL

- ☐ John B. Pope, M.D.
- ☐ Marion N. Cash, M.D.
- ☐ Ann R. Landry, M.D.
- ☐ Jeffrey A. German, M.D.
- ☑ Sherin H. Mercer, M.D.
- ☐ C. Scott Patton, M.D.
- ☐ Timothy E. Mathis, M.D.
- ☐ C. Ross Hamic, M.D.
- ☐ Elizabeth O. Hudnall, M.D.
- ☐ Katie B. Kerr, M.D.
- ☐ Mary M. Eskander, M.D.
- ☐ Mary S. McFerren, P.A.-C
- ☐ Cassie Miller, P.A.-C
- ☐ Colleen Cline, P.A.-C
- ☐ Caitlin Willsie, FNP-C

8383 Millicent Way
Shreveport, Louisiana 71115
Phone (318) 797-6661 • Fax (318) 795-8512

Date: 12-19-22

Patient Name: Felicia Scroggins

Excused from work/school:

From: 12-19-22 Through: 12-21-22

Doctor: Sherin Mercer

Return Appointment: 

The Family Doctors

WWW.FAMDOCS.COM

INTER-OFFICE MEMORANDUM
City of Shreveport

**SHREVEPORT FIRE DEPARTMENT**
**ADMINISTRATION**

**PHONE:** 318-673-6655 Fax: 318-673-6656

**DATE:** January 11, 2023

**TO:** **Felicia Scroggins**
**Fire Engineer**

**FROM:** **Clarence J. Reese Jr.**
**Fire Chief**

**SUBJECT:** Notice of Pre-disciplinary Conference – **Thursday, January 19 2023 at 3:00 P.M.**

A Pre-disciplinary Conference has been scheduled for you on the above date and time in the conference room at the Central Fire Station located at 263 N. Common St. You are to report to the PDC meeting in uniform and grooming standards according to Shreveport Fire Department Administrative Procedures. It is in reference to violation of:

**Nature of Investigation:**

On Friday, December 2, 2022 you received a Notice of Formal Investigation from the Shreveport Fire Department for:

LA R.S. 33:2500 A. (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner,

**Possible violations are as follows:**

The Shreveport Fire Department Fire Engineer is a critically skilled position that requires years of prior experience and service within the Shreveport Fire Department. The Bona Fide Occupational Qualification (BFOQ) is listed within the job description of Fire Engineer, as defined by the Shreveport Municipal Fire and Police Civil Board (Board).

The Chief of the Fire Department is compelled by his/her own job description as defined by the Board. Maintenance of Standards and the proper administration of all Fire personnel is required by the Chief of Fire.

This investigation began when Louisiana Title 33:2500, A., 1, was applied to the job performance of Fire Engineer Felicia Scroggins. Engineer Scroggins was one of over ten Fire employees on the extended sick leave roster. Chief Reese initiated an investigation on seven employees, with the intent of further consideration on the remainder of the sick leave roster. Engineer Scroggins was listed at the top of the extended sick leave list with the highest number



EXHIBIT
55

of days absent. The initial NOFI was issued on 12/02/2022 in reference to the *"unwillingness or failure to perform the duties of his position in a satisfactory manner"*.

The BFOQ's listed in the Board's job description for Fire Engineer are very clear. They are clearly listed under "General Statement of Duties". We also add that arriving to work at a fire station, physically and mentally being able to wear necessary Firefighting gear, is also a job requirement, or a BFOQ.

From 6/4/2018 to 11/14/2022 Engineer Scroggins has missed several work shifts, while maintaining full compensation as a Fire Engineer:

| **Employee** | **Felicia Scroggins** | | | |
|---|---|---|---|---|
| **Date Off** | **Date Returned** | **Total Calendar Days Off** | **Shifts Absent** | **Hours Absent** |
| 6/4/2018 | 6/6/2018 ill | 2 | 1 | 24 |
| 6/12/2018 | 7/23/2018 thyroid surgery | 41 | 13 | 312 |
| 9/17/2018 | 9/19/2018 abdominal pain | 2 | 1 | 24 |
| 1/15/2019 | 1/21/2019 shoulder hip lower back | 6 | 3 | 72 |
| 2/16/2019 | 3/10/2019 shoulder back hip | 22 | 9 | 216 |
| 3/28/2019 | 3/23/2020 stress | 361 | 118 | 2832 |
| 7/25/2020 | 7/15/2021 stress | 355 | 118 | 2832 |
| 11/15/2021 | 7/13/2022 knee surgery | 240 | 79 | 1896 |
| 7/13/2022 | 11/14/2022 Dads shifts | 124 | 42 | 1008 |
| | **TOTALS** was not off | **Missed 1,153 days of 1,779 available days** | **Missed 384 shifts of 594 available shifts** | **Missed 9,216 hours of 14,256 available hours** |

From the first date off in 2018 to the date before the Notice of Formal investigation was produced, Fire Engineer Scroggins has missed 64.6% of work.

Fire Engineer Scroggins has returned to work just prior to the 52 weeks/365-day Civil Service Law requirement under LA R.S. 33:1995 on two occasions. However, the failure to perform her duties as a Fire Engineer was not limited to those incidents. When sick leave is used it requires her co-workers to work out of class or overtime personnel to be called in. This puts an extreme strain on staffing and experienced citizen protection, and continuity of crew integrity.

At the time of this investigation, Engineer Felicia Scroggins is on limited duty, with no return to full duty date as an Engineer. Based on the written documentation sent to me by Dr. Robert Clanton, Engineer Scroggins did not obtain a satisfactory Fit- for-duty examination as prescribed by SFD Administrative Procedure:

***Administrative Procedure NO.7: 4: 4.1***

***"4. Fit for Duty***

***4.1. Members reporting for duty must be able to perform the 14 essential job tasks according to NFPA 1582 and designated functions of their civil service position in a safe, effective, efficient, and productive manner. Should reasonable cause exist to question a member's fitness for duty (e.g., injury, extensive use of sick leave, documented performance deficits, etc.), the member may be temporarily removed, reassigned, or temporarily prohibited from returning to duty until evaluated as ordered by the Fire Chief"***

***Administrative Procedure NO: 7C: J***

***'J. Limited Duty - Assignments that can be performed by a member that has been injured or has an illness that is work-related and covered by Worker's Compensation for short term, i.e., not to exceed 90 days, that would prevent them from performing their normal duties. Limited Duty is not to exceed ninety days, unless otherwise approved by the Fire Chief every thirty days thereafter. For the purposes of this procedure, illness and injury may be used interchangeably"***

After thorough consideration on behalf of the Shreveport Fire Department, I have considered this investigation to be prudent as a steward of the organization. The inability to fulfill the job requirements of Fire Engineer has been the focus of this investigation. The BFOQ has not been met for at least 64.6% of the past 4.5 years as reported annually to the Board. Based on the information that was gathered from the attendance records, her personal statements in front of training staff, further validated by her inability to obtain a satisfactory Fitness for Duty examination

The PDC is a meeting for the employee to bring any further evidence or witnesses before any corrective action is administered. The FF Bill of Rights allows this and also allows you to have counsel and/or representative at the PDC. However, it is your responsibility to ensure your counsel or representative be there for the scheduled PDC date and not Fire Administration's responsibility to coordinate this date with your counsel or representative.

**PLEASE BE ADVISED THAT YOUR SIGNATURE IS REQUIRED.**
Thank you for your assistance. If you have any question, please feel free to call my office.

Clarence J. Reese Jr.
Fire Chief

c: Canisha Tisby
Kristina Douglas

**Affixing your signature below only signifies that you are in receipt of this notice and were advised that your presence is required.**

| | | | |
|---|---|---|---|
| | 1/5/23 | 17:07 | |
| **Employee's Signature** | **Date** | **Time** | **Administering Supervisor** |

INTER-OFFICE MEMORANDUM
City of Shreveport

**SHREVEPORT FIRE DEPARTMENT**
**ADMINISTRATION**

**PHONE:** 318-673-6655 Fax: 318-673-6656

**DATE:** January 19, 2023

**TO:** **Felicia Scroggins**
**Fire Engineer**

**FROM:** **Clarence Reese, Jr.**
**Fire Chief**

**SUBJECT:** Personnel Action Regarding PDC January 19, 2023

This communication is in reference to the above Pre-Disciplinary Conference (PDC) and the personnel action that is taken as a result.

**Nature of Investigation:**

**§2500. Corrective and disciplinary action for maintaining standards of service**
**A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:**
**(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.**

On December 02, 2022, you received a NOFI related to the unwillingness or failure to perform the duties of his position in a satisfactory manner:

The Shreveport Fire Department Fire Engineer is a critically skilled position that requires years of prior experience and service within the Shreveport Fire Department. The Bona Fide Occupational Qualification (BFOQ) is listed within the job description of Fire Engineer, as defined by the Shreveport Municipal Fire and Police Civil Board (Board).

The Chief of the Fire Department is compelled by his/her own job description as defined by the Board. Maintenance of Standards and the proper administration of all Fire personnel is required by the Chief of Fire.

This investigation began when Louisiana Title 33:2500, A., 1, was applied to the job performance of Fire Engineer Felicia Scroggins. Engineer Scroggins was one of over ten Fire employees on the



EXHIBIT
56

extended sick leave roster. Chief Reese initiated an investigation on seven employees, with the intent of further consideration on the remainder of the sick leave roster. Engineer Scroggins was listed at the top of the extended sick leave list with the highest number of days absent. The initial NOFI was issued on 12/2/2022 in reference to the *"unwillingness or failure to perform the duties of his position in a satisfactory manner"*.

The BFOQ's listed in the Board's job description for Fire Engineer are very clear. They are clearly listed under "General Statement of Duties". We also add that arriving to work at a fire station, physically and mentally being able to wear necessary Firefighting gear, is also a job requirement, or a BFOQ.

From 6/4/2018 to 11/14/2022 Engineer Scroggins has missed several work shifts, while maintaining full compensation as a Fire Engineer:

| **Employee** | **Felicia Scroggins** | | | |
|---|---|---|---|---|
| **Date Off** | **Date Returned** | **Total Calendar Days Off** | **Shifts Absent** | **Hours Absent** |
| 6/4/2018 | 6/6/2018 ill | 2 | 1 | 24 |
| 6/12/2018 | 7/23/2018 thyroid surgery | 41 | 13 | 312 |
| 9/17/2018 | 9/19/2018 abdominal pain | 2 | 1 | 24 |
| 1/15/2019 | 1/21/2019 Shoulder, hip, lower back pain | 6 | 3 | 72 |
| 2/16/2019 | 3/10/2019 Shoulder, back, hip pain | 22 | 9 | 216 |
| 3/28/2019 | 3/23/2020 Stress leave | 361 | 118 | 2832 |
| 7/25/2020 | 7/15/2021 Stress leave | 355 | 118 | 2832 |
| 11/15/2021 | 7/13/2022 Knee Surgery | 240 | 79 | 1896 |
| ~~7/13/2022~~ | 11/14/2022 Dads death stress anxiety | 124 | 42 | 1008 |
| 8/22/2022 - light duty | **TOTALS** | **Missed 1,153 days of 1,779 available days** | **Missed 384 shifts of 594 available shifts** | **Missed 9,216 hours of 14,256 available hours** |

From the first date off in 2018 to the date before the Notice of Formal investigation was produced, Fire Engineer Scroggins has missed 64.6% of work.

Fire Engineer Scroggins has returned to work just prior to the 52 weeks/365-day Civil Service Law requirement under LA R.S. 33:1995 on two occasions. However, the failure to perform her duties as a Fire Engineer was not limited to those incidents. When sick leave is used it requires her co-workers to work out of class or overtime personnel to be called in. This puts an extreme strain on staffing and experienced citizen protection, and continuity of crew integrity.

At the time of this investigation, Engineer Felicia Scroggins is on limited duty, with no return to full duty date as an Engineer. Based on the written documentation sent to me by Dr. Robert Clanton, Engineer Scroggins did not obtain a satisfactory Fit- for-duty examination as prescribed by SFD Administrative Procedure:

*Administrative Procedure NO.7: 4: 4.1*
*"4. Fit for Duty*
*4.1. Members reporting for duty must be able to perform the 14 essential job tasks according to NFPA 1582 and designated functions of their civil service position in a safe, effective, efficient, and productive manner. Should reasonable cause exist to question a member's fitness for duty (e.g., injury, extensive use of sick leave, documented performance deficits, etc.), the member may be temporarily removed, reassigned, or temporarily prohibited from returning to duty until evaluated as ordered by the Fire Chief"*

*Administrative Procedure NO: 7C: J*
*'J. Limited Duty - Assignments that can be performed by a member that has been injured or has an illness that is work-related and covered by Worker's Compensation for short term, i.e., not to exceed 90 days, that would prevent them from performing their normal duties. Limited Duty is not to exceed ninety days, unless otherwise approved by the Fire Chief every thirty days thereafter. For the purposes of this procedure, illness and injury may be used interchangeably"*

During your PDC you mentioned the reasons you have been off and the reasons they will not allow you to perform as a Fire Engineer. You have raised concerns about being triggered while in emergency and non-emergency incidents. During the PDC you did not provide adequate information to substantiate the 64.6% of work missed and failure to fill the Bona Fide Occupational Qualification (BFOQ) listed within the job description of Fire Engineer, as defined by the Shreveport Municipal Fire and Police Civil Board (Board).

I will sustain the charges related to LA R.S. 33:2500, A.,1

**For this infraction, your employment with the Shreveport Fire Department is terminated effective January 19, 2023. You will be out processed in payroll and will receive your final check on January 31, 2023. Any questions concerning your final check can be answered by calling Mrs. Faison Autry at 673-6661.**

**You are hereby advised that in accordance with local Municipal Fire and Police Civil Service Board Policy:**

*Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen (15) days after receipt of the personnel action documentation, demanding in writing a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee hearing and investigation within thirty (30) days, after receipt of written request.*

[signature]

Clarence J. Reese, Jr.
Fire Chief

1/19/23
@5:30PM

**Hand Delivered**

# SHREVEPORT FIRE DEPARTMENT
## SICK LEAVE USE CERTIFICATE

This certificate must be filled out completely each time an employee is off duty due to illness or injury. If additional space is needed, please add additional pages and/or documentation from physician. **This form or release on Physician's Letterhead must be completed BEFORE the employee is allowed to return to duty.**

| | | | |
|---|---|---|---|
| Employee Name: Felicia Scroggins | Date of Birth: 5/22/77 | Cell Phone: 3183498944 | Alternate Phone: — |
| RANK: Fire Engineer | SHIFT: C | | ASSIGNMENT: E18 |
| Date(s) of Absence FROM 8/29/22 TO 2/08/23 | Place of Recovery( Address, City, State, ZIP): 9314 Sandalwood Dr Spt LA SFD | | |
| Reason for Absence (Include Specific Illness or Injury): F41.1 | Date of Injury / Illness / Surgery: 8/15/22 | | Date of First Physician's Exam: 8/29/22 |
| Date of Most Recent Physicians Exam: 1/11/23 | PRINT the physician's name. Nakia S. Thomas | Was illness/injury job-related? ☐ YES ☑ NO | SFD Accident Pkg.? ☐ YES ☑ NO |
| Physician Address: 745 Olive St Suite 112 Shreveport, LA 71104 | | Physician Phone #: (318) 207-0267 | |

**Physician's Report and Instructions.**

***Shreveport Fire Department employees perform many duties, other than firefighting. Our department offers Limited Duty/Modified Duty assignments for All Injuries/Illnesses. Please complete this form for each exam.***

**EMPLOYEE'S WORK STATUS**

☐ **Return to work on:** ______________ with No Restrictions or Limitations

☐ **Unable to return to work, patient is disabled. Unsure if patient will make full recovery at this time.** Patient will be re-evaluated on: ______________

☐ **Unable to return to work in Full Capacity or in a Limited / Modified Duty Assignment. Patient is disabled but expected to make full recovery.** Patient is unable to take care of self without assistance. The Patient is unable to drive or leave their home except to seek medical care and medical appointments. Patient will be re-evaluated on: ______________

☑ **Unable to return to work in Full Capacity but does have the ability to work in a *Limited / Modified Duty Assignment.*** Patient is clear to drive and off narcotic pain medication while at work. Patient may perform a limited / modified duty as identified. Patient is expected to make a full recovery. Patient will be re-evaluated on: 2/8/23

**LIMITED / MODIFIED DUTY RESTRICTIONS**

☐ **Assigned to Sedentary Work-** Maximum of 10lbs. lifting. Limited standing or walking. (Desk type work)

☐ **Assigned to Light Work-**Maximum of 20lbs. lifting. Carry objects less than 10lbs. for short periods.

☐ **Assigned to Medium Work-** Maximum of 50lbs. lifting. Carry objects less than 25lbs. for short periods.

☑ **Employee may work** 8 hr **a day** 5 **days a week. Employee has the following restrictions:**

beginning Monday 1/16/23

| | | |
|---|---|---|
| Physician's Name (Printed): Nakia S. Thomas | Physician's Signature: [signature] LCSW-BACS | Date: 11 Jan 23 |
| Employee's Name (Printed): Felicia Scroggins | Employee's Signature: [signature] | Date: 1/11/23 |
| Supervisor's Name (Printed): Chief Jeff Cash | Supervisor's Signature: Chief Jeff | Date: [illegible]/23 |

EXHIBIT

57

CITY OF SHREVEPORT

FIRE AND POLICE MUNICIPAL CIVIL SERVICE BOARD

**AMENDED and SUPPLEMENTAL APPEAL OF DISCIPLINARY ACTION AND REQUEST FOR INVESTIGATION**
**On behalf of FIRE ENGINEER FELICIA SCROGGINS**

I.

This is an appeal of disciplinary action brought pursuant to the provisions of La. R.S. 33:2501 A. Fire Engineer Felicia Scroggins is a permanent employee in the classified fire service. On January 19, 2023, following a pre-disciplinary hearing, the Fire Chief, Clarence Reese, determined that Fire Engineer Scroggins had violated departmental rules and regulations and was in violation of La. R.S. 33:2500(A)(1) by "unwillingness or failure to perform the duties of [her] position in a satisfactory manner."

Fire Engineer Scroggins filed a timely notice of appeal, and on January 26, 2023, at a special session, the Shreveport Municipal Fire and Police Civil Service Board set a hearing date for June 14, 2023.

Fire Engineer Scroggins now appears to file an amended and supplemental appeal. The amended and supplemental appeal is filed within 15 days of the date of termination and is thus timely. The hearing date is June 14, 2023, so the Fire Chief and appointing authority should have adequate opportunity to prepare response to the claims and requests submitted in this amended and supplemental appeal.

**RESTATED, AMENDED AND SUPPLEMENTAL GROUNDS FOR APPEAL**

Fire Engineer Scroggins was on limited duty at the time of termination and had just been released by her healthcare provider for extended work hours. She appeals the termination of

EXHIBIT 58

employment imposed by the Fire Chief and requests that this Board reverse the corrective action, declare the termination of her employment an absolute nullity, or in violation of law, and order her immediate reinstatement with back pay and full "make whole" relief. She further requests that all adverse entries and writings in her personnel file regarding this matter be withdrawn from her record and expunged.

La. R.S. 33:2501 (A) provides for appeals of corrective action. It states in relevant part:

> Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action.

Fire Engineer Scroggins shows that the termination of her employment was not reasonable action and was not taken in good faith or for cause because she was not in violation of the sick leave policy and she did, in fact, have a return-to-work plan.

Further, the Fire Chief failed or refused to engage in the interactive process to discuss accommodation of Fire Engineer Scroggins' condition and / or prematurely withdrew an existing accommodation.

Fire Engineer Scroggins further shows that the termination of her employment was not in good faith or for cause because of the Fire Chief's retaliatory and discriminatory motive.

**REQUEST FOR INVESTIGATION AND DECLARATION OF NULLITY**

The termination of Fire Engineer Scroggins' employment should be declared an absolute nullity because the personnel action was not taken by the lawful appointing authority.

The termination of Fire Engineer Scroggins' employment is also an absolute nullity because the Fire Chief violated La. R.S. 33:2181 (B)(7) and other provisions of the Fire Fighters' Rights under Investigation. Specifically, the Fire Chief provided a copy of Fire Engineer

Scroggins' recorded statements to the Shreveport Police Department, and a uniformed officer contacted Fire Engineer Scroggins about her recorded statements.

The Fire Chief also violated Fire Engineer Scroggins' rights by releasing personal information about her in violation of La. R.S. 33:2182, which states:

> No person, agency, or department shall release to the news media, press, or other public information agency a fire employee's home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the fire employee, with respect to an investigation of the fire employee.

Fire Chief Clarence Reese released, or caused to be released, confidential information with respect to the investigation of Engineer Scroggins to the Shreveport City Police. He also released, or caused to be released, to the Shreveport City Police, her recorded interrogation and her home address and contact information in violation of La. R.S. 33:2183. Pursuant to R.S. 33:2181 (C), the termination of Fire Engineer Scroggins' employment is an absolute nullity because of the violation of her statutory rights while under investigation, including her rights under La. R.S. 33:2181 and her rights under La. R.S. 33:2182.

Fire Engineer Scroggins requests that this amendment to her appeal be entered and that upon conclusion of all due proceedings that she be granted the following relief:

A. A declaration that the termination is an absolute nullity and that she be reinstated to her classified position with full back pay and benefits and all further relief necessary to make her fully whole;

B. Alternatively, a declaration that the termination was not taken in good faith or for cause and that she should be reinstated with full back pay and benefits and all further relief necessary to make her fully whole.

C. A declaration that the Fire Chief invaded Fire Engineer Scroggins' privacy by providing the Shreveport Police with a copy of her interrogation, an act which disclosed Engineer Scroggins' confidential medical information and exposed her to further investigation and interrogation by Shreveport Police.

D. The withdrawal and full expungement of all records and files maintained for personnel purposes, including Internal Affairs files and records, relating to the investigation and termination of her employment.

E. For reimbursement of reasonable costs and attorney's fees.

Respectfully submitted this 31st day of January, 2023

Allison A. Jones, La. Bar No. 16990
Pamela R. Jones, La. Bar No. 19640
Downer, Jones, Marino & Wilhite, L.L.C.
401 Market Street, Suite 1250
Shreveport, LA 71101
318-213-4444 Telephone
318-213-4445 Facsimile
Email: pjones@dhw-law.com
Email: ajones@dhw-law.com

ATTORNEYS FOR FIRE ENGINEER FELICIA SCROGGINS

CERTIFICATE OF SERVICE

The Amended and Supplemental Appeal of Fire Engineer Felicia Scroggins has been served this 31st day of January, 2023, upon the following persons, by electronic mail:

Ms. Nichole Buckle, attorney for the City of Shreveport and Appointing Authority
Nikki@CBBD.law

Ms. Carol Nicholas, Secretary, Fire and Police Civil Service Board
Carol.Nicholas@shreveportla.gov

PLACED IN MINUTES

CITY OF SHREVEPORT § NUMBER: 649,950 - A

VERSUS § 1st JUDICIAL DISTRICT COURT

SHREVEPORT MUNICIPAL FIRE § CADDO PARISH, LOUISIANA
AND POLICE CIVIL SERVICE BOARD
AND FELICIA SCROGGINS

**JUDGMENT**

This matter came before the Court on Monday, November 4, 2024 for hearing on the City of Shreveport's appeal and the Reconventional Demand by Felicia Scroggins Shreveport Fire Engineer for no discipline of the ruling of the Shreveport Municipal Fire and Police Civil Service Board ("Board") to reverse the termination of Felicia Scroggins to a 45 day suspension. Present in court were Nichole M. Buckle, Attorney for the City of Shreveport, Leon L. Emanuel, Ret. Judge for Felicia Scroggins, and Billy R. Casey, Attorney for the Shreveport Municipal Fire and Police Civil Service Board.

After reviewing the pleadings, the record, considering the arguments of counsel, the objections of counsel for the City of Shreveport and counsel for Felicia Scroggins being noted, and for reasons orally assigned,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Shreveport Municipal Fire and Police Civil Service Board acted in good faith for cause and the Board's April 10, 2024 ruling is **AFFIRMED.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that each party bears their own costs.

**JUDGMENT RENDERED** in Open Court on the 4th day of November 2024 and signed in Chambers at Shreveport, Caddo Parish, Louisiana on the 12th day of November 2024.

EXHIBIT

59

APPROVED AS TO FORM and CONTENT:

CARMOUCHE, BOKENFOHR, BUCKLE & DAY

By: ______________________
Nichole M. Buckle, LSBA #32113
One Bellemead Center
6425 Youree Drive, Suite 380
Shreveport, Louisiana 71105
Telephone: (318) 629-0014
Fax: (318) 404-1571
Email: Nikki@cbbd.law

Attorney For City of Shreveport

By: ______________________
Leon L. Emanuel, LSBA #05341
P. O. Box 3588
Shreveport, Louisiana, 71133
Telephone: (318) 635-1077
Email: judgeretired22communication@gmail.com

Attorney For Felicia Scroggins

BILLY R. CASEY & ASSOCIATES, APLC

By: ______________________
Billy R. Casey, LSBA #17931
900 Pierremont Road, Suite 107
Shreveport, Louisiana 71106
Telephone: (318) 688-1111
Fax: (318) 688-9743
Email: billy@caseylawlouisiana.com

Attorney For Shreveport Municipal Fire & Police Civil Service Board

JUDGMENT PREPARED BY ATTORNEY BILLY R. CASEY

kerryp

CPCC:CV.5364716

# Certificate of Notice of Judgment

CITY OF SHREVEPORT
VS
SHREVEPORT MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, ET AL

NO. 649950 – A
STATE OF LOUISIANA
PARISH OF CADDO

FIRST JUDICIAL DISTRICT COURT

**I HEREBY CERTIFY THAT ON THIS DAY A NOTICE OF THE ATTACHED JUDGMENT WAS MAILED BY ME, WITH SUFFICIENT POSTAGE TO:**

CITY OF SHREVEPORT
THRU NICOLE BUCKLE, ATTY
6425 YOUREE DRIVE, STE 380
SHREVEPORT, LA
71105

**DONE AND SIGNED ON November 13, 2024.**

DEPUTY CLERK

kerryp CPCC.CV.5364708

# Certificate of Notice of Judgment

CITY OF SHREVEPORT
VS
SHREVEPORT MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, ET AL

NO. 649950 – A
STATE OF LOUISIANA
PARISH OF CADDO

FIRST JUDICIAL DISTRICT COURT

**I HEREBY CERTIFY THAT ON THIS DAY A NOTICE OF THE ATTACHED JUDGMENT WAS MAILED BY ME, WITH SUFFICIENT POSTAGE TO:**

LEON L EMANUEL
PO BOX 3588
SHREVEPORT, LA 71133

**DONE AND SIGNED ON November 13, 2024.**

DEPUTY CLERK

kerryp

CPCC.CV.5364690

# Certificate of Notice of Judgment

CITY OF SHREVEPORT
VS
SHREVEPORT MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, ET AL

NO. 649950 – A
STATE OF LOUISIANA
PARISH OF CADDO

FIRST JUDICIAL DISTRICT COURT

**I HEREBY CERTIFY THAT ON THIS DAY A NOTICE OF THE ATTACHED JUDGMENT WAS MAILED BY ME, WITH SUFFICIENT POSTAGE TO:**

BILLY R. CASEY
900 PIERREMONT RD., SUITE 107
SHREVEPORT, LA 71106

**DONE AND SIGNED ON November 13, 2024.**

[signature]
DEPUTY CLERK

**In the Matter Of:**

SMFPCSB - Appeal from Felicia Scroggins

**FELICIA SCROGGENS**

*April 10, 2024*

***Cox Court Reporting Services, LLC***

***1018 Williams Avenue***

***Natchitoches, LA 71457***

***https://jillcoxccr.com***

EXHIBIT

60

SHREVEPORT MUNICIPAL FIRE AND POLICE
CIVIL SERVICE BOARD
SHREVEPORT, LOUISIANA

RE: Docket No. 10107, Appeal from Fire Engineer Felicia Scroggins of the termination on January 19, 2023. Represented by attorney Pamela Jones.

* * * * * * * * * * * * * * * * * * * * *

Transcript of the proceedings held before the Shreveport Municipal Fire and Police Civil Service Board, reported by Jill Cox, Certified Court Reporter, at Riverview Hall, located at 600 Clyde Fant Parkway, Shreveport, Louisiana on Wednesday, April 10, 2024, beginning at 8:30 a.m.

APPEARANCES

BOARD MEMBERS PRESENT:

Battalion Chief Michael Covert, Sr., Vice-Chairman

Asst. Chief FTO Brain Watson, Sr.

Sergeant Shannon Hicks

Mr. Henry Walker

Mr. Arthur Thompson

ALSO PRESENT:

Mr. Billy Casey, Board Attorney

Ms. Carol Briscoe, Board Secretary

ATTORNEYS PRESENT:

Ms. Nichole Buckle (representing City of Shreveport, and Shreveport Fire Department)

Ms. Pamela Jones (representing Ms. Felicia Scroggins)

INDEX


| | Page |
|---|---|
| WITNESSES SWORN & SEQUESTERED | 6-7 |
| OPENING STATEMENTS: | |
| By Ms. Buckle | 9 |
| By Ms. Jones | 10 |
| WITNESS EXAMINATION: | |
| CHIEF REESE | 11-73 |
| NAKIA THOMAS | 73-103 |
| FELICIA SCROGGINS | 103-127 |
| CHRIS HENRY | 129-139 |
| DEVON KENNEDY | 139-147 |
| CLOSING ARGUMENTS: | |
| By Ms. Buckle | 148-150, 156-157 |
| By Ms. Jones | 150-156, 157-159 |
| BOARD DISCUSSION/MOTIONS | 159-189 |

EXHIBITS INDEX


| | Page |
|---|---|
| EXHIBITS: | |
| City 1 - NOFI | 19 |
| City 2 - Fire Engineer Classification | 20 |
| City 3 - Sick Leave & FMLA Policy | 21 |
| City 4 - Notice of PDC 01/05/2023 | 24 |
| City 5 - Pre-Diciplinary Action | 31 |
| City 6 - Personnel Action - PDC 01/19/2023 | 31 |
| City 7 - Sick Leave Use Cert. 3/12/2020 | 33 |
| City 8 - Re-Entry Plan 9/02/2022 | 61 |
| City 9 - Fit For Duty Eval 05/23/2020 | 65 |
| P1, Scroggins 1 - Fit For Duty Eval Dated 10/17/2022 | 49 |
| P2, Scroggins 2 - Sick Leave Use Cert. Dated 01/13/2-23 | 49 |

SHREVEPORT MUNICIPAL FIRE AND POLICE
CIVIL SERVICE BOARD HEARING

DOCKET NO.: 10107

CHAIRMAN CARTER:

All right. E. is done. We do now have six members. So I will take this time to review PAFs and sign the PAFs. We'll go back up to appeals to be heard docket 10107. Mr. Vice-Chairman do you accept the gavel?

VICE-CHAIRMAN COVERT:

I do.

CHAIRMAN CARTER:

Thank you. I am recused.

VICE-CHAIRMAN COVERT:

Docket 10107. Investigation and appeal from Fire Felicia Scroggins, Engineer Scroggins, with Fire of a termination given January 19, 2023. Represented by attorney Allison Jones and Pamela Jones.

Are we ready to proceed?

MS. JONES:

We are ready to proceed. Thank you.

VICE-CHAIRMAN COVERT:
Do we have any witnesses?
MS. JONES:
We do.
VICE-CHAIRMAN COVERT:
Does the city have any witnesses?
MS. BUCKLE:
(Nods head up and down.)
VICE-CHAIRMAN COVERT:
Can we have all the witnesses come to the front.
MR. CASEY:
All witnesses come forward if you are going to testify in this case.
MS. JONES:
Your microphone may not be on. We're having a little trouble hearing you. Thank you.
VICE-CHAIRMAN COVERT:
I hear it now.
MS. JONES:
There you go perfect.
VICE-CHAIRMAN COVERT:
Thank you.
MR. CASEY:

Could you raise your right hand, please? Do you swear to tell the truth so help you God and nothing but the truth?

WITNESSES:

Yes.

MR. CASEY:

Are you going to sequester the witnesses?

VICE-CHAIRMAN COVERT:

Yes, please.

MR. CASEY:

Those who have, except for the Chief, will have to be excused. And you're not to talk about the case amongst yourselves. You can go outside there's a place out there, you can sit until you are called. You all are being sequestered.

VICE-CHAIRMAN COVERT:

Before we start we're just going to update this as it is written here on the agenda. Docket 10107 is simply going to read: Appeal from Felicia Scroggins. We're going to strike the

word investigation. So this is just an appeal.

So we're ready to begin and we're going to start with the City, Ms. Buckle, if you have any opening statements.

MR. CASEY:

Point of order, Mr. Chairman.

VICE-CHAIRMAN COVERT:

Yes, sir.

MR. CASEY:

You said investigation, it says termination here. What are we doing?

VICE-CHAIRMAN COVERT:

Correct. It's going to be appeal from Fire Engineer Felicia Scroggins of a termination given on January 19, 2023, represented by attorney Allison Jones an attorney Pamela Breedlove [sic]. We're striking the word investigation at the beginning.

MR. CASEY:

It's not an investigation. Okay.

VICE-CHAIRMAN COVERT:

Got it.

MR. CASEY:
Yes, sir.
VICE-CHAIRMAN COVERT:
Okay.
MR. THOMPSON:
That's without any objection, chairman?
VICE-CHAIRMAN COVERT:
Yes. Without any objection, hearing none. Go ahead.

OPENING STATEMENTS:

MS. BUCKLE:
Members of the Board, I'm not going to give a lengthy opening statement.

This matter is very simple. An investigation was began in December 2022 by Chief Reese against several members of the Shreveport Fire Department based on their use of sick leave.

Ms. Scroggins, after an investigation, it was determined in the last four and a half years of that investigation had missed 64.6 percent

of her working days.

The investigation revealed that, that absence was a failure for her to meet the bona fide qualifications of her job position. So she was terminated. And that is simply the only issue before this board, is whether she was terminated in good faith and for cause based on her failure or inability to satisfy the bona fide qualifications of her job position.

VICE-CHAIRMAN COVERT:

Ms. Jones.

OPENING STATEMENTS:

MS. JONES:

Mr. Chairman, we agree that the issue before the Board is whether or not the termination of Engineer Scroggins was in good faith and for cause. We dispute that there was cause for termination of her employment in that she was not on sick leave at the time of the termination. She was actually at work and had been at work.

And we dispute that the termination was in good faith.

VICE-CHAIRMAN COVERT:

Is there any dispute as to whether or not the minimum standards were met with regards to the investigation?

MS. JONES:

Is regards to the investigation?

VICE-CHAIRMAN COVERT:

Are you alleging a Bill of Rights violation at all?

MS. JONES:

No, sir. We do not.

VICE-CHAIRMAN COVERT:

Okay. Thank you. Okay. Ms. Buckle you may present your evidence.

MS. BUCKLE:

Yes, the City would call Chief Reese.

VICE-CHAIRMAN COVERT:

Go ahead and state your name and position.

CHIEF REESE:

Clarence Reese, Shreveport Fire

Chief.

EXAMINATION OF CHIEF REESE

BY MS. BUCKLE:

Q. Chief, when were you appointed the Chief of the Shreveport Fire Department?

A. That would have been April of 2021.

Q. And in January of 2023 you terminated Fire Engineer Felicia Scroggins, correct?

A. I'm sorry. So that had to have been April of '22, when I was promoted.

Q. It was just a few months before you began the investigation in this case?

A. Correct.

Q. And January of 2023, you terminated Fire Engineer Scroggins, correct?

A. That is correct.

Q. Can you briefly explain the reason for termination?

A. Sure. So when I took over a fire chief that was one of the largest issues that we had within the department, that was affecting morale. So I wanted to address sick leave.

I took the same list that we provide to the Board every year, by the beginning of the year. Which is done with our chief of safety. He pulled

all of the names, and all of the dates. And from there, it was after one of the board meetings, where y'all were addressing sick leave.

I did ask Mr. Carter, you know, some procedural questions on how we could do the same thing all the Shreveport Fire Department's end. He did provide me a class on just Loudermill and everything else.

After I had pulled that list of personnel one thing he said I had to have was parameters. I did five years and I did anybody over 20 percent of missed work. At the top of that list was Fire Engineer Felicia Scroggins.

So I did start the investigation with her, but there were seven people that were investigated based off of that list of those five years that had missed over 20 percent of work.

Q. Now, you said the fire department historically had a problem with employees abusing sick leave or having excessive absenteeism?

A. That is correct.

Q. Okay. Explain how that affects the department.

A. Sure. So any time we have a vacancy or someone calls in sick, someone is on long-term sick

leave. Someone has to be either promoted from an eligibility list that y'all provide, that is signed by the Board. I cannot just put anyone in there. It has come from that list.

So anytime there's a vacancy, at any position, someone has to be bumped up, or out of class, or if it's going to be long-term sick leave someone has to be promoted to that position based off of that list.

At that time the -- we do have to pay that person that is being out of class. We do have to pay that rate, and also we continue to pay the rate of the person that is on sick leave, either long-term or just a couple of shifts.

So that position has to be filled with someone from the Board's eligibility list.

Q. What is the concern of yours as Fire Chief with respect to your other employees?

A. Sure. So one of the biggest things is, of course, I have a boss which is the mayor. And it was very hard to justify, these are some of the things that came up with Mayor Perkins when I was interviewed for Fire Chief and Sheriff Whitehorn. Again, it came up with Mr. Tom Dark and Mayor Arceneaux about sick leave, and sick leave abuse.

So it had to be addressed.

I looked at the job classification that is provided by you, the Board, for the Fire Chief. It is my duty and my responsibility. I have a fiduciary responsibility to watch taxpayers dollars. So that was one of the other reasons.

And, again, the morale for the job, we watched over the last couple of years. If you would look at that list, that is provided to the Board every year, and it keeps increasing. The amount of people and the amount of time taken off by members of the Shreveport Fire Department.

Q. What is a concern of yours as Fire Chief with respect to your responsibilities to the citizens of Shreveport?

A. Right. Basically, it's going to be spending taxpayers dollars wisely, that is a huge concern. Also that position has to be filled with somebody that is qualified. So Fire Engineer Scroggins was qualified, certified in that position, had experience. So when we bump someone up out of class or we're having to pull somebody from that list, which is the next lowest class they don't necessarily have the certifications or the experience behind the wheel of a fire truck. Thus

increasing sometimes accidents within the department.

Q. As Fire Chief are you also a steward of taxpayer money?

A. Yes. As set forth by the Board, the job qualifications for the Shreveport Fire Chief, that is part of my job; is to make sure that I spend taxpayers dollars responsibly.

Q. Now, you mentioned that you set parameters of five years and anyone over 20 percent based on the sick leave list, correct?

A. That is correct.

Q. Where there any other employees that were investigated for abuse of sick leave or excessive sick leave?

A. Yes, there were. There were seven people that were investigated or written up or given a NOFI period. So, yes, there were several others that were investigated.

Q. The six, other than Ms. Scroggins, can you briefly explain, without saying their names, but just explain what happened in those investigations?

A. Sure. So because all seven of them were all done at the same time, I will probably never do that again, because of the 60-day rule. But the

investigation started, of course, with Felicia Scroggins because she was at the top of that list.

I started going down the investigation list based off of the time in which those personnel had taken off. If anyone, and I didn't open any -- just based off of the list that was provided to the Civil Service Board, I didn't open anyone's files until the NOFIs had been done.

So after I started looking into files, looking at what was considered a workplace injury, is how I based my investigation. Of those, three of them immediately left. One was roughly about 35, 33 years of service, he immediately came to my office and left. Another guy said, this needs to be done along time ago and he also resigned or retired. And actually, it was a person out of my basic training class came in also and immediately resigned, as well.

So three people, three out of those seven people immediately left. After looking at some of the other files, workplace injury or if they were back at work and filling the position, their civil service duties, their civil service positions that investigation was, for lack of a better term, waived.

Q. Now, you said Ms. Scroggins was at the top of the list. How did her absences compare to the others on the sick leave roster?
A. I would have to look at the list. There were several that were right at about the 20 or 30 mark. Her's was well over anyone else's, by about a 20 percent gap.
Q. Prior to being Fire Chief did you know Ms. Scroggins?
A. Yes.
Q. What was your relationship or did you have a friendship with her?
A. Yes. I consider her a friend. I still consider her a friend. I hung out with her after work. I've used her business for T-shirts for my daughter's, cups, you name it. She referred me and I actually got a $100 gift card off of her for some windows. But Felicia, actually, came to my wedding in New Orleans. Was invited and showed up. So, yes, I do consider Felicia a friend since I have been on the job.
Q. So there's certainly no personal animosity towards her as the basis for this investigation or any other reason?
A. Absolutely not.

MS. BUCKLE:
Pam, do you have any objection to the exhibits?
MS. JONES:
No. I have no objections.
MS. BUCKLE:
Okay. Members of the Board, at this time I would pass out City exhibits 1 through 6 and ask that those be admitted.
(CITY DOCUMENTS attached as Exhibits 1-6.)
VICE-CHAIRMAN COVERT:
You said you have no objection, Ms. Jones.
MR. JONES:
I have no objection.
MS. BUCKLE:
There is an Exhibit 7 and 8 attached to those. They are simply copies of statutes. But in light of Ms. Jones' statement that there is no Bill of Rights issues we are not going to be introducing those. But, again, they're just copies of the statutes.

BY MS. BUCKLE:

Q. Chief, we have introduced City Exhibit 1. Is this the notice of investigation that you provided to Ms. Scroggins?

(SFD NOFI attached as Exhibit 1.)

A. That is correct, yes.

Q. And, as stated in the narrative, your concern was whether she was able to fulfill her duties as required by the bona fide occupational qualification of a fire engineer, correct?

A. That is correct.

Q. And if you will turn to, it is page 4 City Exhibit 2. Is that the fire engineer classification?

(Fire Engineer Classification attached as Exhibit 2.)

A. Yes.

Q. And where does this classification or job description come from?

A. It comes from the Shreveport Fire and Police Civil Service Board. And is signed off by me.

Q. And can you briefly describe what the BFOQ's are for a fire engineer?

A. Sure. One of course is going to be coming to work. The other is for a fire engineer, it pretty much includes all duties of a fire fighter, but also adds being able to operate a truck. Making sure that our fire fighters get to the scene safely and arrive safely.

Also pumping the truck. Also providing EMS -- EMS duties, but not as -- you know, CPR, first aid care, ALS, BLS based off of their level. But it includes the duties of a firefighter and also adds to it, fire engineer duties. Of course, operation of the truck.

Q. And, if you will, turn to page 6 it is City Exhibit 3. What is this document?

(SFD FMLA Policy attached as Exhibit 3.)

A. This is our sick leave and family, FMLA policy.

Q. And this is a policy for the Shreveport Fire Department?

A. It is.

Q. Okay. In section 2.1 it states: It shall be the policy of the Shreveport Fire Department to require regular and predictable attendance from every member employed by the Shreveport Fire

Department.

Why is it necessary or important to have regular and predictable attendance?

A. One for continuity of care for our citizens. Another is for fiduciary responsibility. Being able to budget the department's funds. When it comes to, of course, 90 percent of our general fund is salaries. So being able to predict when our employees come to work regularly helps us with our budget.

Q. And on the bottom of that page, section 4.1, member's reporting for duty must be able to perform the 14 essential job task according to NFPA 1582 and designated functions of their civil service position in a safe, effective, efficient, and productive manner. Does that include the job qualifications that we just saw that were set forth by this Board?

A. That is correct. That is basic level. That is a correct. It goes a little bit more in depth on the NFPA standard.

Q. What happens when an employee is absent with respect to their ability to satisfy these standards and the 14 essential task of the NFPA?

A. They are placed off -- or they are put off

for the -- they cannot perform those functions, if they cannot perform those 14 duties, for you to have to put them off, they normally put themselves off. And when we have to fill that role with somebody that comes from the qualified or from the certified list from civil service to fill that position.

Depending on how long they are off, of course, that means that if somebody is riding out of class for a couple of shifts, or that person has to be promoted into that position. All while the person that is on sick leave is receiving all benefits and full pay.

Q. Now, does the Shreveport Fire Department have any type of limited duty or light duty?

A. We have normally reserved for injured, people that were injured on duty. However, it is -- it has been our practice to allow light duty. One because it does not limit the person that is on sick leave. If they are doing light duty they are able to do there normal function. Of course, many fireman have side jobs or they want to perform those or they are going to school. So when they go on to the light duty or limited duty it allows them to continue their daily functions.

Q. Is there a limitation for how long someone

is placed on limited duty or light duty?
A. There is not normally. There's a reasonable amount of time based off of the injury and based off of patterns of sick leave.
Q. Is 90 days generally the limit?
A. Yes, it is. Normally that's the limit. And, again, unless it goes past that 90 days, we will come to the Board and ask for extensions. But typically it is 90 days. Or if it is over that 90 days most people are off, and I think on our sick it is listed as incapable of performing their job. And that's pretty much it, incapable of doing their job. I didn't look at the sick leave to tell you exactly what it says.
Q. Okay. And on page 17, the limited duty and 90-day restriction is listed in your policy, correct?
A. What page?
Q. Seventeen.
A. Yes. Definitions are, yes.
Q. If you'll turn to page 20, City Exhibit 4, this is the notice of predisciplinary conference that was issued to Ms. Scroggins?
(Notice of PDC attached as Exhibit 4.)

A. What page? I'm sorry.
Q. Twenty.
A. Yes.
Q. And you stated earlier that before issuing the notice of investigation you had not looked at Ms. Scroggins file or anything in order to conduct an investigation. That was only do between the time of the NOFI and the time you issued the should just notice of predisciplinary conference, correct?
A. That is correct.
Q. If you will turn to the next page, between June 4th, 2018 and November 14th, 2022, how many days did Ms. Scroggins miss?
A. Give me those dates again.
Q. June 4th, 2018 and November 14th, 2022.
A. That what be missed, 1053 days.
Q. Of how many?
A. 1779 available days to work.
Q. And what was that percentage?
A. That percentage was 64.6 percent of work missed.
Q. In reviewing her sick leave records did you notice, had there been any times where she was close to the 365 day limitation?

A. Twice. Once in 2019 to 2020. And then, again, from it looks like from July of 2020 to July of 2021.

Q. Does a 64.6 absence rate satisfy the bona fide occupational qualifications for the job of a fire engineer?

A. Absolutely not.

Q. Why not?

A. You cannot perform your essential job functions missing that much work in pretty much five years. One you lose out on skills, something that you're not doing consistently. Especially when it comes close to 364 days. That is pretty much, I mean that happened twice. That's two years of missed work.

So, of course, now you have to be put back through retraining as an engineer. But when you miss this much amount of work, one, you have to come to work to be able to perform the job of an engineer.

Q. Okay. And certainly 64.6 absence rate does not constitute regular and predictable attendance as required by your policy, correct?

A. It does not. And looking at the sheet, of course, nothing on here is -- it's not predictable.

I mean a couple of days here, two months here. A year. A year. It was not predictable.
Q. Okay. During the times that Ms. Scroggins was absent was she still receiving her full salary?
A. Yes.
Q. Was she still receiving full benefits?
A. Yes.
Q. And the department had to pay overtime to other employees to fill the void created by her absences?
A. Correct. That would be the case and in most instances we are already riding short within the Shreveport Fire Department.
So anytime someone misses we have to put out messages to all members. Typically, what happens is somebody, a fire engineer of rank -- excuse me, a firefighter rank is bumped up to fire engineer to be a wise steward of taxpayer dollars, instead of calling in another engineer. A lot of times we will go ahead and call in a firefighter. We will go a bump up, but we will call in t firefighter to fill that overtime slot.
Q. Do you have any numbers of about how much -- to reflect how much Ms. Scroggins was paid during this time period or an approximate?

A. Not during the time of sick leave. However, her rate of pay at the end of '22 was right around $59,000. Of course we did receive several pay increases from the time this investigation started until now.

So I would say in 2018 she was being paid a rate of about -- I say about, exactly 18.54 an hour. In 2019, $18.91 an hour. In 2020 $19.29 an hour. In '21, $20.16 an hour. Each one of those years increasing in annual salary but ending up being right about $59,904.24.

Q. Do you happen to know how much the City pays for benefits for a fire employee?

A. It varies. I don't have an exact number on the benefits. It depends on the benefit package. But that would include health insurance, dental, vision, life insurance. But it depends on the package that, that employee chooses.

Q. So approximately two-thirds of the absences, that means that she was -- that each year she was paid. She received $60,000 or she was paid approximately $40,000 while she was still at home, correct?

A. Could you repeat that? I'm sorry.

Q. If her salary was $60,000 per year, and

you just average that over the four and a half years, two-thirds of the time she received full pay and full benefits while she was at home?
A. Correct.
Q. How did her absence effect the efficient operation of the shift that she was assigned to?
A. C. shift is typically the lowest shift when it comes to personnel. C. shift actually has the most overtime. That is called -- especially, since this investigation started. C. shift is typically the one that puts out the most messages for overtime personnel.
Of course, when you're bumping people up and calling in firefighters, and we send it out by EverBridge, so everybody gets a message. Most people who will appear before you today can tell you they receive the most messages from C. shift.
Q. Do you think it's fair to your other employees that they are required to fill in for someone that is absent 64.6 percent of the time?
A. Absolutely not. That was also one of the reasons this investigation started. I did have a -- I put out a survey as soon as I took over as fire chief. It went to all of our members.
That survey included several times within

service, that was put out to everyone on the job, the abuse of sick leave. And at one point it had us to where -- I was not fire chief at that time -- it has to where we were having to do mandatory overtime.

Primarily, because of the shortage and also because of the amount of people that we had on extended sick leave.

Q. Do you think it's prudent as a steward of the taxpayer dollars for the City of Shreveport to employ an individual with full wages and benefits who only reports to duty one-third of the time?

A. It is not. It is not fair to the taxpayers for us to have to pay 100 percent of someone's salary and benefits when they are not showing up to work.

I know it's a civil service job, but I tend to try to run it like a Fortune 500 company. If it doesn't make dollars, it doesn't really make sense.

So using the model of successful businesses, you know, if you don't come to work, you don't get paid.

Q. Would you be fulfilling your obligations and responsibilities to not only your other

employees, but also the citizens and taxpayers of the City of Shreveport by allowing an employee to remain at your department if she was absent 64.6 percent of the time?

A. I'm not using taxpayer dollars wisely if I continue to allow that to happen. Also I understand that I could be investigated by the Board themselves for not fulfilling the duties set forth by this Board, and signed into law by this Board.

Q. Now, pre-disciplinary conference was held on January 19th, 2023; correct?

A. Correct.

Q. And for the Board's reference those Exhibits begin on page 25, Exhibits 5 and 6.

(PDC Action Form attached as Exhibit 5.)

(SFD Admin Inter-Office Memo attached as Exhibit 6.)

Now, Ms. Scroggins, was she allowed to present evidence and arguments on her behalf?

A. She was.

Q. Did you afford her an opportunity to try to explain why she couldn't fulfill the bona fide occupational qualifications of the job of fire engineer?

A. Yes.

Q. Okay. Following the PDC did you make a determination as to whether she was able to fill those requirements?

A. I did make a determination.

Q. And what was that determination?

A. That she was not able to perform the job duties set forth by this Board.

Q. And she was terminated, correct?

A. That is correct.

Q. Now, you heard Ms. Jones indicate a minute ago that at the time she was terminated, that Ms. Scroggins was at work. Can you explain?

A. Uh.

Q. Had she returned to full duty?

A. She had not returned to full duty. I think she was at the Training Academy. She was assigned to the -- she went back to the Training Academy.

So in order to go back to full duty you have to do reentry. We send you to our Fire Training Academy to perform, to make sure that you can perform the functions of a fire engineer or the position that you left from while on sick leave.

While at the Academy there were several

issues that were brought up from Fire Engineer Scroggins, that stated she would not be able to perform the functions of a fire engineer.

Q. Was she then placed on any type of light duty or limited duty?

A. I do not -- I don't recall. I would have to look through some of this paperwork.

Yes. So there were several sick leave sheets where she was placed off for -- reason for absence was F41.1. Just looking up team codes, because we had no idea what a 41.1 was. But it was related to maybe acute PTSD or some type of mental deal.

Also I want to point out, also in the sick leave form, the policy states that anything dealing with PTSD must be done by a psychiatrist or a psychologist.

We did have several issues with our sick leave form, because they kept being signed by, as you can see on this form -- do they have the sheet?

Q. I would ask to introduce Exhibit 7, at this time. It is three pages of sick leave use certificates signed by therapist Nakia Thomas.

(Sick leave use certificate attached as Exhibit 7.)

VICE-CHAIRMAN COVERT:
Any objection.
MS. JONES:
No. We have no objection.
VICE-CHAIRMAN COVERT:
So ordered.
A. Yeah. She was limited to modified duty restrictions which was done by her, I believe, it is as clinician. She scratched out physician and put clinician. Employee may work four hours a day for five days a week.
BY MS. BUCKLE:
Q. And on the third page of this document, it was dated by Ms. Thomas on December 15th, 2022, correct?
A. Correct.
Q. And the date of absence indicates August 29, 2022, to January 11th of 2023, correct?
A. Correct. Five -- five months. Yes.
Q. Five months. Okay. And again that is beyond what is allowed for limited or light-duty for the department, correct?
A. Correct.
Q. Now, Ms. Thomas also, she appears to have been a therapist for Ms. Scroggins for a significant

period of time, correct?
A. Yes.
Q. Okay. And if you would turn to the first page, that was signed by Ms. Thomas on March 12, 2020?
A. Yes.
Q. And she excused Ms. Scroggins from March 28th 2019 to March -- I'm sorry, March 28th 2019, to March 20th of 2020, correct?
A. Correct.
Q. That was almost 365 days?
A. Correct.
Q. And the second page was signed by Ms. Thomas on July 14th, 2021?
A. Correct.
Q. And those dates excused Ms. Scroggins from July 25th of 2022 to July 14th of 2021, correct?
A. Correct.
Q. Again, almost 365 days?
A. Yes.
Q. Okay. After reviewing her complete medical file did you have any reason to believe that even though Ms. Scroggins was present on limited duty that she would be able to return to full duty and satisfy the BFOQ's of the position of fire

engineer and have regular and predictable attendance?

A. Looking at this I would not be able to predict regular attendance, working 24-hour shifts as an engineer on a regular cycle as all other fire engineers.

Q. So you did not believe she would be able to satisfy the attendance requirements?

A. No.

Q. Okay. . Following Ms. Scroggins termination has there been any change in the use of sick leave by employees?

A. There has been, the amount of employees that have taken sick leave has decreased. Also, a letter has been provided to the Board also, for 2023, had a decrease of 29 percent in sick leave usage.

Q. Employees of your department are now aware that regular attendance is required, and that, that requirement will be enforced?

A. Yes.

Q. What do you think will happen to the department if this Board were to overturn the discipline or the termination of Mr. Scroggins?

MS. JONES:

Objection. Relevance.

I don't see how -- basically, what she is saying is: Make this -- make her an example. Put her head on a spike. And I don't think that's relevant.

MS. BUCKLE:

The determination for this Board is whether the decision made by Chief Reese was in good faith and for cause.

And certainly, I think, to the extent the question is whether it was made in good faith, and his oversight of the entire department, I believe it is relevant.

MS. JONES:

But I believe what you're asking the Board to do is not determine if it's in good faith and for cause. But to decide what they're actions -- the effect of their decision.

And you are asking them to set -- to use their personal standards and not to arrive at, on the evidence being presented, as to whether or not his

decision was in good faith and for cause.

VICE-CHAIRMAN COVERT:

I understand. I will sustain.

MS. BUCKLE:

I'll tender.

VICE-CHAIRMAN COVERT:

Ms. Jones.

EXAMINATION OF CHIEF REESE

BY MS. JONES:

Q. Chief Reese.

A. Yes, ma'am.

Q. A couple of questions. So your decision to terminate Ms. Scroggins was based entirely upon attendance?

A. Yes. And the predictability of her coming to work.

Q. Of her attendance. And so the department does have sick leave policies, correct?

A. Correct.

Q. And when an employee is out on sick leave is the employer required to submit documentation sufficient to justify the need for the leave?

A. Yes.

Q. So in every case that Ms. Scroggins was

out on sick leave she had submitted a sick leave use certificate or other appropriate documentation to justify her need for that sick leave, correct?

A. She did turn in paperwork. I would not say sufficient. Our policy states that it must be done, for PTSD by a psychiatrist or a psychologist and on several of these you can see it was not.

Q. But didn't the department send her to a psychologist for an evaluation?

A. Yes.

Q. And you sent her to Dr. Robert Clanton, a Ph.D.?

A. Correct.

Q. All right. And Dr. Clanton did not send anything to the department saying that Ms. Thomas' assessment was not appropriate, did he? Do you have a copy of Dr. Clanton's report before you?

A. Yes.

Q. Well, if you want to take a minute to review that --

MS. BUCKLE:

Which one?

MS. JONES:

I'm looking at the one October 17th, 2022.

A. Yes, I agree with you.

BY MS. JONES:

Q. So in effect there was an assessment by a psychologist that her use of sick leave in -- as of October 17, 2022, was a diagnosis rendered by Nakia Thomas was appropriate?

A. Correct.

Q. And looking also then at the assessment of Dr. Robert Clanton, did he -- did he make a recommendation that Ms. Scroggins discuss with Ms. Thomas a plan to transition from light duty to full time working hours?

A. Correct. He did mention that.

Q. And didn't Ms. Scroggins tell you that she and her counselor were doing that, that there was a plan to transition her from light duty back to full-time working status?

A. Correct.

Q. And at the time of termination Ms. Scroggins was, in fact, working light duty, correct?

A. Correct. On modified duty, yes.

Q. So you're not claiming that she was fraudulently using sick leave, correct?

A. No.

Q. You're not claiming that she was abusing sick leave because you had a psychologist assessment that her use of sick leave was appropriate, correct?

A. I would say so.

Q. All right. And if, for some reason, she had, had -- and as far as you were aware, at least, at the time of termination -- she was working with her counselor to implement a plan to return to full duty, correct?

A. As far as I know, yes. She has been working with this psychiatrist for years. So I don't know what the plan was. The specific intent after her fit for duty with Dr. Clanton. But she has been working with this psychiatrist for years.

Q. So were you not provided a statement from Ms. Thomas dated January 11th, 2023, stating that Ms. Scroggins was being transitioned to a 40 hour week. It's dated January 11th, 2023?

MS. BUCKLE:

Do you have a copy Pam?

MR. JONES:

I --

SGT. HICKS:

I don't think we have that one.

A. Okay. Would you ask your question again?

I'm sorry.
BY MS. JONES:
Q. Yes. So I have provided you a document date and signed by Nakia Thomas, who is Ms. Scroggins counselor, on January 11th of 2023.
Have you reviewed that document, the sick leave use certificate?
A. Correct. January 11th, 2023.
Q. So this would have been the sick leave use certificate that followed the last one in your packet. I think you have Exhibit 7, where the last date was 2022, I believe.
A. With the four hours.
Q. Correct. So this would have been a follow-up to that?
A. Yes.
Q. All right. Showing that she had been increased to eight hours?
A. Correct.
Q. And 5 days a week. And would Ms. Thomas' modification her light-duty be consistent with Dr. Clanton's recommendation --
A. No.
Q. -- that she have a transition plan?
A. Yes.

Q. In terms of light duty, a person who is performing light duty is actually performing some work for the City, correct?

A. Correct.

Q. So this is not a situation where the employee is sitting at home getting a paycheck without performing any duties. The employee is, in fact, performing duties for the City in exchange for pay, correct?

A. Yes. They are performing limited duty, limited hours, but receiving full benefits for all hours. A normal workday for a fire engineer is a 56 hour work-week, 24-hour shifts.

Q. But they don't work that every week?

A. No. They have a cycle. But they do work a 56 hour a week, every week.

Q. Well, when their shift is on --

A. Uh-huh.

Q. When it's I've forgotten, it's A., B., and C. rotation?

A. Yes, ma'am.

Q. All right. So whenever it's their turn to rotate, they work 56 hours a week, they rotate. But they will have weeks where they don't work at all, correct?

A. Correct. That is fact. Yes.
Q. But if Ms. Scroggins is working 40 hours a day, five days a week then she's working every single day, every week during that time period, performing duties for the City, correct?
A. Okay.
Q. Yes?
A. Yes.
Q. Now, in terms of limited duty, I understand that the policy says there's a 90-day limit. But does it not also provide that the fire chief can modify this, that upon approval by the fire chief that can be extended. And that's on page 17 of your --
A. Sick leave policy, yes, ma'am.
Q. -- I believe this is Exhibit 3, down at the bottom?
A. Yes, ma'am. That's correct.
Q. So you're -- a person can extend light duty, correct?
A. Correct.
Q. But there's no criteria specified in the policy for you to be guided by to determine who gets an extension of light duty and who does not, is there?

A. Correct. No, it's not.
Q. So it's entirely up to you to set that criteria, correct?
A. Correct.
Q. And you can use whatever criteria you chose to use, correct?
A. Correct.
Q. Now, in terms of the number of people who are on your list, I believe you testified that there were six total?
A. I think there were seven total.
Q. Seven total?
A. Yes.
Q. All right. If you will look at Exhibit 4, it's the report for Fire Department Administration Memo on January 5, 2023. Down at the very bottom.
A. Yes, ma'am.
SGT. HICKS:
What page?
THE WITNESS:
Page 20.
MS. JONES:
Exhibit 4, it's on page 20 of the packer.
BY MR. JONES:

Q. Down at the very bottom it says that she was 1 of 10 fire employees on extended sick leave. So were there six or ten, seven or ten?
A. There were seven that were investigated. There were ten that were noted on the list that was provided to the board.
Q. Okay. So there were 10 of the list and you initiated an investigation of seven?
A. Correct.
Q. Of the seven who were investigated, she was the only one who was actually working, on light duty, correct?
A. Yes. Either the others had come back or were off altogether. Correct.
Q. But she wasn't on sick leave, so to speak?
A. Yes.
Q. There is a difference between light duty and sick leave?
A. Okay. Yes.
Q. So she was the only one who was terminated, correct?
A. Correct.
Q. Prior to terminating her employment, did you consult Dr. Clanton or any other medical professional to review Ms. Scroggins medical history

or to interview Ms. Scroggins regarding her sick leave usage, her past sick leave usage to determine whether or not she was fit for duty?

A. No. I used Dr. Clanton's letter that he provided, along with a history of usage from Fire Engineer Scroggins with Ms. Nakia Thomas.

Q. But Dr. Clanton's letter did not say she was unfit for duty, forever, right? He just said -- as a matter fact, he didn't say that she was unfit for duty, other than -- all he was looking at was whether or not her transition -- whether or not there was going to be a transition plan, right?

A. Correct.

Q. So my question is this: Did you ever sit down and consult a medical professional to interview Ms. Scroggins, and to review her past sick leave usage to determine if her absenteeism and her use of past sick leave rendered her unfit for duty at the time of termination of her employment?

A. No. His letter was used. I did not review anyone.

Q. All right. I would like to --

MR. JONES:

-- Carol can I give these to you?

My exhibits. These are actually marked

two and three. Any objection?
MS. BUCKLE:
No objection.
MR. JONES:
Multiple.
VICE-CHAIRMAN COVERT:
Ms. Jones, you said these were marked --
MR. JONES:
Those are marked --
VICE-CHAIRMAN COVERT:
-- two and three?
MR. JONES:
Yes.
VICE-CHAIRMAN COVERT:
Is there a one?
MR. JONES:
Yes. They are marked two and there because the exhibit we have marked one is now unnecessary to use.
VICE-CHAIRMAN COVERT:
Yes, ma'am.
MR. JONES:
It was included in the defendant's package. So I've marked these exhibits

2 and 3. Exhibit 2 is the evaluation by Dr. Clanton, a psychologist. And Exhibit 3 is sick leave use certificate signed by Nakia Thomas increasing Ms. Scroggins work to a 40 hour week.

(Evaluation by Dr. Clanton attached as Exhibit P1.)

(Sick Leave Use Certificate attached as Exhibit P2.)

MR. CASEY:

Point of order, Mr. Chairman.

VICE-CHAIRMAN COVERT:

Yes, sir.

MR. CASEY:

I think in order to be consistent if this is going to court, 1, 2, 3. Change 2 to 1, 3 to 2. So we can be consistent when we file --

MS. JONES:

I'm sorry. Pardon me.

MR. CASEY:

-- so can we modify that and make it --

MR. JONES:

Would you prefer we make those 1

and 2? That's fine.

MR. CASEY:

I would.

MR. JONES:

All right. Then I would change the numbers. What has previously been identified as Plaintiff 2, will now be identified as Plaintiff 1. What's previously identified as Plaintiff 3, will now be identified as Plaintiff 2.

MR. CASEY:

Thank you.

SGT. HICKS:

So I have a question in reference to the document.

MR. JONES:

I'm sorry. I didn't hear that.

SGT. HICKS:

I have a question in reference to the document. On one they are entered by the same clinician. However, the dates on them are kind of overlapping when it says two different things.

One is returning her back to eight hours. And the other one is returning

her back to four hours.

So I just want to be sure that the one that was returning her to four hours was the original one. And then, the second one returning her to eight hours was like an amended one for the first one? For the same dates?

MR. JONES:

I don't see -- the document we submitted which has been renumbered Plaintiff 2, says that she is to return to work eight hours a day five days a week beginning Monday January 16, 2023.

SGT. HICKS:

And the one Ms. Buckle provided has one for the same dates, except for the ending date. The ending date is a little longer, eight hours a day, it starts 8/29/22.

Both starting the same day, but the one Ms. Buckle presented actually has a four hour limitation.

MR. JONES:

The one Ms. Buckle submitted I

think is City 7.

MS. BUCKLE:

It's dated December 15th of 2022, and the one they provided was January 11th, 2023. So Ms. Thomas provided a subsequent one to the one that the city produced. There were multiples of these certificates provided.

MS. JONES:

Okay. To be clear, and I believe Chief Reese has testified to this. She has to provide sick leave use certificates at periodic intervals per policy.

SGT. HICKS:

I'm just a little confused on -- this isn't even a month. It's like maybe 11 days, that one -- well, the same clinician says that she needs to do four hours a week for over, almost six months. And the other one says eight hours a week.

So I guess I'm trying to see what presented the abrupt change that she

could go from four to eight in such a short period of time.

MS. JONES:

Well, we're going to have Ms. Thomas testify.

SGT. HICKS:

Okay.

MR. THOMPSON:

Mr. Chairman.

VICE-CHAIRMAN COVERT:

Yes, sir.

MR. THOMPSON:

Before she testifies could we have a short break.

VICE-CHAIRMAN COVERT:

Yes. Ms. Jones, are we at a breaking point that we could take a five minute recess?

MR. JONES:

Certainly.

VICE-CHAIRMAN COVERT:

Okay. We will be in recess for six minutes. We will restart at 0955 hours.

(BREAK TAKEN)

DOCKET 10107

VICE-CHAIRMAN COVERT:

We will go back on the record. For the record Ms. Robertson is present. However, she arrived after opening statements were made. Therefore, she is simply observing at this point. And she will not be making any comments or any sidebars or questions.

That is just to guarantee that there will not be grounds for appeal since evidence has already been heard.

Okay, where were you Ms. Jones?

MR. JONES:

I have a couple more questions for Chief Reese.

VICE-CHAIRMAN COVERT:

Yes, ma'am.

BY MR. JONES:

Q. Chief Reese, if you will look at page 29 of the City's exhibits?

A. Yes, ma'am.

Q. And this is the page that lists Ms. Scroggins periods of absence. I want to go over

to the right, the column to the far right, hours absent. Do you see that?

A. Yes, ma'am.

Q. So this is calculated by the number of shifts that she would have missed during these time periods?

A. Just give me one second, I think so. That's correct.

Q. I want to go to the time period, July 13, 2022 to November 14, 2022. Where it shows 42 -- it shows 124 days, 42 shifts and 1008 hours. Do you follow me; do you see that?

A. Yes, ma'am. Yes.

Q. So when you were calculating this, wasn't Ms. Scroggins working light duty during this period of time?

A. Yes. Correct. But I think when we report sick leave the Board does not recognize light duty. They only recognize -- we as a department recognize light duty. But the Board does not recognize light duty. We have to send in those hours of sick leave if I'm not mistaken.

Q. So where it says, where you are talking about the number of hours missed from work though, that's really not accurate because she was, in fact,

working during this time period. She just was working in a different capacity, correct?
A. Correct. So she's -- yes.
Q. So she's not truly quote absent?
A. From the -- her -- from fire engineer rank and shift work she was absent.
Q. But she wasn't absent from work?
A. Okay.
Q. Are you following me, she's working --
A. I'm following.
Q. She's working. She's not at home. She's working, right?
A. Okay. Yes.
Q. So when it shows 108 hours absent, she didn't miss 108 hours in that time period, because during a part of that she would have been working light duty, correct?
A. Correct. Let me look at when that was. Because at that point -- there was a point that reentry or light-duty where she went back off. Where she was still listed as light duty, but was not at work.
Let me make sure that is within those dates, September 2nd when she went back for reentry or retraining -- reentry training and our

train staff noted September 2nd, September 9th where she had to leave. She could not do any physical task for her reentry. So she went -- I'll have to look. I think she went back off leave. I'm reviewing that document now.

While she was doing reentry it was noted or sent to my office that she had already exceeded the time of normal reentry. Because she was not able to perform in that environment.

So I would have to go back and look at the hours in which she was not performing during those times also.

Q. All right. But you agree that for a period of time, in that time period, through the date of termination -- at some point after September the 2nd until the date of termination she had begun working light duty?

A. Correct.

Q. And so the number of hours absent would not be the correct number because it doesn't give her credit for the light duty hours she was working, correct?

A. Correct.

Q. Now, if she was the only one who proceeded to a predisciplinary conference of all the ones on

the list?
A. Yes.
Q. And all of the ones on the list -- isn't it true that there where other people who had missed total calendar days off approaching one year?
A. Yes.
Q. So she was not the only one?
A. No.
Q. She was just the only one who advanced to a PDC and termination, correct?
A. Correct, based on those facts. Yes.
Q. Well, the other factor being what?
A. It was looking at a five year span, not just that one year. And who was back at work and who had been rehabilitated.
Q. But you had received paperwork from Dr. Clanton suggesting that her counselor be consulted regarding her rehabilitation and return to work. And you received paperwork from her counselor saying I'm transitioning her back to a 40 hour week, right?
A. Correct.
Q. And you did not get any follow-up from Dr. Clanton as to whether or not that was insufficient, did you?

A. I did not.
Q. Thank you, Chief Reese.

MR. JONES:

Thank you. We tender the witness back.

SGT. HICKS:

What was the number of days of your reentry?

MS. BUCKLE:

Do what, I'm sorry.

SGT. HICKS:

You said she maxed out the number of days of reentry?

You said she maxed out her reentry days, what's the number of days?

VICE-CHAIRMAN COVERT:

And Chief Reese, if you would, just briefly explain when you're talking about reentry.

CHIEF REESE:

Correct.

VICE-CHAIRMAN COVERT:

For those that don't understand what that means.

CHIEF REESE:

Correct. And of course, one of the Board members is in training. But our reentry allows that member -- it depends on what they were off for -- it allows them to get back into that role of a fire engineer, firefighter, fire captain.

You perform the essential job functions. They put you into a mask, making sure that you can do a maze searching for someone. Driving the truck would have been part of her reentry. Making sure that she could turn the wheel. CPR is one of those functions as well.

So it's pretty much abbreviated basic, you know, 48 to 72 hours maybe, of just running through some evolutions to get back to a fire truck.

SGT. HICKS:

Did she ever start the reentry or she never got to that point?

CHIEF REESE:

She did. She did restart the reentry. There was an e-mail sent from

our training captain. She did start reentry. At one point she could not turn the wheel. She could not perform. She could not put the mask on.

SGT. HICKS:

So she started, but did not complete it.

CHIEF SMITH:

No.

SGT. HICKS:

Okay.

MS. BUCKLE:

Pam, if you will reverse those numbers, but I'm going to move to introduce as City Exhibit 8 the interoffice memorandum presented by Katina Bruce to Chief Reese.

(SFD Inter-Office Memo 9-2-2022 attached as Exhibit 8.)

MR. JONES: I have no objection.

SGT. HICKS: What page?

FURTHER EXAMINATION OF CHIEF REESE

BY MS. BUCKLE:

Q. So Chief Reese in September of 2022 she

attempted reentry, but was unable to complete it.
A. That is correct.
Q. If you will, Ms. Breedlove -- I'm sorry, Ms. Jones, I apologize -- had you looking at page 29?
A. Yes.
Q. And if you will look at that chart, on the first set of dates June 4, 2018 to June 6, 2018.

VICE-CHAIRMAN COVERT:
Ms. Buckle --

MS. BUCKLE:
Page 29 is what you already have.

VICE-CHAIRMAN COVERT:
I'm sorry. You're on page 29.

MS. BUCKLE:
Yes. It's page 2 of Exhibit 6.

VICE-CHAIRMAN COVERT:
I see it. Continue on. I apologize.

MS. BUCKLE:
It's okay. It's Exhibit 6.

BY MS. BUCKLE:
Q. The first set of dates, June 4, 2018 to June 6, 2018; where those days that Ms. Scroggins was absent or on light duty?

A. Give me those dates again.
Q. The first set.
A. Those are absent.
Q. Okay. And June 12, 2018, till June 23, 2018; were those days that she was absent?
A. Absent.
Q. June 17, 2018 -- I'm sorry. September 17, 2018 to September 19, 2018; were those days that she was absent or on light duty?
A. Absent.
Q. From January 15, 2019 to January 21, 2019, was she absent or light duty?
A. Absent.
Q. February 16, 2019 to March 10, 2019, was she absent or on light duty?
A. Absent.
Q. March 28, 2019 to March 23, 2020, was she absent or on light duty?
A. Absent.
Q. July 25, 2022 to July 15, 2021; was she absent or on light duty?
A. Absent.
Q. November 15, 2021 to July 13, 2022; was she absent or on light duty?
A. I believe she was absent. This was right

at the time of training -- transition time. But I as speaking to the previous fire chief, absent.

Q. Okay. So the only time that she ever did light duty in the five-year period that you looked at was this last set of dates of July 13th through November 14th of 2022, correct?

A. Correct.

Q. And she was not on light duty that entire time, because she wasn't able to complete the reentry, correct?

A. Correct.

Q. I also want to show you what has been marked as City Exhibit 9.

MS. BUCKLE:

Is there any objection, Pam to the 2020 to 2021 Dr. Clanton evaluation.

MR. JONES:

Both of mine are dated in 2020.

MS. BUCKLE:

There should be three pages.

MR. JONES:

Wait. Yes. Okay. No. There is not objection. There's three pages, right?

MS. BUCKLE:

Correct.

MR. JONES:

Okay.

BY MS. BUCKLE:

Q. Now, if you will keep your page 29 open of Exhibit 6, and then also look at Exhibit 9. This first page of Dr. Clanton was a fit for duty evaluation for Ms. Scroggins, correct?

(Dr. Clanton Fit-For-Duty Eval attached as Exhibit 9.)

A. Yes.

Q. Dated March 23, 2020?

A. Yes.

Q. And did Dr. Clanton advise that Ms. Scroggins was fit to return to duty full-time?

If you look at the bottom paragraph, the third sentence.

A. Yes. "I find no evidence of any issues that would prevent her return to full duty at this time."

Q. Okay. And that was March 23, 2020, correct?

A. Correct.

Q. And looking at the chart from Exhibit 6 she did return to duty at that time, didn't she?

A. Yes.
Q. Okay. But then she went off four months later, again, correct?
A. Correct.
Q. On July 25, 2020?
A. Yes.
Q. And she remained off 355 days?
A. Yes.
Q. Okay. If you will turn to the third page of Exhibit 9. This is another evaluation from Dr. Clanton, correct?
A. Yes.
Q. And it is dated July 15, 2021.
A. Yes.
Q. And was it, again, his opinion that she could be released to work?
A. "There do not appear to be any significant psychological symptoms that would prevent her return to work, so she is cleared to do so effective this date." That's what he wrote.
Q. So following this evaluation she was again returned to duty on July 15, 2021, correct?
A. Correct.
Q. And isn't it true that just four months later she again went on leave?

A. Yes.

Q. So Ms. Jones -- I believe it is Exhibit 2, was the sick leave use certificate from Ms. Thomas dated January 11, 2023, advising that Ms. Scroggins would be able to return to work eight hours a day, five days a week, correct?

A. Correct.

Q. But the document from Ms. Thomas was dated after the notice of pre-disciplinary conference was issued, correct?

A. Yes.

Q. So Ms. Thomas changed her opinion from the December date after Ms. Scroggins was issued a notice of pre-disciplinary conference?

A. Correct.

Q. Okay. Now, you're not required to have a doctor evaluate Ms. Scroggins, are you?

A. No.

Q. Okay. And in looking at her prior medical history, even if Dr. Clanton or someone else had recommended or advised that she was fit to return to duty, did you have any reason to believe that she would be able to remain on full duty and satisfy the bona fide occupational qualifications of a fire engineer?

A. I believe she would after reading those reports from Dr. Clanton.
Q. No -- okay.
A. Rephrase your question, I'm sorry.
Q. If you had sent her in January 2023, based on her history, do you have any reason to believe that she would have been able to remain for an extended period of time on full duty and satisfy the BFOQ of the position of fire engineer?
A. No. She would not have been able to fulfill those duties.
Q. Was there any reason to believe that she would have regular and predictable attendance?
A. No.
Q. Was there any prediction, based on her pattern of absenteeism?
A. Actually, looking at it now it would have been possibly coming back another four months and taking off again.
Again, I'm looking at the history of five years. And looking at the last three, it's every four months, when she comes back she takes off again.
Q. So whatever documentation was being provided to you in January of 2023, your decision

wasn't made based solely on her current situation. It was based on the history and pattern for the previous five years.

A. Correct. I had -- yes. Correct.

MS. BUCKLE:

Does the Board have any questions?

VICE-CHAIRMAN COVERT:

Ms. Jones do you have any?

MR. JONES:

I do have a couple of follow-ups based on the testimony he just provided.

FURTHER EXAMINATION OF CHIEF REESE

BY MR. JONES:

Q. Chief Reese you are not a medical doctor, correct?

A. That's correct. I'm not.

Q. You're not a psychologist, correct?

A. I am not.

Q. And you did not have any psychologist or expert or medical doctor take a look at Ms. Scroggins attendance history or the reasons for her absences before you made the decision that she was not going to be fit for duty?

A. No, I didn't.

Q. So you based it simply on your own personal criteria.
A. No. I based it off of -- yes. Off of the history of looking at the doctor's and psychiatrist -- licensed social workers notes, and those sick leave certificate forms, is what it was based off of.
Q. And your assumption that she was not going to be returned, correct?
A. There is nothing to predict that she would return.
Q. But you didn't get any professional opinion on that?
A. No, I was not required to.
Q. Now, isn't it true that there have been people for whom you have authorized long term light duty?
A. Myself or the department?
Q. Pardon me?
A. You saying, myself or the department? Like a history of or --
Q. Well, aren't -- yes, in terms of the department. There have been people who have been on light duty for extended periods of time, almost up to a year.

A. I can only attest to what I have done.
Q. But you have granted long term light duty to at least one person during your tenure as chief?
A. I'm sorry. I don't recall.
Q. Candie Sneed.
A. I would have to look at records. I can't say yes or no.
Q. And isn't it true that you do have people who are off on long-term sick leave now?
A. Yes. In rehabilitation, yes. Without going in to the history, yes.
Q. You have people who were on the list, back in 2022, who are now on sick leave?
MS. BUCKLE:
I'm going to object to this line of questioning. It does beyond.
VICE-CHAIRMAN COVERT:
Sustained.
MR. JONES:
Thank you.
MS. BUCKLE:
Brief follow up, simple to what she asked.
VICE-CHAIRMAN COVERT:
Go ahead.

FURTHER EXAMINATION OF CHIEF REESE

BY MS. BUCKLE:

Q. Chief Reese with respect to the questions about medical issues, you're not purporting to be a medical doctor, correct?

A. No.

Q. Your responsibility is owed to the other members of your department and to the citizens of Shreveport, correct?

A. Yes.

Q. Based on all of the information you had, in the records in her file, what was decision the decision you felt was necessary as Fire Chief in this matter?

A. So reviewing Dr. Clanton's notes, the history from Dr. Thomas were the decisions used -- and the fact that I have no predictability on when she would actually stay at work or when she would come back to work.

Q. And you have an extensive medical file on her, correct?

A. Correct.

Q. Regardless of what those certificates said, she still continued to miss 64.6 percent of work?

A. Correct.
Q. And your decision to terminate was based on the duty to the other employees and as a steward of the money paid by taxpayers of the city of Shreveport, correct?
A. Correct. And I don't want to be under investigation by the Board for not doing or not following the BFOQ's of the Fire Chief.
Q. As we sit here today do you stand by your decision to terminate Ms. Scroggins?
A. Absolutely.
Q. No further questions.
VICE-CHAIRMAN COVERT:
Ms. Jones.
MR. JONES:
No. We have none. Thank you.
VICE-CHAIRMAN COVERT:
Board members any questions for the Fire Chief? None. Ms. Buckle?
MS. BUCKLE:
We tender.
VICE-CHAIRMAN COVERT:
Ms. Jones.
MR. JONES:
You're not going to call your

other witness?
MS. BUCKLE:
No.
MR. JONES:
Okay. Can you give us just a minute.
VICE-CHAIRMAN COVERT:
Yes, ma'am.
MR. JONES:
Do you want our witness to sit here in the middle table?
VICE-CHAIRMAN COVERT:
Yes. If we can get a microphone to it. Do you need, multiple witnesses or are you calling one at a time?
MR. JONES:
We would like to call Nakia Thomas. We are going to be calling our witnesses a little bit out of order. But Ms. Thomas is a professional and she had patient's waiting. So we would like to call Nakia Thomas.
VICE-CHAIRMAN COVERT:
Sure. Can someone go get Ms. Thomas? Thank you, Chief.

State your name for the record.

THE WITNESS:

Nakia Thomas.

VICE-CHAIRMAN COVERT:

Ms. Thomas, what is your occupation?

THE WITNESS:

I'm a social worker.

VICE-CHAIRMAN COVERT:

Social worker. Ms. Jones.

EXAMINATION OF MS. NAKIA THOMAS

BY MR. JONES:

Q. Ms. Thomas. Is Felicia Scroggins one of your patients?

A. Yes. Up until July of 2023.

Q. And can you tell us briefly when you began seeing Ms. Scroggins as one of your patients?

A. It would have been during 2018.

Q. And with what regularity did you see her between 2018 and January of 2023?

A. It ranged from weekly to biweekly. At one point we were doing once a month check ins. It just all depends during that time period.

Q. And without going into too much detail could you tell us just briefly what Ms. Scroggins

was seeing you for the treatment of?

A. Ms. Scroggins do I have permission to --

MS. SCROGGINS:

(Nods head up and down.)

A. Initially, Ms. Scroggins, began treatment for what ended up being a diagnosis of posttraumatic stress disorder related to work conflict.

Q. Did you fill out sick leave use certificates for Ms. Scroggins?

A. At different times I did.

Q. Did anyone from the fire department ever contact you with questions about the sick leave use certificates?

A. No.

Q. To your knowledge they were always accepted?

A. Yes.

Q. I want to draw your attention to the time period of July 2022 through January of 2023. Was Ms. Scroggins under your care?

A. She was.

Q. And I understand you're a licensed professional social worker. You are in private practice. And you do -- it is part of your practice to treat people who have PTSD or other emotional or

psychological injuries or problems.

A. That is correct.

Q. And you also obtain information from your patient's medical doctors as well?

A. Yes.

Q. So during the period of July 15th, 2022 through January of 2023, were you treating Ms. Scroggins?

A. I was.

Q. And what were you treating her for doing that time period?

A. During that time period it was related to grief. Her father had passed away.

MR. THOMPSON:

I'm sorry. I didn't hear.

A. It was related to grief. Her father had passed away.

BY MR. JONES:

Q. And would you say she had an extreme grief reaction?

A. Yes.

Q. Did you make the recommend that Ms. Scroggins should take off from work to deal with her grief reaction?

A. I did, considering the information that

she gave me. Also the way that she presented in my office.

Q. And what was Ms. Scroggins response?

A. Initially, Ms. Scroggins, was like I need to do go to work. So that's when we agreed upon light duty.

Q. And so your recommendation had not been light duty, but you -- you found that, that would be appropriate based upon Ms. Scroggins request to return to work?

A. Yes.

Q. During this time period, and we're going through the end of 2022 in to January of 2023, did you and Ms. Scroggins discuss the transition that would enable her to return to full duty working shifts as a fire engineer?

A. We did.

Q. Were you familiar with the duties of a fire engineer?

A. Yes.

Q. And Ms. Scroggins had reported those to you, and you had other sources to inform you?

A. Yes.

Q. Was it your opinion that Ms. Scroggins was going to be able to transition in to working regular

24-hour shifts on a cycle just as other fire engineers do?

A. Yes.

Q. Did you have a plan in place by which Ms. Scroggins would be transitioned back to regular 24-hour shift work?

A. Yes, we did.

Q. Had Ms. Scroggins shared with you the recommendation of Dr. Clanton, that Ms. Scroggins consult you about a transition to return to work full-time on shiftwork?

A. Yes.

Q. Had you and Ms. Scroggins been in the process of doing that already, even before Dr. Clanton had made the recommendation?

A. Yes, we were.

Q. In terms of the sick leave use certificates that you filled out on Ms. Scroggins, without revealing any information about your other patients, can you say that you have filled out similar forms for other people?

A. I have.

Q. And through the -- and you have never had anyone come back and question you about the form, correct?

A. Not on Ms. Scroggins. No.

Q. All right. Thank you. We don't have any other questions for Ms. Thomas.

EXAMINATION OF MS. NAKIA THOMAS

BY MS. BUCKLE:

Q. Ms. Thomas you said that from July 2022 to July 2023 you are treating Ms. Scroggins for grief, correct?

A. That is correct.

Q. But you were treating her prior to that time as well.

A. Yes.

Q. I'm going to show you what has previously been marked as City Exhibit 7; that first page, that is a certificate signed by you, correct?

A. The first page, no.

Q. Dated March 12, 2020.

MR. JONES:

I'm sorry. I don't have the right number. Did you say 7.

MS. BUCKLE:

I did.

A. Okay. Yes.

BY MS. BUCKLE:

Q. You treated Ms. -- or was it your

recommendation that Ms. Scroggins be absent from March 28, 2019 to March 20, 2020?
A. Okay. On here it has November -- I'm sorry. I'm trying to make sure. Because this form is from December to January.
Q. The first page.
A. Okay. I didn't sign this.
Q. This is a -- well, does this document indicate that you are treating Ms. Scroggins, you were treating her from 2019 to 2020, correct?
A. Yes.
Q. Okay. And was it your recommendation that she be off work from March 20, 2019 until March 20, 2020?
A. Yes.
Q. Okay. And if you will turn to the second page -- well, let me ask -- was it your recommendation that she return to duty following March 20, 2020?
A. Yes.
Q. But then four months later it was again recommended that she go off of work and she was then off on leave from July 25, 2020 to July 14, 2021, correct?
A. Yes.

Q. And it was your recommendation that she be off work during that period of time?

A. Yes.

Q. Okay. And are you aware that four months after this Ms. Scroggins, again, went on leave?

A. Of what month?

Q. November, effective November 15, 2021 she went on leave again. And she was on leave from November 15, 2021 to July 13, 2022. Are you aware of that?

A. I am aware that there were different episodes and different situations that she was on leave.

Q. And these were all prior to the treatment of grief, correct?

A. No.

Q. There were treatment for other issues?

A. Yes. Those were other issues.

Q. Ms. Thomas, you were never asked to evaluate Ms. Scroggins to determine whether she was fit to perform the job duties of a fire engineer, were you?

A. Not by the Shreveport Fire Department, no.

Q. Are you qualified to perform a fit for duty evaluation for employment for a fire engineer?

A. I have for other agencies.
MR. THOMPSON:
I didn't understand the answer.
Q. Would you --
A. I have for other agencies.
BY MS. BUCKLE:
Q. Would you agree that regular attendance is required for any job position?
A. Yes.
Q. Do you have any knowledge as to how much time Ms. Scroggins was absent from work in the five year period preceding her termination?
A. I know there were certain times that she was absent, just because I prepared the absence reports.
Q. Are you aware that she was absent 64.6 percent of the time?
A. Based on her time there, no. I wouldn't have that knowledge.
Q. Would you agree that if you were unable to report to work and provide treatment to your patients 64.6 percent of the time that you would not be satisfying your obligations to your clients?
A. I would think that there would be some extenuating circumstances.

Q. For a five-year period of time, do you think that would be acceptable to be absent for 64.6 percent of the time?
A. I would think that there would be extenuating circumstances. My job is, as a therapist, is to assist and treat the issue. I wouldn't have anything to do with administrative issues.
Q. I understand. My question is simply for you, as a therapist, you have clients that you have obligations to, correct?
A. Yes.
Q. Okay. Do you think you would be satisfying your obligations to your patients if you were absent over a five-year period of time for 64.6 percent of the time?
A. If I was not there my patients would just find someone or I would refer them to someone else.
Q. But you would not be fulfilling your obligations to them, correct?
A. My obligation fulfilled to them is, if I am unable to provide the service, is to refer them to someone else, as a therapist.
Q. Correct. So someone else would need to perform those job duties, correct?

A. That's up to that particular client.

Q. But you wouldn't be paid if they were seeing another therapist, correct?

A. No. I would not.

Q. Okay. You don't believe that you and another therapist should be paid for performing the same job duties?

MR. JONES:

Object to the relevance. Obviously, it's two different types of work. Two different sick leave and attendance policies. Ms. Thomas is a professional in private practice. I don't see that this is relevant to the inquiry here.

VICE-CHAIRMAN COVERT:

I will sustain.

MS. BUCKLE: I will move on. No further questions.

FURTHER EXAMINATION OF MS. NAKIA THOMAS

BY MR. JONES:

Q. A couple of follow-up questions for you Ms. Thomas. And if you will look at -- there is a -- I believe you have been given a document identified as City 7, the multiple page document.

If you would go to the last page of that document. And it is a sick leave use certificate signed by you. Let's see, it says -- it's covering the dates of absence August 29, 2022 to January 1, 2023. Do you see that at the top of the form?

A. Yes.

Q. Okay. So if you come down to the part where it says employee work status, towards the middle of the page. There's some little boxes to check. And there is a return to work box. There is an unable to work box. There is an unable to return to work at full capacity box. And then there is an unable to return to work at full capacity, but does have the ability to work box.

Did you check one of those boxes for Ms. Scroggins?

A. I did.

Q. Which box did you check?

A. Unable to return to work in full capacity, but does have the ability to work in a limited slash modified duty assignment.

Q. Did you also indicate by checking that box that you expected Ms. Scroggins to make a full recovery?

A. That was the plan.

Q. And that you were going to reevaluate her on January 1, 2023, correct?
A. January 11th, yes.
Q. I'm sorry January 11, 2023, correct?
A. That's correct.
Q. I'll show you a document that has been marked as Scroggins 2, that may not be in front of you. Before we get to that, going back to the City's exhibit and the sick leave usage form. Stating that you would reevaluate Ms. Scroggins on January 11, 2023, when you have her working four hours a day five days a week, at this time expecting to see her again on January 11th. Did you anticipate that you would be increasing her number of hours or maybe even be releasing her on January 11th?
A. Yes. This was part of our transition plan.
Q. And so when you saw her again on -- well, let me back this up.
At the time you submitted this, you already had a transition plan for her to return her to 24-hour shifts, correct?
A. Yes.
Q. So when you saw her again on January 11th,

2023, and I have given you that, that is Scroggins 2. Going back up to the top of the form you changed her dates of absence to end on February the 8th of 2023, correct?

A. That's correct.

Q. Coming down to the middle part of the form, you again checked unable to return to work to full capacity, but does have the ability to work limited or modified duty, correct?

A. That's correct.

Q. And you again marked that she was expected to make a full recovery, correct?

A. Yes.

Q. And you marked that you would re-evaluate her on February the 8th of 2023, correct?

A. That is correct.

Q. What was your plan? What did you expect to happen between January 11th, 2023 and February 8, 2023 for Ms. Scroggins, based upon your knowledge of her history with her grief reaction and the progress she was making?

A. We were making gains through different methodologies of psychotherapy, mindfulness to address the grief reaction. And the plan was for her to go back to eight-hour days.

Q. Now, but eight-hour days on January the 11th. But between January the 11th and February 8th, for the next month, did you anticipate that when you saw her again on February 8, 2023, you would be releasing her to go back to regular 24-hour shifts is a fire engineer?
A. Yes.
Q. And, in fact, that was the plan; wasn't it?
A. It was.
Q. Did you see Ms. Scroggins after January 11th, 2023?
A. I did.
Q. When was the next time you saw her?
A. February the 8th.
Q. And on February the 8th, 2023, was it your opinion that Ms. Scroggins -- had she been employed -- could've returned to work full-time, 24-shift as a fire engineer?
A. It was.
Q. Have you seen Ms. Scroggins since then?
A. I have.
Q. When was the last time you saw her?
A. July of 2023.
Q. At that time was it your opinion that she

could return to work full-time as a fire engineer, if she had been employed?

A. It was.

Q. Thank you, Ms. Thomas.

VICE-CHAIRMAN COVERT:

Ms. Buckle.

MS. BUCKLE:

Yes, I have some follow up.

FURTHER EXAMINATION OF MS. NAKIA THOMAS

BY MS. BUCKLE:

Q. Ms. Thomas from March 28th, 2019 to March 20th, 2020, you never recommended any type of light duty, correct?

A. No.

Q. And from July 25th, 2020 to July 14, 2021, you never recommended any type of light duty for Ms. Scroggins?

A. No.

Q. On December 15th, 2022, that was when you recommended that she return four hours a day five days a week, correct?

A. I don't have the exact dates in front of me. But, yes.

Q. That was after Ms. Scroggins received the notice on December 2nd that she was under

investigation for sick leave, correct?

A. I was not aware of the NOFI.

Q. Well, earlier in your testimony, I think it was -- you said, that it was your recommendation that she be absent, but she was wanting to get back to work, correct?

A. Yes.

Q. So the first time that it was recommended that she be on limited duty or that there was any type of transition was after she was under investigation for sick leave?

A. We're talking about two different time frames with different presenting issues.

Q. Okay. But with the previous issues you never recommended any type of light duty?

A. No.

Q. And it was your belief at the time when you released her in March 2020 and July 2021 that she was able to return to duty full-time, correct?

A. Yes.

Q. But both of those times she only returned for four months?

A. Okay.

Q. You don't have any reason to disagree with that, correct?

A. No. I don't.

Q. No further questions.

MR. JONES:

I just have a couple of follow-ups on that, if you don't mind.

VICE-CHAIRMAN COVERT:

Go ahead.

MR. JONES:

I do have -- I just want to follow up on what she was asking her about these dates.

VICE-CHAIRMAN COVERT:

Sure.

FURTHER EXAMINATION OF MS. NAKIA THOMAS

BY MR. JONES:

Q. So Ms. Thomas in front of you, you have a document marked City 7, and multi-page document. It is sick leave use forms. That's it.

A. Yes.

Q. Okay. All right. So I want to look at City 7. The sick leave use form that says Ms. Scroggins would be off from 3/28/19 to 3/20/20. Do you see that document, it should be the first page?

A. Yes.

Q. What was the reason for absence?
A. At that time it was related to the PTSD.
Q. Turn to the next page please, the document that has her off July 25, 2020 to July 14, 2021. Do you see that page?
A. Yes.
Q. What was the reason for absence?
A. It was related to the PTSD.
BY MR. JONES:
Q. Turn to the next page. This is the time period --
VICE-CHAIRMAN COVERT:
What document are you looking at?
MR. JONES:
I'm on City 7, and I'm now on page 3.
BY MR. JONES:
Q. This is the time period covering August 29, 2022 to January 1, 2023. Do you see that document?
A. Yes.
Q. And the reason for absence is different this time, isn't it?
A. That's correct.
Q. All right. And it has F41.1, but what you

mean by that is, this is her severe grief reaction?
A. Yes.
Q. And then you will see, I gave you Scroggins 2, it is a standalone page. Sick leave use form for August 29th, 2022 to February 8th, 2023?
A. Yes.
Q. And, again, the reason for absence is not PTSD, is that?
A. That's correct.
Q. It's the grief reaction?
A. Yes.
Q. So in your opinion Ms. Scroggins had been cleared for work and was able to work despite the PTSD diagnosis, correct?
A. That is correct.
Q. The thing that was keeping her off work was the severe grief reaction, correct?
A. That is correct.
Q. And to address the grief reaction you had Ms. Scroggins working, essentially, part-time. And if we go back to City 7, page 3, which is the sick leave use form ending January 11th, 2023. Are you following me?
A. Yes.

Q. So this is where you have her going four hours a day, correct?
A. That is correct.
Q. And this was to ease her back in to the workplace following her grief reaction?
A. Yes.
Q. Not because of the PTSD, because she would have been cleared from the PTSD?
A. That's correct. Ms. Scroggins asked to return to work.
Q. And she asked to return to work, correct?
A. Yes.
Q. And then the same thing for Scroggins 2, where she is to be reevaluated February 8th, 2023. You had increased it to eight-hours a day, correct?
A. That's correct.
Q. Right. And this was part of the transition plan that had been in place from the minute she consulted you regarding the grief reaction, correct?
A. That's correct.
Q. Thank you.
MS. BUCKLE:
I have one.
VICE-CHAIRMAN COVERT:

Go ahead, Ms. Buckle.

FURTHER EXAMINATION OF MS. NAKIA THOMAS

BY MS. BUCKLE:

Q. Ms. Thomas on these last two documents I believe it is Scroggins 2 that is dated January 11th, 2023, it says the date of injury or illness is August 15th, 2022, correct?

A. That is correct.

Q. And I'm going to assume that, that was the date of loss of Ms. Scroggins' father?

A. Yes. It was around that time.

Q. So that would have been from August 15th forward would have been the treatment for grief, correct?

A. That is correct.

Q. Why was Ms. Scroggins off from July 13th, 2022 to August 15th, 2022? It would not have been related to the grief treatment, correct?

A. I don't have that form, so I can't speak on that.

Q. But you would agree that if she was off for a month prior to August 15th, 2022, that would have been another condition, not grief, correct?

A. Considering -- well, without going into too much detail, due to HIPAA, there are some back

story with that. Where Ms. Scroggins could have been off related to her father's illness prior to his passing, without those particular dates in front of me I can't really say that it is or is not related. But, if it was prior to that time, it is very highly possible that it was related to his illness.

MS. BUCKLE:
No further questions.
MR. JONES:
Thank you Ms. Thomas. We don't have any other questions.
VICE-CHAIRMAN COVERT:
Board members.

BOARD MEMBER EXAMINATION OF MS. NAKIA THOMAS
BY SGT. HICKS:

Q. I do. Yes, referring to the same form for sick leave. Just to get an understanding. I'm kind of confused. For the period of 3 '19 and 3 '20, is for PTSD, right.
A. That's correct.
Q. And that was job related?
A. Yes. That's right.
Q. And the period of 7/25/20 to 7/14/21, it was still PTSD, which was job related as well,

right?

A. That is correct.

Q. For the dates of 8/29/22 to 1/11/23, was the F41 code, I think that was for anxiety; is that correct?

A. That's correct.

Q. Okay. Was that job related?

A. No. That is the grief.

Q. Okay. And if you were advising that she could come back to work, you still put a limitation and restrictions as far as work hour restrictions. Did she have any other restrictions?

A. No.

Q. It was just the work hours?

A. Yes.

Q. Because on here you have four hours for the date of 8/29/22 to 1/11/23 with restrictions. And the restrictions was for eight hours work for five days. And then you have one, another sheet, 8/29/22 to 2/8/2023 she is still unable to return to full duty. She's limited.

But now she can work eight hours with restrictions. So were there any other restrictions beside her eight hour workday then?

A. During that time she was not working in

her usual capacity as a fire engineer, is my understanding. So being at the --

Q. So, it was basically your recommendation that she return back to work but not in her engineer, fire capacity, I'm not sure what her job title actually was?

A. No. The transition plan was to return back to the fire engineer position. It's just at that time I think she was at the training academy doing the light duty.

Q. Okay. So one, here I'm just trying to see, were you releasing her from being limited on here with restrictions? And if so, were there any other restrictions beside eight hours, because it's not saying released to full duty?

A. Okay. No. There were no other restrictions.

Q. So she was actually released to full duty?

A. Yes.

Q. Okay.

VICE-CHAIRMAN COVERT:

Any other questions?

BY ASST. CHIEF FTO WATSON:

Q. I have a question. On the sick leave use certificates, the first two, in the area of "to be

completed by the employee's supervisor for EACH incidence of an employee's sick leave."

Do you see that on the first page. They state the same thing. But the remaining two, ask for employee's work status. Were these forms updated during this process? Were they changed to give you that opportunity to list, limited, modified duty restrictions for Ms. Scroggins.

A. Okay. I'm sorry. Repeat the question. Because I'm not following with the forms.

Q. Do you believe that these forms were updated to give you the opportunity to limit modified duty restrictions for Ms. Scroggins?

A. Were the forms updated? I know --

MS. BUCKLE:

Chief, if I may.

ASST. CHIEF FTO WATSON:

Yes.

MS. BUCKLE:

If I can show Ms. Thomas some documents. I'm just going to -- for example, there's a document here dated 4/26/19, correct?

MS. THOMAS:

Yes.

ASST. CHIEF FTO WATSON:
Yes.
MS. THOMAS:
Okay.
MS. BUCKLE:
And my question or comment earlier, if I can just clarify what Sgt. Hicks was asking about, return to full duty. But full duty for a fire engineer is 24 hours, not eight hours, correct?
VICE-CHAIRMAN COVERT:
Correct. It's a an average of 56 hours a week. Regular shift work.
SGT. HICKS:
Okay. Now I understand.
MS. BUCKLE:
Thank you.
VICE-CHAIRMAN COVERT:
Any other questions for this witness.
MR. JONES:
No. Thank you.
VICE-CHAIRMAN COVERT:
Is she released?

MR. JONES:
Yes.
VICE-CHAIRMAN COVERT:
Thank you. Next witness.
MR. JONES:
Ms. Thomas, you are released. You can leave that there.
We're going to call Ms. Scroggins, Fire Engineer Felicia Scroggins.
VICE-CHAIRMAN COVERT:
Okay. If you would, Ms. Scroggins, for the record state your name?
MS. SCROGGINS:
Felicia Scroggins.
VICE-CHAIRMAN COVERT:
Go ahead Ms. Jones.

EXAMINATION OF MS. FELICIA SCROGGINS

BY MR. JONES:
Q. Ms. Scroggins, you were previously employed by the City of Shreveport Fire Department?
A. Correct.
Q. When did you begin you employment with the City of Shreveport Fire Department?
A. May of 2001.

Q. When did your employment end?
A. January of 2023.
Q. What was the position you held at the time your employment ended?
A. Fire engineer.
Q. And that's a position you would have had to promoted to by seniority and test score?
A. Yes.
Q. Were you permanent in the position of fire engineer?
A. Yes.
Q. During the course of your employment, and the City has produced a document, if you will look I believe, is the City's document with the dates in front of you? It would be City 1, page 29. Do you have that document in front of you, if not I can bring you one.
MS. BUCKLE:
I have extra. One second.
A. Which page?
BY MR. JONES:
Q. The page, they are numbered to the bottom right. There is a number 29 at the bottom right. We will go to that page.
A. Okay.

MS. BUCKLE:
And then there's a second page that indicates patient's work status, correct?
THE WITNESS:
Okay.
MS. BUCKLE:
And one that one you checked unable to return to work. Patient has limited ability.
MS. THOMAS:
Yes.
MS. BUCKLE:
So previously the documents were two pages.
MS. THOMAS:
Okay. They did change this.
MS. BUCKLE:
And then they were updated to all be included on one page, is that correct?
MS. THOMAS:
Yes. That is correct.
MS. BUCKLE:
Does that answer --

Q. This is a page that was provided to you prior to the -- and it might have been provided as part of the notice of formal investigation, or during the course of the investigation -- listing employee days off. The date returned, the total calendar days off. Shifts absence, and hours absent. Do you follow where I am on the form?

A. Yes.

Q. Let's start going through these, June 4th 2018 to June 6, 2018. Do you recall being off for two calendar days, one shift?

A. Yes, I was ill.

Q. And June 12th, 2018 to July 23, 2018, what was the reason for absence that period?

A. I had thyroid surgery. I had an enlarged thyroid removed.

Q. And then the next period of time, September 17th until September 19th, the two-day period?

A. I was off for abdominal pain.

Q. January 15th, 2019 to January 21, 2019?

A. Shoulder, hip, and lower back pain. And to elaborate on that, I fell out of the two-story window at the fire academy while I was on the job. So I just have ongoing pain from that, and certain

things will cause it to be worse on some days than others. But I fell from a two-story window.

Q. And you fell from a two-story window on the job in what year?

A. 2011.

Q. And that caused -- the injury that you suffered at that time have you had periodic flareups?

A. Correct. It wasn't until 2014 that they found that my rotator cuff had been torn the entire time. But I had other injuries that was never looked at.

Q. And so you had some kind of residual or flare up of that injury in 2019 that caused you to miss six days?

A. Correct.

Q. And then February 16th through March 10th, 2019, you were absent?

A. Same thing.

Q. Then March 28th, 2019 to March 23 of 2020; was this a stress absence?

A. Correct.

Q. And is this what -- you have heard Ms. Thomas' testimony that she was treating you for PTSD?

A. Correct.
Q. Is that what this was?
A. Yes.
Q. And so I'm going to let you go forward with the next, out of the next three series of absences, if you would, explain those please to the board?
A. Okay, from 3/28/19 to 3/23/20, the stress had become overwhelming and Nakia suggested that I be off and see her. I was going weekly, biweekly, monthly, as needed.

And then I moved -- I was transition back to work, and immediately after coming back it started, again.

I was still seeing her while at work, but it began to be overwhelming and she put me back off again.

During that time I let her know that I needed to work towards being able to deal with this and be at work, which I did.

So I was released the 7/25/2020 and 7/15/2021, I was released at that point and I was dealing with the stress and being able to manage staying at work.

Well, four months later, I was scheduled

for knee surgery. I had a lateral release done. I have injured my knee several times at work. And I have had ongoing knee problems. Well, I was scheduled for surgery. It was four months after I was released. I didn't set it up that way. It just happen to have been that way.

So I had knee surgery and from 11/15 to 7/13, I was off with complications. I had a DVT and a PE, which the DVT is -- for people that don't know it's clots in my legs. And the PE was clots in the lungs.

Q. And so in terms of your absence from work for PTSD it is, from my understanding, you were able to return to work despite the diagnosis and dealing with the symptoms effective July 15th 2021, correct?

A. Correct.

Q. And so it was knee surgery and then the complications that followed knee surgery that kept you off work from November 15th 2021 to July 13, 2022, correct?

A. Correct.

Q. Now, if you would, when you returned -- when you were released to return to work following knee surgery, did you have to get a fit for duty

evaluation from the department's physician?
A. I --
Q. Somebody had to release you to full duty, correct?
A. I don't believe I went to the doctor after that. From 7/13, this last set of dates, I was never off -- from 7/13/21 to 11/14 all of that is inaccurate. I was never off. I was released 7/13 to vacation. And I went from vacation back to retraining. So I was never off.
During my retraining -- well, no, I'll go back. From 7/13 I was released to vacation, while on vacation, 8/15 is when my dad passed. It was the day -- I was returning back. Excuse me.
But, it was the day that I was returning back from a vacation destination that when I returned home my sister was in my driveway to let me know that my dad had passed. He had been in and out of hospitals and nursing homes for nine and a half months.
And from that I went on bereavement for a few days. From bereavement I went to retraining, while in retraining I had some issues with -- I don't like to talk about the stuff with my dad.
Q. That's okay.

A. But I had some issues with the mask. It reminded me of when he was in the hospital and then they turned his oxygen off on him, and tried to kill him because he had a DNR.

But I came in the room and saw that they had silenced the monitor and turned everything off to suffocate him. So when I put the mask on, it kind of triggered that for me. So I was having trouble with retraining.

I asked the training officer if I could have a minute, and I actually stepped outside and got myself together and I came back in and I did the evolution of when they -- Reese said earlier that I didn't put the mask on. I did come back in and I put my full gear on in a timely fashion.

It was after that, that I ended up going to my personal doctor, which she referred me back to Nakia as well. And that is when I ended up on -- from there to light duty, which Nakia put for me to be off, but I didn't want to be off. Because I didn't want to be at home.

I wanted to get out and to be able to transition myself back to going back to work. I just needed to be away from death. So being on the fire line would have exposed me to that. But being

Q. And there has been some suggestion or question as to whether or not Ms. Thomas put you on light duty as a result of Mr. Clanton's letter. But could you explain how you and Ms. Thomas derived at a return to work transition plan, and whether or not that was before you were treated with Dr. Clanton?

A. Well, like I said, she wanted to put me completely off. But I wanted to go do something, so because there was light duty available now. I was put on light duty. And she said well, how about starting off with limiting the number of hours to see how you work and do with that, and then move forward.

I was at the Academy for a while. I stayed on the -- I went from the Academy to the shop. Where I actually loved working out there, filling the orders and everything. So I was letting her know that I was fine. I liked what I was doing but there. And every body worked well. And she -- the transition, she said, the next time you come in we'll go ahead and put you on full-time hours. And then we'll go from there to send you back on to work, if you manage well with the eight hours.

So that's what we last done. But in between and speaking with Dr. Clanton he had told me

to make sure I had a transition approach to go back to work. Which I told him that we were already working towards that. So he knew that she was already doing what he had suggested. And I let the fire department know that as well. But I ended up after that getting a NOFI.

So it wasn't that when I got the NOFI, I transition back. It was all ready in place.

Q. And I'm sure the Board -- I know that the Board understands what a NOFI is -- but because we are building a record for someone who may not know, a NOFI means what?

A. Notice of formal investigation. It's something that you are issued prior to being investigated.

Q. And to be clear you had been talking -- you had been working with Ms. Thomas on a transition plan to get you back to full time shift work, almost from the beginning of your treatment with her for grief, correct?

A. Correct, from day one.

Q. And you saw -- when you saw Ms. Thomas on January 11th, 2023, that would have been your next scheduled appointment with her, following your visit with Dr. Clanton?

on light duty, when I was off all the rest of the times, there was no light duty. Light duty, it was changed to where light duty was opened up to be available for us. So I ended up going from there to light duty.

So from 7/13 to 11/14, there's not one-day that I was absent or that I was off. So those 124 days from that 1153 would only have it at 1020. I wasn't off that many days.

Q. That was my question. If you look at the chart it looks like you were released to return to work on July 13th, 2022 following knee surgery and complications. And that you actually took off that same day, but that's not accurate, is it?

A. Correct. I was on vacation. From there I had to take all of the vacation that I had missed while I was off on knee surgery.

Q. And then your father passed August 15th, and then you were on bereavement leave. And then you did return to work for retraining, correct?

A. Correct.

Q. And it's while you were in the course of retraining that you suffered the grief reaction for which Ms. Thomas began to treat you for?

A. Correct.

A. Yes.

Q. And at that time you discussed with her returning to a 40 hour week, anticipating that you would be returning to a full shift work thereafter?

A. Actually, she said we were going to do that, the eight hours, and then I would come back and that next time, more than likely I was going to be released to work, depending on how I felt. If not, she would do I think it was -- I don't think if it was one week or two weeks that we would do the eight hours until I was ready to go back for the 40, if when I came back that last time, the 11th. If I didn't feel like I was ready, or whatever I explained to her, if she didn't feel like I was ready.

Q. But by the time you went back and met with her February the 8th, I believe, would that be correct?

A. Yes.

Q. At that time, but for the termination of your employment, would you have been ready to return to full shift work?

A. Yes.

Q. In the course of getting the NOFI and the process of discussing these things in terms of your

absences, and your expectation to return to work, did you provide to the department the document from Ms. Thomas stating that you could return to work for 40 hours a week?

A. Yes.

Q. And did you explain to Chief Reese or whoever was conducting the predisciplinary conference, did you explain that you expected to be released and returned to work full-time within a matter of 30 days or less?

A. Yes, I did. When I told Chief Reese in the PDC, he said that I should have had her present. And I didn't know that I needed her to be there or else I would have had her present.

Q. Are you aware of anyone else who had a notice of formal investigation associated with their absences or attendance?

A. Yes, several people. The majority of them called me, when they got the form.

Q. Do you know of anyone else who progressed to a pre-disciplinary conference?

A. No one but me. And I do know that even with the discrepancy of the last set of days some people were close to that same number. So with mine all of those last days being inaccurate, there were

people that had more days missed than I.

Q. All right. So when you work shift work, when you're actually on, in terms of the 30-day period, you would work 56 hours one week would that be correct?

A. Yes.

Q. If you're on duty as an engineer?

A. Yes.

Q. All right, 56 hours one week. And the following week are you off?

A. You are -- you work five -- every other day for five days. And then your off, so it will go over into two weeks.

Q. All right, for a 30-day period, how many hours are you working?

A. You'll work ten 24 shifts.

Q. That's 240 hours?

A. Yes.

Q. In a 24-hour-period -- I'm sorry, in a 30-day period?

A. In a month.

Q. Okay. And if you're working 40 hours a week for four weeks it's one hundred and sixty hours?

A. Yes.

Q. That's about a 40-hour difference? I'm doing the math?

A. Six -- six -- yes.

Q. In other words if you're working 40 hours a day [sic], five days a week, during the whole month, while you might not be working the full amount that someone is working shift work. You're not working a whole lot less, correct?

A. Correct.

Q. And you are in fact working, right?

A. Correct.

Q. And you're not at home and drawing pay, correct?

A. Correct.

Q. You're contributing?

A. Correct.

Q. Is there anything else that you would like for the Civil Service Board to know about your situation?

A. I'll try to say it, I get emotional talking about my dad's stuff. That's why I've been trying to work through it, dealing with it and moving past it. But you will never move past that.

And what I want people to understand, it's hard to admit that you are having a problem. But to

admit that you're having a problem, and be terminated because you admitted that -- you're already going through something and to take all of your finances away, that on top of that -- only the strong survive, I'll say. Because that's something very, very hard on a person.

And a lot of people talk to me, it's a lot of people on the job that has mental issues that don't talk about it, because they don't want to be like me. And that's not good. Because the things that we see on a daily basis at work, on top of not being able to talk about it and deal with it, that could stem over to drugs, drinking, abusive behavior towards your spouse or children.

And a lot of that goes on but nobody will never know about it, because the person don't want to talk about it. And if I have to be the example to speak on it, I would. I don't mind because I want people to be able to be okay with having a problem. And be okay with telling a person that they have a problem. And then when you tell people, nobody wants to speak because they don't feel like it's going to be confidential.

And I can speak for that, it never has been with me. Anything that I have went and talked

about, everybody knows about it. So that's another thing that makes people afraid to speak.

So if you're sitting in here and your listening, if you can tell somebody else, let people know that it's okay when they're struggling with something. And the last time that I was off I wish I could just show y'all pictures and recordings of the things that myself and my sisters dealt with for nine and a half months. I don't know if some people would be sane after seeing some the things that I've seen and watching my dad have to go through.

MR. JONES:

Thank you. I don't have any other questions for Ms. Scroggins. I will tender the witness.

VICE-CHAIRMAN COVERT:

Ms. Buckle.

EXAMINATION OF MS. FELICIA SCROGGINS

BY MS. BUCKLE:

Q. Ms. Scroggins, I truly am sorry about your loss and I'm not going to ask you any questions specific to that period of time. But I do want to look at the chart on page 29.

A. Okay.

Q. If you will look, if you will just forget

the last row 7/13/2022 to November 14, 2022, if you just take that out of the equation from the moment.
You don't disagree that all of the above columns are correct and that you were off for those days or shifts, correct?
A. I do not disagree with that, correct.
Q. So beginning in 2019, it looks like you were present for about two weeks and then you went out and you said it was for shoulder and back pain?
A. Correct.
Q. And then you returned and then in mid February you went out again for shoulder and back pain, correct?
A. Correct.
Q. And then from March 28th, 2019, you were out the remainder of 2019, correct?
A. Correct.
Q. So in 2019, you were only present for approximately two and half months, correct?
A. Correct.
Q. And then in 2020 you returned on March 23rd, 2020 through July 25th; is that correct?
A. Correct.
Q. And then you were out for the rest of the year?

A. Correct.
Q. So in 2020, you only worked for approximately four months?
A. Correct.
Q. Okay. And then in 2021 you are out from the beginning of the year through July 15th, 2021, and that was, you said, for a knee surgery?
A. Correct.
Q. And then you are out, again, from November 15th, 2021, through the end of the year; is that correct?
A. No.
Q. From November 15th, 2021, through the remainder of the year you were out for 2021?
A. 2021, yes.
Q. Okay. So in 2021 you also were only present for approximately four months?
A. Correct.
Q. Okay. So is it your testimony then that absent the grief issues in 2022, is it your position that you want to Board to believe that you were able to return to full duty without any need for absences, even though in the prior three years you had only -- the most you had been present was for one third of the working calendar year?

A. Yes. Because after July of 2021, when I was released from stress I had gained skills to deal with that. So I was no longer having to be off. If I didn't have the skills to deal with that, then, I can honestly say I would have still had problems being off.

But, if seeing from that point forward I had not to be off, again, for stress, from the job-related stress. And I also want to say I wasn't the only one with these amount of days. So that's the main -- there were several people off for stress leave for this amount of time.

Q. But you weren't off just for stress, correct? I mean, you indicated that there was a shoulder and back pain, a recurring pain from an injury you had in 2011, correct?

A. Correct. Those were a minor amount of days.

Q. Correct.

A. You were speaking of the larger amount of days.

Q. But you were also out for almost a year for a knee surgery?

A. Correct. Because I had complications. I had clots in my legs and my lungs, which can kill

you.

Q. Would it be fair to say that you have had quite a few medical complications over your career with the Shreveport Fire Department?

A. That's correct. But a lot of it was out of my control. Me falling out of the window was --

Q. And I'm not --

A. -- what caused a lot of it. Because the doctor's wasn't checking. Like I said, it was three years with a torn shoulder.

Q. And Ms. Scroggins I'm not trying to say that it was -- that you intended to fall by any means. I'm just trying to say that there have been a number of conditions that have prevented you from being able to work and fulfill your duties with the Shreveport Fire Department, correct?

A. Correct.

Q. Now, in January of 2023, isn't it correct that you were eligible for medical retirement?

A. In when.

Q. January of 2023?

A. I didn't need medical retirement.

Q. You were eligible for that, correct?

A. Yes.

Q. And you declined to apply?

A. I wasn't offered, and I didn't need it. I was fired. I was terminated.

After being terminated, I looked at the fire chief and said you can't even look me in my face and terminate me. Because he was looking down, he never looked me in my face to fire me.

And I said, you're not going to even -- because of the relationship that we had and the stuff that we had spoken about, that was happening to me on the job, that he knew what they were doing to me. That's why it made me feel the way it did, coming from him.

And I said you're not going to even offer for me to retire? I had to ask, but I was already terminated. And it wasn't for medical retirement. It was to retire, regular I guess. I'm not sure what. I was just saying I wasn't even offered that. Other people was offered to leave. I wasn't offered anything.

Like he said, a couple of people came in and retired. I'm not positive, but I -- I didn't talk to that person. But one other person, I believe, was scheduled for a PDC. But was able to retire after the date of the PDC. And I'm not sure how that happens, if your PDC is scheduled, you get

to not go and then retire after that.
So, no, I wasn't offered medical retirement or regular retirement.
Q. And you made no efforts to pursue those options after you received the notice of formal investigation, correct?
A. No. Because I didn't need it. I don't -- I was dealing with the death of my dad. I didn't need to medically retire. I just needed time to grieve. And that's all I was asking. Can y'all please give me time?
I took the test to work as a training officer. I did everything in my power to make it easier for myself and the City of Shreveport.
Q. No further questions.
MR. JONES:
We don't have any. Perhaps the Board members do.
VICE-CHAIRMAN COVERT:
Any Board members have any questions for Ms. Scroggins?
SGT. HICKS:
Had you been offered a retirement at the point of your PDC or PTH would you have taken one, whether it was

medical or regular retirement?

MS. SCROGGINS: No. Because I don't feel like I needed to retire. I just needed time to grieve and come back to work.

Because at that point -- just -- the way I felt when I put that mask on I didn't want to go to somebody's house and it's a patient and I see something that makes me freeze up. I'm here to help somebody. I'm not here to -- so if I know how I'm feeling I need to let people know that versus going out and could cost somebody they life.

SGT. HICKS:

I have no further questions.

MS. BUCKLE:

Do you have a question for the Chief about that or no?

SGT. HICKS:

No.

VICE-CHAIRMAN COVERT:

Any other members have any questions? Ms. Jones.

///

MR. JONES:

I have only one.

BY MR. JONES:

Q. Ms. Scroggins?

A. Yes.

Q. Based on your conversations with Ms. Thomas did you fully expect that you were going to be released to return to shiftwork on February the 8th of 2023?

A. Yes.

Q. Thank you. I have no further questions.

VICE-CHAIRMAN COVERT:

No questions.

MR. JONES:

None. And we might have two other witnesses. This might be a good time to take a very short break while I talk to Ms. Scroggins.

VICE-CHAIRMAN COVERT:

Sure. Is five minutes good? Yes.

MR. JONES:

Five minutes is good. We will take six, it is 11:29. We will return at 11:35 a.m.

(BREAK TAKEN)

VICE-CHAIRMAN COVERT:

We're good. We're on the record. All right. Go ahead. I'm sorry.

MS. JONES:

We have four witnesses subpoenaed. We are going to release two. We are releasing Cory Bell and Carolyn Henderson. We will be calling Chris Henry and Devon Kennedy and our next witness will be Chris Henry.

VICE-CHAIRMAN COVERT:

Yes, ma'am. Thank you, Chief.

Are we ready?

CHRIS HENRY:

Yes, sir.

VICE-CHAIRMAN COVERT:

Please state your name and position for the record, please?

CHRIS HENRY:

Chris Henry. Fire Engineer with Shreveport Fire Department.

VICE-CHAIRMAN COVERT:

Ms. Jones, your witness.

CHIEF REESE:

Thank you. And just -- we might

have a little technical error. I believe his microphone has a low battery. If the Board can hear him and the court reporter can hear him that's fine. If not, we might need to get that corrected.

VICE-CHAIRMAN COVERT:

If he can speak, he can be loud.

MR. JONES:

Can the court reporter hear him?

MADAM COURT REPORTER:

Yes, ma'am.

MR. JONES:

All right. Thank you.

EXAMINATION OF MR. CHRIS HENRY

BY MR. JONES:

Q. All right. Mr. Henry are you employed by the Shreveport Fire Department?

A. That's correct. I am.

Q. What is your job position?

A. Fire engineer.

Q. How long have you been employed by the Shreveport Fire Department?

A. For 16 years.

Q. Do you know Felicia Scroggins?

A. Yes, ma'am. I do.
Q. Have you worked with her?
A. Yes, ma'am. I have.
Q. And what is the longest period of time you have worked with her?
A. Over -- like, consistently?
Q. Well, just tell me over the period of time how long have you worked with her? Off and on at different stations?
A. That's kind of tough to answer. I mean, 16 years -- I know the longest spain at one time was a year at station six.
Q. And was she a good employee?
A. Yes, ma'am.
Q. Mr. Henry, I want to take you back to a time period -- let me find my exhibit -- in 2022.
So during the course of your employment with the Shreveport Fire Department have you had to take off for long periods of sick leave?
A. Long -- I mean, within the policy I have taken off. Yes, ma'am.
Q. All right. And can you tell me, have you taken off periods of sick leave that exceeded 90 days during the course of your career?
A. Yes, ma'am.

Q. And in the course of your career, what is the longest period of sick leave you recall that you may have taken off for sickness or injury?

A. I think stress leave was seven months. I had a biceps tear, that was five months. And I had stress for seven months.

Q. So it was two periods of seven months and one period of five months?

A. That's about correct.

Q. In 2022, were you aware that Chief Reese was collecting or assembling a list of people who had been on extended sick leave?

A. In 2022, was I aware?

Q. Did you become aware?

A. Are we asking before it happened or after it happened?

Q. Either way.

A. After it happened it became general knowledge.

Q. And, to your knowledge, were you on that list?

A. To my knowledge, before it happened or after it happened?

Q. Either way.

A. Based on what it was for, after which I

fit the criteria to be on that list.

Q. And what did you believe to be the criteria to be on the list?

A. From what I gathered it was an inquiry pulled from a protracted period of time for people who had been off on sick leave, and they have parameters in which they governed it by.

Q. But you were not given a notice of formal investigation?

A. I haven't received a NOFI, that's correct.

Q. You have not?

A. No, ma'am.

Q. So based on your understanding of the criteria for the list, you think that you should have -- you met the criteria, based upon your sequential absences of seven, five and seven months, but you were not given a notice of formal investigation, correct?

A. I haven't received a NOFI. That's correct.

Q. Thank you. I don't have any other questions. Oh, wait. I'm sorry.

Mr. Henry, do you happen to know your total number of days missed for absent sick leave between 2018 and 2022?

A. I had never thought to tallying them in total, no.
Q. But do you recall it would have been seven months, five months, and seven months approximately?
A. Approximately. Yes, ma'am.
Q. Okay. Thank you very much.
A. That's it. I'm free to go.

EXAMINATION OF MR. CHRIS HENRY

BY MS. BUCKLE:
Q. Just a few questions. I apologize.
A. Okay. Yes, ma'am. Okay. Okay.
Q. You're a fire engine, correct?
A. That's correct?
Q. Okay, when you were -- you have had some periods of leave but you returned to full duty as a fire engineer, correct?
A. That's correct.
Q. And in December of 2022, where you working full duty as a fire engineer?
A. December 2022. Yes, ma'am.
Q. And as a fire engineer are you required to drive a tiller fire machine to and from fire as directed and drive other motor driven equipment by special order or permission?

A. That's correct.
Q. Are you required to lay and connect hose lines?
A. That's correct.
Q. Are you required to operate pump at fire?
A. That's correct.
Q. You're required to perform general firefighting, life-saving, and salvage work at scene of fire when not engaged in pumping operations?
A. That's correct.
Q. Are you required to clean and maintain fire apparatus or instant use, dry hose, reload machines with dry hose, refill fire extinguishers and booster tanks, clean station, cut grass, and keep premises neat and tidy?
A. For the most part, all of those. I don't refill fire extinguishers.
Q. Okay.
A. Yes, ma'am.
Q. Are you required to assist departmental mechanic in the repair of fire apparatus as required?
A. Limited, yes. We have maintenance division for that.
Q. Required to stand telephone and station

watch?
A. Yes, ma'am.
Q. And would you agree that regular attendance is necessary in order to perform your duties as a fire engineer?
A. Regular attendance in regards to -- if I'm off I can't perform it. So are you asking me, what, in that question?
Q. In order to -- you're employed as a fire engineer, correct?
A. That's correct.
Q. In order to perform your duty as a fire engineer, you have to show to work, correct? You can't perform those duties at home?
A. You cannot perform those duties at home.
However, if I am off, up under the guise of our sick leave policy, and it meets the criteria for sick leave we have a policy that states we are off for so many days.
If I am up under the parameters of sick leave -- like, when I was off for my biceps tear, I was on a Worker's Comp.
I can't perform my duties. So I was off of work. I can't perform them, but I am still employed as an engineer during that time.

Q. You had a Worker's Comp. injury but after that you were released to full duty, correct?

A. After that, yes, I was released to full duty.

Q. And you returned to full duty and performed your job duties --

A. So your question is -- if I'm not on sick leave, if I'm not injured, am I required to be employed as an engineer to perform those duties. Is that what you're asking? I'm confusing the question.

Q. That's okay.

A. Okay.

Q. No further questions.

VICE-CHAIRMAN COVERT:

Any follow-up?

MR. JONES:

Just a couple.

FURTHER EXAMINATION OF MR. CHRIS HENRY

BY MR. JONES:

Q. Mr. Henry, you were asked questions about the physical duties that a fire engineer performs. I'm going to ask you this: Were there periods of time for seven months, five months, and then seven more months that you were unable to perform those

duties?

A. Were there periods of time for the time that I was off that I was unable to perform those duties?

Q. Yes. Extensive periods of time for sequential months; seven months; five months, for the torn biceps; and stress leave?

A. I think those fall up under two different categories. For the torn bicep, absolutely, unable to performs those duties. For the stress leave, that falls up under a different parameter of sick leave.

And, so was I physically able to perform those physical duties? Yes. Was I mentally able to perform those duties? No.

Q. All right. I'll rephrase my question.

There were extensive periods of time where you were unable to perform those duties, and because of your inability to perform those duties for physical or mental reasons you were able to take extended sick leave, correct?

A. Based on our policy, anything after 30 days becomes extended sick leave. So, yes.

Q. And you were not subjected to an investigation because of your use of sick leave,

correct?

A. I'm not sure as to why I was not. I know I was not.

Q. Thank you questions.

VICE-CHAIRMAN COVERT:

Ms. Buckle.

MS. BUCKLE:

No further questions.

VICE-CHAIRMAN COVERT:

Board members? Any questions? All right. Are we able to release the witness?

MR. JONES:

We are.

VICE-CHAIRMAN COVERT:

Thank you, sir. I appreciate your time.

CHRIS HENRY:

Absolutely.

VICE-CHAIRMAN COVERT:

Hello, sir. Go ahead and have a seat. If you would just state your name and rank for the court reporter?

MR. KENNEDY:

My name is Devon Kennedy, Captain

on the Shreveport Fire Department.

VICE-CHAIRMAN COVERT:

The mic is not working right now, so just speak loud, sir.

MR. KENNEDY:

Oh. I'm Captain Kennedy, Devon Kennedy with the Shreveport Fire Department.

EXAMINATION OF MR. DEVON KENNEDY

BY MS. JONES:

Q. Mr. Kennedy how long have you been employed by the Shreveport Fire Department.

A. That would be 24 years this coming October.

Q. I'm going to take you to the period of time in 2022. During that period of time, were you on leave of absence from the Fire Department for any reason?

A. Yes, ma'am.

Q. Was your leave of absence at the fire department classified as sick leave?

A. Yes, ma'am.

Q. Did you become aware that Chief Reese or someone -- one of his designee -- was conducting an investigation into sick leave usage?

A. That is correct. One of his designees. It says Fire Chief or Designee.

Q. And tell me what you recall about that?

A. Well, I was at home. I got a phone call from Chief Warfields telling me that I needed to be downtown the next morning. He didn't know what it was about.

So I came downtown at the appointed time. I was not the only one there. And they called us in one at a time, letting us know it was a -- I want to say it was Chief Warfields, Chief Greg Ferguson, yeah, those were basically the two conducting the interview.

Q. Okay. But were you given a notice of formal investigation?

A. Yes, ma'am, I was.

Q. Telling you that you were under investigation?

A. Yes, ma'am. That's correct.

Q. Did that advance to a predisciplinary conference for you?

A. It did not.

Q. Do you, either for that purpose or for any other purpose, have you ever just done a rough calculation of the number of -- the total number of

days or the approximate total number of days -- you would have been absent or on sick leave for any reason during the course of your career?
A. I have not. But the paperwork stated it was, I know it was over 300.
Q. Three hundred days?
A. I don't know the exact amount of days, but I do know that.
Q. Three hundred days at one time?
A. No.
Q. Pardon me?
A. No, ma'am.
Q. No. Okay.
A. I don't think so.
Q. Three hundred days total?
A. Yes. That's what was on the paperwork. So I mean, if they added it up, you know, I guess that's what they came up with.
Q. Have there been times in your career when you have taken off for extended periods of months?
A. Yes, ma'am.
Q. -- when you have been placed or -- I won't say taken off --
A. Yes, ma'am.
Q. And what is the longest period of time you

recall?

A. It was bumping up on to a year, yes, ma'am.

Q. And then you have other -- so when you say 300, do you think there would have been -- in other words, the total number of days for your whole career would have exceeded 1000?

A. I don't know. I would not want to speculate on it. But I know it's up there.

Q. It's up there. Okay.

A. Uh-huh.

Q. In other words, it's possible that you would have taken -- I don't want to say taken off.

It's possible that a physician or a medical professional has released you from work duties for a period of time approaching a year?

A. Yes. Absolutely.

Q. And whatever the criteria was for being included on the list of people under investigation, they told you that you met the criteria?

A. Yes.

Q. But you were not subjected to any kind of further investigation or inquiry, no predisciplinary conference, right?

A. No, ma'am.

Q. When you are given the notice of formal investigation you were actually off work for a medical recovery, you were not working light duty or anything like that?

A. No, ma'am.

Q. Okay. Thank you, Mr. Kennedy. I don't have any other questions. There are two people that might, Ms. Buckle might and the Board might?

VICE-CHAIRMAN COVERT:

Ms. Buckle.

EXAMINATION OF MR. DEVON KENNEDY

BY MS. BUCKLE:

Q. Do you recall if you are given the notice of investigation when you returned to work?

A. No, ma'am. I don't know. It wasn't too long after that.

Q. And you returned to full duty?

A. Yes, ma'am.

Q. That's all the questions I have.

VICE-CHAIRMAN COVERT:

Board members or any follow-up questions Ms. Jones?

FURTHER EXAMINATION OF MR. DEVON KENNEDY

BY MS. JONES:

Q. Mr. Kennedy when did you return to work?

A. I don't know the exact date. It wasn't long after that, maybe a month later.

Q. All right. Was that a full release from your doctor?

A. Yes, ma'am.

Q. Okay. Thank you. That's all I have.

VICE-CHAIRMAN COVERT:

Any board members have any questions for this witness?

MR. THOMPSON:

Why we're you out?

MR. KENNEDY:

I was out with similar issues as Felicia was. And I -- basically, in the interview I just told them -- I said, Chief, I don't know if your aware. But I was -- all these days that you have mentioned, you know, they were tied to settled litigation.

So I don't know what you guys are going to do with that, but I wanted to make him aware of that. And after that I didn't hear anything else about it.

So that's basically what happened with me. As far as what happened with

Felicia, I don't know. I just know that after I came down there for my PDC I did not get another phone call. I notified Chief Greg that as soon as I'm released I'll be back.

As soon as I am released I'll be back, but as of right now, when I was talking to him my hands were tied. I couldn't just say I'm coming back to work, because had to be released first, right, and cleared. And then I have to go and see the city's physician and go through the necessary process. That's basically what happened.

SGT HICKS:

I have one question, were you on Workmen's Comp.?

MR. KENNEDY:

No, ma'am. I was not on Worker's Comp.

SGT. HICKS:

So it wasn't a work injury?

MR. KENNEDY:

No, ma'am. Well, it wasn't a work injury. No. I did not fall off of a

truck or anything like that and hurt myself. No, ma'am.

SGT HICKS:

Okay.

VICE-CHAIRMAN COVERT:

Any other questions?

FTO WATSON:

Was it work-related?

MR. KENNEDY:

Absolutely.

FTO WATSON:

Okay.

VICE-CHAIRMAN COVERT:

Anything else?

Anything from the attorneys? Can we release the witness? It sounds like we may have one more.

FURTHER EXAMINATION OF MR. DEVON KENNEDY

BY MS. JONES:

Q. I just have one other question. My question is have you ever been on stress leave? But I believe I understood your testimony that you had been.

A. Absolutely.

Q. On more than one --

A. Absolutely.

Q. -- for more than one period of time?

A. For more than one period of time, maybe two. It could be three.

Q. Okay. Thank you.

VICE-CHAIRMAN COVERT:

Ms. Buckle? No. Board members? Can we release the witness?

MS. JONES:

Yes.

VICE-CHAIRMAN COVERT:

Thank you, sir. I appreciate your time.

MS. JONES:

We have no other witnesses and we would rest.

VICE-CHAIRMAN COVERT:

Okay. Ms. Buckle. Any closing statements?

MS. BUCKLE:

If the Board request --

VICE-CHAIRMAN COVERT: This is your opportunity if you have any closing statements.

///

CLOSING STATEMENTS

MS. BUCKLE:

I think the evidence in this case is pretty clear Chief Reese testified that he wanted to address the issue of excessive use of sick leave in this case and make sure that the employees were satisfying their bona fide occupational qualifications as set forth by this Board.

In December of 2022, he identified criteria in order to initiate an investigation into seven people.

Ms. Scroggins, as he testified, was well above everyone else. And while certainly, we understand that there were some issues, the point is she missed 64.6 percent of work in a four and a half year period.

The evidence shows, and even her counselor testified she was gone twice for nearly one year and came back only for a four-month period. And then went off of work again for sick leave, for either for the same or a different

issue.

At the end of 2022, when this investigation was going on was the first time she had been placed on any type of limited duty. And that was only after she had been notified of the pending investigation and obtained those records from her counselor.

I think Chief Reese was absolutely correct in recognizing that there was no -- not only was he unable to determine that Ms. Scroggins would return to full duty for any period. But that it was most likely that she would not return to duty for a significant period of time, and would continue her pattern of going off on leave.

As he testified he has a duty to the other members of the Shreveport Fire Department and certainly to the taxpayers of the City of Shreveport in order to ensure that the tax money is being spent; and to the other members of the department to make sure that

they can rely on the other members of their department.

Not only to make sure that they are present, but as Chief Reese testified to make sure that they are present in order to maintain their training, and maintain their skills to be effective, and to ensure the safety of all the firemen that are on the department.

A 64.6 percent absence in any line of work is simply unacceptable. And so we would ask that the Board uphold the termination of Ms. Scroggins and find that the decision of the Chief was in good faith and for cause.

VICE-CHAIRMAN COVERT:

Ms. Jones.

MR. JONES:

Well, first I would like to say that the number 64.6 percent is inaccurate, as the Chief testified and as the evidence shows Ms. Scroggins was, in fact, at work much of this period of time, July 13th 2022 to

November 14, 2022, and afterwards up until the date of her termination.

She was simply at work in a different capacity, meaning, that she was using accrued leave, non-medical leave, vacation leave, or she was in refresher, or she was performing light duty.

So I want to go back to this, and I would ask the Board to give some consideration to these specific documents. First of all, if you look at, this is Defendants Exhibit 1, page 29. It list all of the absences and as I have said, the absence totaled is an accurate. Particularly, as to that last sequence of days 124 days.

But also to consider that Ms. Scroggins was off for physical injuries and for reasons that her healthcare provider supported. So she fits squarely within the departments sick leave usage policy.

This is not a situation where she has been accused of malingering. She

has not. She has not been accused of fraudulent sick leave. She has not been accused of abuse of use of sick leave. She had a legitimate need for sick leave. And when her -- even when her healthcare provider said, I think you should be absent and take sick leave in 2020, Ms. Scoggins suggested, no. I do think I need to work. I need to be able to work. And she worked out a plan with her healthcare provide to return to full duty as a fire engineer.

I would like to point out that Nakia Thomas' testimony was that this transition plan was in place before Ms. -- it was in place from the start when Ms. Scoggins went to her about the grief reaction. And it was put in place before Dr. Clanton said, talk to your doctor about a return to work plan.

So if you will look at -- this is Scroggins exhibit 1, is Dr. Clanton's letter, and it's dated in October. I don't have it in front of me, but it's

an October date. And Ms. Thomas testified that they had been working -- she had been working with -- it's October 17, 2022 -- Ms. Scroggins Exhibit 1.

He suggested on October 17th, that she work with Ms. Thomas to get a transition plan. Ms. Thomas testified that they'd already been working on that transition plan even before this.

And so the transition plan was for her to go from four days a week to five days a week and eventually all the way back to full duty.

And so the important things to look at, I think, would be the City's Exhibit No. 7, where it lists Ms. Thomas' use of sick leave forms and plaintiff's exhibit -- I'm sorry, Scroggins Exhibit 2, which would be the fourth.

So there are four sick leave forms. And you can see that Ms. Scroggins was off for post traumatic stress. Then the next two

are for the grief reaction, the extreme grief reaction.

And when you look at those you will see that the transition plan is in place. Now, even though the first transition plan is dated 15 December 2022, Ms. Thomas' testimony was that, that had been in place before.

So she had begun -- she had seen the doctor for this August 29th of 2022. And that transition plan had been put in place at that time, with the expectation that Ms. Scroggins would be released to return to work February the 8th of 2023.

Ms. Scroggins informed the fire chief that she expected to be returned to work, that she was working light duty and transitioning back to full time. And you yet her employment was terminated anyway.

The other fact that I ask the Board to consider is that Chief Reese testified that this was based upon his belief that she was unfit for duty.

He did not assemble any of this information about any of her sick leave usage forms, any of the information from her doctor, any of the information from Dr. Clanton. He did not assemble any of that and take it to a professional and say: Is this person going to be fit for work?

He based it strictly upon some mathematical calculations of the number of days that she had been absent over this particular snapshot in time.

He did not -- he did not do the same thing to at least two male members of the force, who had also had a significant sick leave usage. And who should have or did make his list. And we ask the Board to rule that Ms. Scroggins should be reinstated.

Her medical professional has stated that she is able to return to work. She has testified that she is able to return to work. She can go back and take the necessary refreshers and be put back to her job. And we ask

that, that is what the Board rule.

MS. BUCKLE:

Brief rebuttal. As Chief Reese testified earlier, there were certain criteria that he set and Ms. Scroggins was well above the others. So regardless of what happened with any other employees that is simply not relevant here.

This is not a case where -- certainly, she has not been accused of fraudulent use of leave, malingering, anything of that nature. With respect to gathering the documents and sending them to a -- for someone to say whether Ms. Scroggins was fit for duty, that's not the issue.

Certainly, someone can be declared fit for duty, but still fail to perform the required qualifications of their job. And that's what happened here, we have provided the records, Ms. Scroggins had been declared fit for duty several times before.

But she still failed to perform

the requirements of her job classification. And so that is the issue before the Board. It is not whether -- this isn't a medical issue. It is simply whether she was showing up to perform her job. And 64 -- and to clarify, I did some quick math earlier removing the last line of dates brings it down to a 62 percent absent rate.

So 62 percent over a four and a half year period is simply someone that, regardless of any determination by Dr. Clanton or anyone else, is simply unwilling or unable to perform their job duties. And so, again, we would ask that her termination be upheld and that the Board find that Chief Reese acted in good faith and for cause.

MS. JONES:

One thing I would ask the Board to consider -- and this will be the last thing I say -- is that I would ask the Board to consider what the City did not produce.

The City did not produce its criteria. The City did not produce a list of the other people to whom they compared Ms. Scroggins. I would suggest that, that is a part of their burden of proof. If they're going to say she is way up at the top, then they need to demonstrate that she was way up at the top. And they need to tell you that this is the criteria I used and this is why I used it -- and they did not do that.

And because they didn't do that I think that's one of the reasons the Board should rule that in this case they have not met their burden to show that they acted in good faith and for cause.

VICE-CHAIRMAN COVERT:

Ms. Buckle.

MS. BUCKLE:

There were no documents provided to that effect, but certainly Chief Reese testified in his testimony very clearly what those criteria were. And

we didn't think it was appropriate to provide evidence related to other members sick leave.

VICE-CHAIRMAN COVERT:

Okay. We're going to enter in to Board discussion now. Any other comments from the Board members?

MR. THOMPSON:

(Inaudible).

VICE-CHAIRMAN COVERT:

No. It needs to be public and on the record anything that we discuss.

MR. THOMPSON:

According to the information that I have been given, looking at the documents that we have, as I understand it the Board must determine that the appointing authority acted in good faith, for cause in taking disciplinary action.

The Board must determine the employee's conduct impaired the efficient operation of his or her respective department. I have not heard any evidence to show that the

department did not act in good faith in this situation.

And it appears to me that the operation of the department has been impaired -- I can't talk any loader.

So I would like to hear any comments from the Board members as to any evidence that the department head did not act in good faith or that the operation of the department have not been impaired. I think that there is evidence of all of that.

VICE-CHAIRMAN COVERT:

I know when it comes to -- we get a report every year on sick leave for both departments. And the one thing I don't like about it just the raw numbers.

Because often times you're comparing apples to oranges. If an employee -- if two employees show up on the same line that they've both been off 35 days consecutively.

If one employee, let's say they had a broken ankle and they were off

for 35 consecutive days. Other employee off 35 days through the course of the year and it always happens to be on a weekend or holiday, those are not the same issues.

So although they line up as the same number of days, you have two different issues and those have to be looked at individually. And so, in addition to that, it has been suggested that the Chief is just using his judgment as to whether or not, in the future, Ms. Scroggins may show up to work and being a -- a -- showing up regularly and predicting. But the prediction is just that, it's based on past history.

The same reason why the weather man gives you a prediction -- based on history this is what I think is going to happen. He can be wrong sometimes. But based on all of the evidence that I've heard today, I would concur with that, the Fire Chief did act in good faith and for cause. And I have not

heard any evidence that would suggest that he did not.

Has any other board member heard anything contradictory to my statement?

FTO WATSON:

I think there's been a sequence of -- just to piggyback on what you said about the number of days being equal.

But if something is excessive, I think, I should be pointed toward what that excessive reasoning is. And I think over the years since 2018, up until 2022, the illness, thyroid surgery, abdominal pain, shoulder, hip, stress. Those are a sequence of opportunities for days off.

Like you stated, a broken ankle is not as equal to being off every weekend. They don't gel together, but the numbers state that they were off.

So if we look at the numbers and look at the percentages it looks bad. It does not look good.

But if you've got documentation

that states, I was out this time, here, here, here, and here for a sequence of time. And you have the parameters set to justify the documentation, then is that box checked for them to be off for that illness or injury? Is it checked with them to be off on those weekends?

I think the percentage states over time that this is not a good thing. I believe the Chief acted in good faith because of those percentages. He needed a parameter to be set for the morale of the department, for those members, to set a precedence. So that we don't go over that. His responsibilities for his BFOQ's trickle down for all of us.

VICE-CHAIRMAN COVERT:

Keep in mind also, you're right, the civil service does not recognize light duty or things of that nature.

So there is a big difference between -- as you promote him up, that promotion comes with a pay increase, and while she is on or anybody is on

light duty or whatever else, they are getting full pay, full benefits, accruing vacation time, and all of that other stuff.

And yet there's a big difference between operating a 750 or a 1 million-dollar fire truck versus sitting at the shop handling supplies. There's a big difference and the City is paying for an employee to be at work and performing the duties that they are being paid to do.

It's almost kind of like a quid pro quo, if you do light duty you can do personal stuff on the side. Whereas if you are at home on sick leave, you're on sick leave. You can't -- the only thing you can do is go to church, go to the doctor, pick up your medicine, and get something to eat pretty much. You can vote.

So just because the employee may have been at work on light duty is still not performing the duties of a fire engineer, which is the bona fide

occupational qualifications.

So if there's any other discussion or comments then I either need a motion that the Fire Chief acted in good faith and for cause or that he did not. Any comments?

SGT. HICKS:

I believe that the Fire Chief did act in good cause, however, through the document it was explained one way and through the testimony there was a little bit of discrepancy in there stating why some of these absentees occurred.

Because at the beginning it was under the understanding that most of it was just PTSD and anxiety. And then, of course, during the testimony it was found out that there were some surgeries and some injuries involved that may have very well been work-related.

So that is where I have an issue with -- not the just cause, but for the termination itself.

Because of the reasons why she was off. And we all know that PTSD and mental illness is increasing among first responders and that's something that needs to be addressed, which it appears that that's what she had at the end. And I don't know if the department or the city addressed it, as they could, being that we do have some programs for PTSD and first responders when they are going through those issues.

I know she was already seeing someone personally, but we still have some programs as well, and I don't know if she was offered those.

MR. WALKER:

Was she offered those?

SGT HICKS:

I don't know. So that's where I have an issue with the termination. Not that he did not in good faith to do the investigation.

VICE-CHAIRMAN COVERT:

Well, with regard to the other

employees, he said there were seven that were investigated. Three of them went to his office and resigned, am I correct?

ASST. CHIEF FTO WATSON:

Correct.

VICE-CHAIRMAN COVERT:

And it was my understanding that the three that resigned may very well have been terminated as well. But they resigned prior to the termination. The three others, the only thing I can suggest is after the investigation, I guess, it was considered an acceptable reason.

SGT HICKS:

But the three others that resigned were they offered to resign or was it suggested that, that was an option for them?

CHIEF REESE:

No. They were not offered to resign. They resigned on their own. They all came in to the office themselves or they came in along with a

lengthy conversation about why things needed to change.

I think they testified that one individual was allowed to resign after their PDC. I had a letter in my hand that said was their effective date of retirement. So instead of going through the entire PDC process I had a letter of resignation is why I determined not to go forward with the PDC. They already resigned.

And every last one of my PDCs, HR is in the room and they offer the EPA program for mental health. In every last one of them, it doesn't matter if it's dealing with mental health. They offer the EPA program. Excuse me.

SGT HICKS:

Was that something that was offered to Ms. Scroggins?

CHIEF REESE:

That was, by Canisha Tisby and also at the end of the termination I did allow her -- I did ask about -- and the reason I didn't look at her in her

eye, she's a friend of mine. I was crying at the same time she was.

But she was -- I did explain to her medical retirement is an option. If you do medical retirement I need to know ASAP, and in lieu of this termination I will take the medical resignation.

SGT HICKS:

And that was voiced in the meeting?

CHIEF REESE:

That was, yes.

MR. JONES:

Just to address the EAP issue, question -- to address the EAP question, because that did not come up in his testimony until just now.

I don't think Scroggins was offered EAP. She can testify to that.

MS. SCROGGINS:

At no time did I ever get off on stress leave, nobody has ever called me to help me. I've never been offered help, that's -- and I asked. I asked,

what can y'all do? I'm actually asked to meet to see if there was anything that I could do to keep me here and to come to work.

And I have never been offered that help. I begged for help. Nobody has reached out, they are supposed to follow up with you monthly to check on you when you are on extended sick leave. I got a call once, and he -- that was from Skip Pinkston saying that he's supposed to be calling, but he be tied up. And I never received a call after that. And then I was not offered until after I was terminated to retire.

VICE-CHAIRMAN COVERT:

At this point we're not going to take anymore evidence.

Is there anymore discussion? Do I have a motion that the Fire Chief acted faith in good faith and for cause or do I not have a motion?

SGT. HICKS:

Are we going to separate those.

///

VICE-CHAIRMAN COVERT:
Yes. As far as the discipline, yes. But, did the Fire Chief act in good faith?
MR. THOMPSON:
I'll make a motion that the appointing authority acted in good faith, for cause, and the termination must be upheld.
MR. CASEY:
Mr. Chairman, point of order.
VICE-CHAIRMAN COVERT:
Yes, sir.
MR. CASEY:
You can't do both of them together. You have to do them separate.
VICE-CHAIRMAN COVERT:
So it's in good faith and for cause. We will vote on it and then we will move on to the next part.
MR. THOMPSON:
I move that the appointing authority acted in good faith and for cause.

VICE-CHAIRMAN COVERT:
We have a motion that the appointing authority acted in good faith and for cause by Mr. Thompson. Do I have a second?
FTO WATSON:
Second.
VICE-CHAIRMAN COVERT:
We have a second from Chief Brian Watson. I will take a roll call vote.
Sergeant Hicks?
SGT. HICKS:
Yes.
VICE-CHAIRMAN COVERT:
Mr. Walker?
MR. WALKER:
Yes.
VICE-CHAIRMAN COVERT:
Mr. Thompson.
MR. THOMPSON:
Yes.
VICE-CHAIRMAN COVERT:
Chief Watson.
ASST. CHIEF FTO WATSON:
Yes.

VICE-CHAIRMAN COVERT:
And the Vice Chairman votes yes. It passes unanimously that the Fire Chief acted in good faith and for cause.
Second motion?
MR. THOMPSON:
I move that the termination be upheld.
VICE-CHAIRMAN COVERT:
We have a motion that the termination be upheld by Mr. Thompson. Do I have a second? Do I have a second?
Hearing none, that motion will fail.
Any discussion?
SGT HICKS:
I think I kind of the voiced my reason why I don't agree with the termination.
I think that there may be some more avenues that could be explored due to the nature of it. That's just my opinion.

FTO WATSON:

My opinion is, prior to the termination, she was deemed by the clinician to return back to work full duty.

VICE-CHAIRMAN COVERT:

That determination was made several times.

ASST. CHIEF FTO WATSON:

Yes.

MR. WALKER:

I'm sorry, what was?

VICE-CHAIRMAN COVERT:

The determination was made several times that she was fit for duty to come back. And yet we still fail to have regular and predictable attendance. That was the issue.

It's not the issue of whether or not she was ready to come back to work. It's when she gets here, is she going to be here regularly and predictably.

SGT HICKS: And that's something that I think the Board members already discussed that you can go by the

numbers, but there's no real way of predicting what may or may not happen.

VICE-CHAIRMAN COVERT:

Right. But the law still says that the appointing authority has the right to expect regular and predictable. The only way you can predict is by her own past history. That's how you predict anything. You can only make a prediction based on the history. And the history is there, that there's not regular attendance and predictable.

When I first promoted to Captain I had to -- the assistant chief at the time asked me to move into a position of what is called the chief's aid to help set up shift rosters. Who is going where, who's going on vacation.

And the Chief's aid at the time -- the Cowboys are playing next week, he expected about four people to call in sick. That was predictable. And guess what, he was right. Three called in. He missed it by one, but three people

called in sick. That was predictable.

MR. WALKER:

(Inaudible).

VICE-CHAIRMAN COVERT:

But he predicted it because that's the history. That's not -- that's -- I'm not the only one up here, there's five members sitting here. So I need a motion.

FTO WATSON:

It's just a statement that the prediction of her return back to full duty was made.

VICE-CHAIRMAN COVERT:

By who?

FTO WATSON:

The clinician.

VICE-CHAIRMAN COVERT:

The clinician. The clinician does not run the fire department.

ASST. CHIEF FTO WATSON:

True.

VICE-CHAIRMAN COVERT:

The Fire Chief does.

///

ASST. CHIEF FTO WATSON:
Correct. But there was a box that was checked.
VICE-CHAIRMAN COVERT:
It's my opinion the Fire Chief acted in good faith and for cause. And it's my opinion that the termination should be upheld.
But sitting as the Chair I'm not in a position to make a motion or a second. I'm simply the facilitator of this hearing.
MR. THOMPSON:
The Chair cannot make a motion or a second.
MR. CASEY:
No.
SGT HICKS:
I just think they should have been an alternate plan prior to termination. If she was willing to come back to full duty.
VICE-CHAIRMAN COVERT:
I'm sorry.
SGT. HICKS:

There should have been a plan prior to termination if she was willing to come back to full duty.

MR. WALKER:

And that wasn't done?

SGT. HICKS:

That's my opinion.

-- TALKOVERS --

VICE-CHAIRMAN COVERT:

Okay. So let's make a motion. I need a motion? The Fire Chief acted in good faith and for cause. So we know that there is discipline that is warranted in this matter. So this Board needs to determine what it's going to be.

SGT HICKS:

I believe that she -- well, it's my opinion that she needs to be -- maybe be brought back and put on the program first before making a decision for termination as far as her employment. And what was going on --

VICE-CHAIRMAN COVERT:

This issue before this Board now

is to uphold the termination or reduce it.

SGT. HICKS:

I say reduce it --

VICE-CHAIRMAN COVERT:

We can overturn it completely, which, if the Chief acted in good faith and for cause and it was just passed unanimously that he acted in good faith and for cause then punishment would be warranted.

SGT HICKS:

Absolutely.

MR. THOMPSON:

I make a motion.

VICE-CHAIRMAN COVERT:

Yes, you did. And I'm in favor of your motion, but we have to have a second.

MR. WALKER:

What's the motion?

VICE-CHAIRMAN COVERT:

The motion failed, because he didn't have a second.

///

MR. WALKER:
But still what was the motion?
SGT HICKS:
He made a motion to uphold the termination.
MR. THOMPSON:
I made a motion that because the chief acted in good faith and for cause that the termination should be upheld.
MR. CASEY:
That was two separate motions, Mr. Chairman.
VICE-CHAIRMAN COVERT:
Sir?
MR. CASEY:
That was two separate motions.
MR. THOMPSON:
We already adopted the first motion. I was just telling him why I made the second motion.
MR. CASEY:
Okay.
VICE-CHAIRMAN COVERT:
So are we allowed to make the same motion again, if it failed?

MR. CASEY:
The motion died.
VICE-CHAIRMAN COVERT:
The motion died so --
MS. BUCKLE:
He can make it again.
VICE-CHAIRMAN COVERT:
So we're --
MR. CASEY:
It's up to the Board what you want to do. The motion died.
VICE-CHAIRMAN COVERT:
So after discussion, do you want to make a motion?
MR. THOMPSON:
I move that the termination be upheld.
VICE-CHAIRMAN COVERT:
Again, we have a motion on the floor from Mr. Thompson that the termination be upheld.
MR. WALKER:
I second.
VICE-CHAIRMAN COVERT:
Okay. We have a second from

Mr. Walker. The motion is that the termination be upheld.

Second by Mr. Walker. Roll call vote. Sergeant Hicks?

SGT. HICKS:

No.

VICE-CHAIRMAN COVERT:

Chief Watson.

ASST. CHIEF FTO WATSON:

No.

VICE-CHAIRMAN COVERT:

Mr. Walker.

MR. WALKER:

No.

VICE-CHAIRMAN COVERT:

You seconded the motion.

MR. WALKER:

I know.

VICE-CHAIRMAN COVERT:

No.

Mr. Thompson?

MR. THOMPSON:

Yes.

VICE-CHAIRMAN COVERT:

And the chair votes, yes.

Motion fails.

SGT. HICKS:

I make a motion to reduce the termination to something less egregious.

MR. WALKER:

What is right before termination?

SGT. HICKS:

That she be put on the program. That we'll monitor her absence, monitor her attendance, her progression at work.

MR. WALKER:

Is there a motion?

VICE-CHAIRMAN COVERT:

What is your motion?

SGT HICKS:

Let me word it.

I make a motion that the chief did act for good cause and good faith for disciplinary action, but not for termination. And that the termination should be reversed in to a progressive program where she is able to enroll in EAP.

Also monthly checks and be placed under the supervision of a superior to make sure this is happening and taking place.

VICE-CHAIRMAN COVERT:

Now, that is not here. Am I correct?

MR. CASEY:

So what I'm hearing and also the motion has already passed on the first part. The second part, you didn't uphold the termination, so you need to come back with something else.

VICE-CHAIRMAN COVERT:

Right. And there's got to be some discipline.

MR. CASEY:

Since you did vote on --

VICE-CHAIRMAN COVERT:

Right.

MR. CASEY:

-- good faith and for cause.

VICE-CHAIRMAN COVERT:

So we have to have -- what you're suggesting, although it's good and I

agree with that, that is not punitive.

MR. CASEY:

It can be part of it.

VICE-CHAIRMAN COVERT:

It can be part of it, sure. So the next thing would be a 90 day.

SGT HICKS:

Is that the next thing 90 days.

ASST. CHIEF FTO WATSON:

-- Ninety days.

VICE-CHAIRMAN COVERT:

-- 90 days or it can be several things.

MR. WALKER:

-- 45 days.

VICE-CHAIRMAN COVERT:

Does anybody have a motion?

SGT. HICKS:

I make a motion that the termination be reversed to a 45 day suspension with progressive program implemented with monitoring and supervision.

VICE-CHAIRMAN COVERT:

Madam reporter, you got that?

MADAM COURT REPORTER:
Yes.
VICE-CHAIRMAN COVERT:
Forty-five-day suspension, so the termination is going to overturned. So there will be a 45 day suspension with a program --
SGT. HICKS:
-- a progressive program to monitor attendance and also enrollment in EAP and supervised by an immediate supervisor monthly for a period of one year.
MS. BUCKLE:
If that's the motion can the Board please clarify what a progressive plan would be, because there's no such thing in place.
FTO WATSON:
Under the provision of the EAP provider, whatever their parameters are.
MR. CASEY:
Mr. Chairman, is that retroactive back to the date she was terminated?

The 45 days, is that retroactive back to the date that they initially terminated her.

VICE-CHAIRMAN COVERT:

I believe it's going back to the date of termination.

MR. CASEY:

Okay.

SGT. HICKS:

Yeah.

MR. THOMPSON:

So she gets retroactive pay if this is adopted?

SGT. HICKS:

Yes, she does.

MR. THOMPSON:

We'll all accept 45 days; is that right?

SGT. HICKS:

That's my recommendation.

MR. WALKER:

So moved.

VICE-CHAIRMAN COVERT:

Are we clear on the motion? The termination will be reduced to a 45-day

suspension.

SGT. HICKS:

Yes.

VICE-CHAIRMAN COVERT:

45-day fine?

SGT. HICKS:

45-day suspension.

VICE-CHAIRMAN COVERT:

45 day suspension. Mr. Attorney.

MR. CASEY:

I don't see a problem with that 45-day suspension.

VICE-CHAIRMAN COVERT:

Do we have a second.

MR. WALKER:

Second.

VICE-CHAIRMAN COVERT:

Second by Mr. Walker. Roll call vote.

Chief Watson.

ASST. CHIEF FTO WATSON:

Yes.

VICE-CHAIRMAN COVERT:

Mr. Walker.

MR. WALKER:

Yes.

VICE-CHAIRMAN COVERT:

Mr. Thompson.

MR. THOMPSON:

No.

VICE-CHAIRMAN COVERT:

Ms. Hicks.

SGT. HICKS:

Yes.

VICE-CHAIRMAN COVERT:

And the chair votes, no. Motion passes. Termination is overturned, in lieu of a 45-day suspension.

That concludes this case. Thank you.

(HEARING CONCLUDED AT 12:40 P.M.)

REPORTER'S PAGE



I, Jill Cox, Certified Court Reporter in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434 (B) of the Louisiana Code of Civil Procedure, before whom this proceeding was taken, do hereby state on the Record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talkovers; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript;

That any words and/or names which could not be verified through reference material have been denoted with the phrase "(spelled phonetically)."

Jill Cox, CVR, CCR
NVRA CVR #7553
LA CCR #2019002

REPORTER'S CERTIFICATE

This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

I, Jill Cox, Certified Court Reporter in and for the State of Louisiana, as the officer before whom this testimony was administered, do hereby certify that the parties were sworn in by Attorney Billy Casey and did testify as hereinbefore set forth in the foregoing 172 pages;

That this testimony was reported by me in the stenomask verbatim reporting method; was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

That the foregoing transcript has been prepared in compliance with transcript format guidelines required by statute or by the Rules of the Louisiana Certified Shorthand Reporter Board; and that I am informed about the complete arrangement, financial or otherwise, with the person or entity making arrangement for hearing services; that I have acted in compliance with the prohibition on contractual relationships, as defined by the

Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board;

That I have no actual knowledge of any prohibited employment or contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter, nor is there any such relationship between myself and a party litigant in this matter;

That I am not of counsel, not related to counsel or the parties herein, nor am I otherwise interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto affixed my signature at Natchitoches, Louisiana, this the 10th day of May, 2024.

Jill Cox, CVR, CCR
NVRA CVR #7553
LA CCR #2019002

**Exhibits**

**City Exhibit 1 - Docket 10107** 20:2,5,6 151:13 152:23 153:5

**P1 - Docket 10107** 20:14,17 49:1 67:2 153:20

**City Exhibit 3 - Docket 10107** 21:14,16 44:16 49:3

**City Exhibit 4 - Docket 10107** 24:21,25 45:14,23

**City Exhibit 5 - Docket 10107** 31:16

**City Exhibit 6 - Docket 10107** 31:18 62:16,21 65:6,24

**City Exhibit 7 - Docket 10107** 19:19 33:21,25 42:11 80:14 153:17

**City Exhibit 8 - Docket 10107** 61:15,19,20

**City Exhibit 9 - Docket 10107** 64:13 65:6,10 66:10

**City Exhibit 2 - Docket 10107**

**P2 - Docket 10107**

**$**

**$100** 18:17

**$18.91** 28:8

**$19.29** 28:8

**$20.16** 28:9

**$40,000** 28:22

**$59,000** 28:3

**$59,904.24** 28:11

**$60,000** 28:21,25

**0**

**0955** 53:23

**1**

**1** 19:9 20:2,6 46:2 49:16,17,25 50:8 86:4 87:2 93:19 104:15 151:13 152:23 153:5 164:7

**1-6** 19:12

**1/11/23** 98:3,17

**10** 46:2,7 63:14

**100** 30:14

**1000** 142:7

**1008** 55:11

**10107** 54:1

**1020** 111:8

**1053** 25:17

**108** 56:14,15

**10th** 106:18

**11** 52:19 67:4 87:4,11

**11/14** 109:7 111:6

**11/15** 108:7

**1153** 111:8

**11:29** 127:23

**11:35** 127:24

**11th** 34:18 41:16,18 42:5,8 52:5 87:3,13,16,25 88:18 89:2,12 94:23 96:6 113:23 114:12

**12** 35:4 63:4 80:17

**124** 55:11 111:8 151:17

**12th** 105:13

**13** 55:9 63:23 82:9 108:20

**13th** 64:5 96:17 111:12 150:25

**14** 22:13,24 23:2 55:10 81:23 90:15 93:4 120:1 151:1

**14th** 25:12,15 35:14,17 64:6

**15** 63:11,20,23 66:13,22 82:7,9 154:6

**1582** 22:14

**15th** 34:14 52:3 77:6 90:19 96:7,12,17,22 105:21 108:15,20 111:18 121:6,10,13

**16** 51:14 63:14 129:24 130:11

**16th** 106:17

**17** 24:15 40:5 44:14 63:7,8 153:4

**1779** 25:19

**17th** 39:25 105:18 153:6

**18.54** 28:7

**19** 8:17 63:8 97:19

**19th** 31:11 105:18

**2**

**2** 20:14,17 49:1,16,17 50:1,7,10 51:11 62:16 67:2 87:7 88:2 94:4 95:13 96:5 153:20

**2.1** 21:22

**2/8/2023** 98:20

**20** 13:11,17 16:10 18:5,7 24:21 45:21,23 81:2,13,19 97:19

**2001** 103:25

**2011** 106:5 122:16

**2014** 106:9

**2018** 25:12,15 28:6 62:8,23,24 63:4,5,7,8 75:18,20 105:10,13 132:25 162:13

**2019** 26:1 28:8 35:8,9 63:11,12,14,17 81:2,10,13 90:11 105:21 106:14,18,20 120:7,15,16,18

**2020** 26:1,2 28:8 35:5,9 63:17 64:16,18 65:12,21 66:5 80:17 81:2,10,14,19,23 90:12,15 91:18 93:4 106:21 120:21,22 121:2 152:8

**2021** 12:6 26:3 35:14,17 63:20,23 64:16 66:13,22 81:23 82:7,9 90:16 91:18 93:4 108:15,20 121:5,6,10,13,14,15,16 122:1

**2022** 9:18 25:12,16 34:14,18 35:17 39:25 40:5 42:12 52:4 55:10 61:25 63:20,23 64:6 71:13 76:19 77:6 78:13 80:6 82:9 86:4 90:19 93:19 94:5 96:7,17,22 108:21 111:12 120:1 121:20 130:16 131:10,13 132:25 133:19,21 139:16 148:11 149:2 150:25 151:1 153:4 154:7,11 162:14

**2023** 8:18 12:7,14 31:11 34:18 36:16 41:16,18 42:5,8 45:16 51:14 52:5 67:4 68:5,25 75:15,20 76:19 77:7 78:13 80:7 86:5 87:2,4,11 88:1,4,15,18,19 89:4,12,16,24 93:19 94:6,23 95:14 96:6 104:2 113:23 123:18,21 127:9 154:15

**20th** 35:9 90:12

**21** 28:9 63:11 105:21

**22** 12:10 28:2

**23** 63:4,17 65:12,21 105:13 106:20

**23rd** 120:22

**24** 102:10 116:16 139:13

**24-hour** 36:4 43:13 79:1,6 87:23 89:5

**24-hour-period** 116:19

**24-shift** 89:19

**240** 116:17

**25** 31:14 63:20 66:5 81:23 93:4

**25th** 35:17 90:15 120:22

**28** 63:17 81:2

**28th** 35:8 90:11 106:20 120:15

**29** 34:18 36:16 54:21 62:5,12,14 65:5 86:4 93:19 104:15,23 119:23 151:14

**29th** 94:5 154:10

**2nd** 56:24 57:1,16 90:25

3

**3** 21:14,16 44:16 49:1,3,16,17 50:9 93:16 94:22 97:19

**3/20/20** 92:22

**3/23/20** 107:8

**3/28/19** 92:22 107:8

**30** 18:5 115:10 137:22

**30-day** 116:3,14,20

**300** 141:5 142:5

**33** 17:12

**35** 17:12 160:23 161:1,2

**355** 66:7

**364** 26:13

**365** 25:25 35:11,19

4

**4** 20:13 24:21,25 45:14,23 62:8,23

**4.1** 22:12

**4/26/19** 100:23

**40** 41:17 44:2 49:5 58:20 114:3,11 115:4 116:22 117:4

**40-hour** 117:1

**41.1** 33:11

**42** 55:10,11

**45** 185:15,20 186:6

**48** 60:17

**4th** 25:12,15 105:10

5

**5** 31:14,16 42:20 45:16

**500** 30:18

**56** 43:12,16,23 102:13 116:4,9

6

**6** 19:9 21:13 31:14,18 62:8,16,21, 24 65:6,24 105:10

**60-day** 16:25

**62** 157:9,10

**64** 157:6

**64.6** 9:25 25:21 26:4,21 29:20 31:4 72:24 83:17,22 84:3,16 148:18 150:11,21

7

**7** 19:19 33:21,25 42:11 52:1 80:14,20 85:25 92:17,21 93:15 94:22 153:17

**7/13** 108:8 109:6,8,12 111:6

**7/13/2022** 120:1

**7/13/21** 109:7

**7/14/21** 97:24

**7/15/2021** 107:22

**7/25/20** 97:24

**7/25/2020** 107:21

**72** 60:17

**750** 164:6

8

**8** 19:19 61:15,20 88:18 89:4

**8/15** 109:13

**8/29/22** 51:20 98:3,17,20

**8th** 88:3,15 89:3,15,16 94:5 95:14 114:17 127:9 154:15

9

**9** 64:13 65:6,10 66:10

**9-2-2022** 61:19

**90** 22:7 24:5,7,9,10 130:24 185:6, 8,12

**90-day** 24:16 44:10

**9th** 57:1

A

**a.m.** 127:24

**abbreviated** 60:16

**abdominal** 105:20 162:15

**ability** 22:23 86:14,20 88:8 101:10

**abrupt** 52:25

**absence** 10:3 26:4,21 29:5 33:10 34:17 54:25 83:14 86:4 88:3 93:1, 7,22 94:8 105:6,14 106:21 108:12 139:17,20 150:11 151:15 183:10

**absences** 18:2 27:10 28:20 69:23 107:6 115:1,17 121:23 132:16 151:14

**absent** 22:22 27:4 29:20 31:3 55:2 56:4,6,7,14 57:19 62:25 63:3,5,6,9,10,12,13,15,16,18,19, 21,22,24,25 64:2 81:1 83:11,14, 16 84:2,15 91:5 105:7 106:18 111:7 121:20 132:24 141:2 152:7 155:11 157:9

**absenteeism** 13:20 47:17 68:16
**absentees** 165:13
**absolutely** 18:25 26:7 29:21 73:11 137:9 138:19 142:17 146:10,24 147:1 149:9 179:13
**abuse** 14:25 16:14 30:2 152:3
**abusing** 13:19 41:1
**abusive** 118:13
**academy** 32:17,19,22,25 99:9 105:24 112:14,15
**acceptable** 84:2 167:14
**accepted** 76:16
**accidents** 16:1
**accrued** 151:5
**accruing** 164:3
**accurate** 55:25 111:14 151:16
**accused** 151:25 152:1,3 156:11
**act** 160:1,9 161:24 165:9 171:3 183:20
**acted** 157:18 158:17 159:18 163:10 165:4 170:20 171:7,24 172:3 173:4 177:6 178:11 179:7,9 180:8
**action** 31:15 159:20 183:21
**actions** 37:20
**acute** 33:12
**added** 141:17
**addition** 161:10
**address** 12:22 88:24 94:20 148:5 169:15,16
**addressed** 15:1 166:5,8
**addressing** 13:3
**adds** 21:4,11
**Admin** 31:17
**Administration** 45:15
**administrative** 84:7
**admit** 117:25 118:1
**admitted** 19:10 118:2
**adopted** 180:18
**advance** 140:20
**advanced** 58:9
**advise** 65:14
**advised** 67:21
**advising** 67:4 98:9
**affecting** 12:21
**affects** 13:22
**afford** 31:22
**afraid** 119:2
**agencies** 83:1,5
**agree** 10:17 40:1 57:13 83:7,20 96:21 135:3 173:20 185:1
**agreed** 78:5
**ahead** 9:10 11:22 27:20 71:25 92:7 96:1 103:17 112:21 128:3 138:21
**aid** 21:9 175:17,20
**alleging** 11:10
**Allison** 8:18
**allowed** 31:19 34:21 168:4 180:24
**allowing** 31:2
**ALS** 21:9
**alternate** 177:20
**altogether** 46:14
**amended** 51:6
**amount** 15:10,11 24:3 26:18 30:7 36:13 117:7 122:10,12,17,20 141:7
**animosity** 18:22
**ankle** 160:25 162:18
**annual** 28:10
**anticipate** 87:14 89:3
**anticipating** 114:3
**anxiety** 98:4 165:17
**anymore** 170:18,19
**anyone's** 17:7
**anytime** 14:5 27:14
**apologize** 62:4,19 133:11
**apparatus** 134:12,21
**appeal** 8:2,15 54:12
**appears** 34:24 160:3 166:6
**apples** 160:20
**apply** 123:25
**appointed** 12:4 140:8
**appointing** 159:18 171:7,23 172:3 175:5
**appointment** 113:24
**approach** 113:1
**approaching** 58:5 142:16
**approval** 44:12
**approximate** 27:25 141:1
**approximately** 28:19,22 120:19 121:3,17 133:5,6
**April** 12:6,9
**Arceneaux** 14:25
**area** 99:25
**arguments** 31:20
**arrive** 21:6 37:24
**arrived** 54:5
**ASAP** 169:6
**assemble** 155:1,5
**assembling** 131:11
**assessment** 39:16 40:3,8 41:2
**assigned** 29:6 32:18
**assignment** 86:21
**assist** 84:6 134:20
**assistant** 175:15
**ASST** 99:23 100:17 102:1 167:5 172:24 174:9 176:21 177:1 182:9 185:9
**assume** 96:9
**assumption** 70:8
**attached** 19:11,20 20:5,17 21:15 24:24 31:15,18 33:25 49:7,9 61:19 65:10
**attempted** 62:1
**attendance** 21:24 22:3 26:23

36:2,4,8,19 38:15,18 68:13 69:22 83:7 85:12 115:17 135:4,6 174:17 175:12 183:11 186:10

**attention** 76:18

**attest** 71:1

**attorney** 8:18,19

**attorneys** 146:15

**August** 34:17 86:4 93:19 94:5 96:7,12,17,22 111:18 154:10

**authority** 159:18 171:7,24 172:3 175:5

**authorized** 70:16

**avenues** 173:23

**average** 29:1 102:13

**aware** 36:18 41:6 82:4,9,11 83:16 91:2 115:15 131:10,13,14 139:23 144:17,22

B

**back** 17:22 26:16 32:18,20 40:16 46:13 50:24 51:1 54:3 56:20,24 57:4,10 58:14,20 59:5 60:5,19 68:18,22 71:12 72:19 79:5,24 87:8,20 88:2,25 89:5 91:5 94:22 95:4 96:25 98:10 99:4,8 105:22 107:12,13,16 109:9,12,14,16 110:12,14,17,23 112:22 113:1,8, 18 114:6,11,12,16 120:9,12 122:15 126:4 130:15 145:5,7,9 148:22 151:9 153:14 154:19 155:24,25 174:4,16,20 176:12 177:21 178:3,20 184:13 186:25

**bad** 162:23

**based** 9:20 10:9 13:16 14:8 16:10 17:4,6,11 21:9 24:3,4 38:14 58:11 68:5,15 69:1,2,11 70:1,3,7 72:11 73:2 78:9 83:18 88:19 127:6 131:25 132:13,15 137:22 154:24 155:9 161:16,19,22 175:10

**basic** 17:16 22:19 60:17

**basically** 15:16 37:2 99:3 140:12 144:14,24 145:14

**basis** 18:23 118:11

**battery** 129:3

**began** 9:17 12:11 75:16 76:5 107:16 111:24

**begged** 170:6

**begin** 8:3 31:14 103:23

**beginning** 8:21 12:24 51:13 113:19 120:7 121:6 165:15

**begun** 57:16 154:9

**behalf** 31:20

**behavior** 118:13

**belief** 91:17 154:25

**Bell** 128:7

**benefit** 28:15

**benefits** 23:12 27:6 28:13,15 29:3 30:11,15 43:11 164:2

**bereavement** 109:21,22 111:19

**BFOQ** 68:9

**BFOQ's** 20:25 35:25 73:8 163:16

**bicep** 137:9

**biceps** 131:5 135:21 137:7

**big** 163:22 164:5,9

**biggest** 14:19

**Bill** 11:10 19:23

**bit** 22:20 74:19 165:12

**biweekly** 75:21 107:10

**BLS** 21:9

**board** 9:13 10:7,18 12:24 13:2 14:3 15:3,9 16:5 17:7 19:7 20:22 22:18 24:8 31:7,9 32:8 36:15,23 37:8,18 46:6 55:18,20 60:2 69:6 73:7,18 97:14,15 107:7 113:9,10 117:18 121:21 125:18,20 129:3 138:10 143:8,21 144:8 147:7,21 148:10 150:13 151:10 154:23 155:18 156:1 157:3,17,21,24 158:15 159:6,7,17,21 160:7 162:3 174:24 178:15,25 181:10 186:15

**Board's** 14:16 31:13

**body** 112:19

**bona** 10:4,11 20:10 26:4 31:23 67:24 148:8 164:25

**booster** 134:14

**boss** 14:20

**bottom** 22:11 44:17 45:16 46:1 65:16 104:22,23

**box** 86:10,11,12,14,18,22 163:5 177:2

**boxes** 86:9,15

**break** 53:14,25 127:17,25

**breaking** 53:17

**Breedlove** 8:19 62:3

**Brian** 172:9

**briefly** 12:17 16:21 20:24 59:18 75:16,25

**bring** 104:17

**brings** 157:8

**broken** 160:25 162:18

**brought** 33:1 178:20

**Bruce** 61:17

**Buckle** 8:5 9:12 11:16,18 12:3 19:1,6,18 20:1 34:12 37:7 38:5 39:21 41:19 48:2 51:16,22,25 52:2 59:9 61:12,24 62:10,11,15, 20,22 64:14,19,25 65:4 69:5 71:14,21 72:2 73:19,20 74:2 80:5, 21,24 83:6 85:18 90:6,7,10 95:23 96:1,3 97:8 100:15,19 101:1,7,13, 18,24 102:5,17 104:18 119:17,19 126:17 133:10 138:6,7 143:8,10, 12 147:7,18,20 148:2 156:2 158:20,21 181:5 186:14

**budget** 22:6,10

**building** 113:11

**bump** 15:21 27:21

**bumped** 14:6 27:17

**bumping** 29:13 142:2

**burden** 158:6,16

**business** 18:15

**businesses** 30:22

C

**calculated** 55:4

**calculating** 55:14

**calculation** 140:25

**calculations** 155:10

**calendar** 58:5 105:6,11 121:25

**call** 11:19 27:20,21 73:25 74:17, 22 103:8 140:4 145:3 170:10,13 172:10 175:22 182:3

**called** 29:9 115:19 140:9 169:23 175:17,24 176:1

**calling** 27:19 29:14 74:15,18 128:8 170:12

**calls** 13:25

**Candie** 71:5

**Canisha** 168:22

**capacity** 56:2 86:12,13,19 88:8 99:1,5 151:4

**captain** 60:7 61:1 138:25 139:6 175:14

**card** 18:17

**care** 21:9 22:4 76:20

**career** 123:3 130:24 131:1 141:3, 19 142:7

**Carol** 47:24

**Carolyn** 128:7

**Carter** 13:4

**case** 12:12 27:11 38:25 148:3,7 156:10 158:15

**CASEY** 8:7,11,22 9:1 49:10,14, 21 50:2,11 171:10,14 177:16 180:10,15,21 181:1,9 184:8,17,21 185:2 186:23

**categories** 137:9

**caused** 106:6,14 123:8

**certificate** 33:24 39:2 42:7,10 49:3,8 67:3 70:6 80:15 86:2

**certificates** 33:23 52:8,14 72:23 76:9,13 79:18 99:25

**certifications** 15:24

**certified** 15:20 23:5

**chair** 177:9,14 182:25

**chairman** 8:8 9:7 10:17 49:11 53:9 171:11 173:2 180:12 186:24

**change** 36:11 49:17 50:5 52:25 101:17 168:2

**changed** 67:12 88:2 100:6 111:3

**chart** 62:7 65:24 111:11 119:23

**check** 75:22 86:10,15,18 170:8

**checked** 88:7 101:8 163:5,6 177:3

**checking** 86:22 123:9

**checks** 184:1

**chief** 9:18 11:19,24 12:1,2,4,19, 25 14:17,23 15:3,13 16:3,6 18:8 20:2 29:24 30:3 37:9 38:9,11 44:12,13 52:12 54:17,21 59:2,17, 20,25 60:23 61:8,17,23,25 64:2 69:13,15 71:3 72:1,3,13 73:8,19 74:25 99:23 100:16,17 102:1 115:6,11 124:4 126:19 128:12,24 131:10 139:23 140:2,5,11 144:16 145:4 148:4 149:9 150:4,15,22 154:17,23 156:3 157:18 158:23 161:11,24 163:10 165:4,8 167:5, 21 168:21 169:12 170:20 171:3 172:9,23,24 173:4 174:9 175:15 176:21,24 177:1,5 178:11 179:7 180:8 182:8,9 183:19 185:9

**chief's** 175:17,20

**children** 118:14

**chooses** 28:18

**chose** 45:6

**Chris** 128:8,10,14,19,20 129:15 133:9 136:19 138:18

**church** 164:18

**circumstances** 83:25 84:5

**citizens** 15:15 22:5 31:1 72:8

**city** 8:4 11:19 19:8,11 20:2,13 21:14 24:21 28:12 30:10 31:2 43:3,8 44:5 52:1,7 61:15 64:13 73:4 80:14 85:25 92:17,21 93:15 94:22 103:21,24 104:13,15 125:14 149:22 157:24 158:1,2 164:9 166:8

**city's** 54:22 87:9 104:14 145:12 153:16

**civil** 17:7,22,23 20:22 22:14 23:6 30:17 117:18 163:20

**claiming** 40:23 41:1

**Clanton** 39:11,14 40:9 41:13 46:24 49:2,6 58:17,24 64:16 65:7, 9,14 66:11 67:20 68:2 79:9,15 112:6,25 113:25 152:19 155:5 157:13

**Clanton's** 39:17 42:22 47:4,7 72:15 112:3 152:23

**Clarence** 11:25

**clarify** 102:7 157:7 186:16

**class** 13:7 14:7,11 15:22,23 17:17 23:9

**classification** 15:2 20:15,16,19 157:2

**classified** 139:21

**clean** 134:11,14

**clear** 52:11 113:16 148:4

**cleared** 66:19 94:14 95:8 145:11

**client** 85:1

**clients** 83:23 84:10

**clinician** 34:9,10 50:21 52:20 174:4 176:17,19

**close** 25:25 26:13 115:24

**closing** 147:18,23 148:1

**clots** 108:10 122:25

**code** 98:4

**codes** 33:10

**collecting** 131:11

**column** 55:1

**columns** 120:4

**comment** 102:6

**comments** 54:9 159:7 160:7 165:3,6

**Comp** 135:22 136:1 145:17,20

**company** 30:18

**compare** 18:2

**compared** 158:4

**comparing** 160:20

**complete** 35:21 61:7 62:1 64:9

**completed** 100:1

**completely** 112:8 179:6

**complications** 108:8,19 111:13 122:24 123:3

**concern** 14:17 15:13,18 20:9

**concur** 161:23

**condition** 96:23

**conditions** 123:14

**conduct** 25:6 159:22

**conducting** 115:7 139:24 140:12

**conference** 24:22 25:9 31:10 57:25 67:9,14 115:8,21 140:21 142:24

**confidential** 118:23

**conflict** 76:7

**confused** 52:17 97:19

**confusing** 136:10

**connect** 134:2

**consecutive** 161:1

**consecutively** 160:23

**consideration** 151:11

**considered** 17:10 167:14

**consistent** 42:21 49:15,18

**consistently** 26:12 130:6

**constitute** 26:22

**consult** 46:24 47:15 79:10

**consulted** 58:18 95:19

**contact** 76:12

**continue** 14:12 23:24 31:6 62:18 149:17

**continued** 72:24

**continuity** 22:4

**contradictory** 162:4

**contributing** 117:15

**control** 123:6

**conversation** 168:1

**conversations** 127:6

**copies** 19:21,25

**copy** 39:17 41:20

**correct** 8:15 12:8,13,15,16 13:21 16:11,12 20:7,11,12 22:19,20 24:17 25:9,10 26:23 27:11 28:23 29:4 31:11,12 32:9,10 34:15,16, 18,19,22,23 35:1,9,10,12,15,17, 18 38:19,20 39:3,13 40:7,13,18, 21,22,24 41:3,9 42:8,14,19 43:3, 4,9,25 44:1,5,18,20,21 45:1,3,4,6, 7 46:9,12,14,21,22 47:13 55:8,17 56:2,3,17,18 57:18,20,22,23 58:10,11,22 59:21 60:1 62:2 64:6, 7,10,11 65:1,8,22,23 66:3,4,11, 22,23 67:6,7,10,15 69:4,16,17,18 70:9 72:5,9,21,22 73:1,5,6 77:2 79:25 80:8,9,15 81:10,24 82:15 84:11,20,24,25 85:3 87:2,4,5,23 88:4,5,9,10,12,15,16 90:13,21 91:1,6,19,25 93:24 94:10,15,16, 18,19 95:2,3,9,11,15,16,20,21 96:7,8,14,15,18,23 97:21 98:2,5,6 100:23 101:4,21,23 102:11,13 103:22 106:9,16,22 107:1 108:16, 17,21,22 109:4 111:15,20,21,25 113:20,21 114:18 116:5 117:8,9, 11,13,14,16 120:4,5,6,10,13,14, 16,17,19,20,22,23 121:1,4,8,11, 18 122:14,16,17,19,24 123:5,16, 17,18,23 125:6 129:19 131:9 132:10,18,20 133:13,14,17,18 134:1,4,6,10 135:10,11,13 136:2 137:21 138:1 140:1,19 149:10 167:4,6 177:2 184:7

**corrected** 129:6

**Cory** 128:7

**cost** 126:14

**could've** 89:18

**counselor** 40:15 41:8 42:5 58:17,19 148:21 149:8

**couple** 14:14 15:8 23:9 27:1 38:13 54:16 69:10 85:22 92:4 124:20 136:18

**court** 49:16 129:4,10,11 138:23 186:1

**covering** 86:3 93:18

**COVERT** 8:9,14,24 9:3,8 10:13 11:3,9,14,21 19:13 34:1,5 38:3,7 48:6,11,15,21 49:12 53:10,15,21 54:2,18 59:16,22 62:9,13,17 69:7 71:17,24 73:13,17,22 74:7,12,23 75:4,9 85:16 90:5 92:6,12 93:12 95:25 97:13 99:21 102:12,19,24 103:3,10,16 119:16 125:19 126:22 127:12,19 128:1,11,16,22 129:7 136:15 138:5,9,15,20 139:2 143:9,20 144:7 146:5,13 147:6, 11,17,22 150:17 158:19 159:4,10 160:13 163:18 166:24 167:7 170:16 171:1,12,18 172:1,8,14, 18,22 173:1,10 174:6,13 175:3 176:4,14,18,23 177:4,23 178:9,24 179:5,16,22 180:13,23 181:3,7, 12,18,24 182:7,11,15,19,24 183:15 184:5,14,19,23 185:4,11, 16,24 186:3

**Cowboys** 175:21

**CPR** 21:8 60:14

**created** 27:9

**credit** 57:21

**criteria** 44:22 45:3,5 70:2 132:1, 3,14,15 135:17 142:18,20 148:12 156:5 158:2,10,25

**crying** 169:2

**cuff** 106:10

**cups** 18:16

**current** 69:1

**cut** 134:14

**cycle** 36:5 43:15 79:1

**D**

**dad** 109:13,18,24 119:11 125:8

**dad's** 117:21

**daily** 23:24 118:11

**Dark** 14:24

**date** 34:17 42:4,12 51:18 57:15, 16 66:20 67:13 96:6,10 98:17 105:5 124:24 144:1 151:2 153:1 168:6 186:25

**dated** 34:14 41:16,18 52:3 64:18 65:12 66:13 67:4,8 80:17 96:5 100:22 152:24 154:6

**dates** 13:1 25:14 35:16 50:22 51:7,17 56:24 62:8,23 63:1 64:5 86:4 88:3 90:22 92:11 97:3 98:3 104:14 109:6 157:8

**daughter's** 18:16

**day** 25:25 34:10 44:3,4 51:12,19, 21 67:5 87:12 90:20 95:2,15 109:14,15 111:14 113:21 116:12 117:5 185:6,20 186:6

**days** 10:1 24:5,7,9,10 25:13,17, 19 26:13 27:1 34:11 35:11,19 42:20 44:3 51:13 52:19 55:11 58:5 59:7,13,15 62:24 63:5,9 66:7 67:6 87:12 88:25 89:1 90:21 98:19 105:5,6,11 106:1,15 109:22 111:8,9 115:10,23,25 116:1,12 117:5 120:5 122:10,18,21 130:24 132:24 135:19 137:23 141:1,6,7, 9,15 142:6 144:17 151:17 153:12, 13 155:11 160:23 161:1,2,7 162:8,17 185:8,10,12,15

**deal** 33:13 77:23 107:19 118:12 122:2,4

**dealing** 33:15 107:23 108:14 117:22 125:8 168:16

**dealt** 119:8

**death** 110:24 125:8

**December** 9:17 34:14 52:3 67:13 81:5 90:19,25 133:19,21 148:11 154:6

**decide** 37:20

**decision** 37:9,21 38:1,13 68:25 69:23 72:12,13 73:2,10 150:15 178:21

**decisions** 72:16

**declared** 156:18,23

**declined** 123:25

**decrease** 36:16

**decreased** 36:14

**deemed** 174:3

**defendant's** 48:24

**Defendants** 151:13

**Definitions** 24:20

**demonstrate** 158:8

**dental** 28:16

**department** 9:20 12:5,21 13:18, 23 15:12 16:2 21:20,23 22:1 23:13 27:8,13 31:3 34:22 36:18, 23 37:14 38:18 39:8,15 45:15 55:19 70:18,20,23 72:8 76:11 82:23 103:21,24 113:5 115:2 123:4,16 128:21 129:18,23 130:18 139:1,8,12,17,21 149:21, 25 150:2,10 159:24 160:1,4,8,10 163:13 166:8 176:20

**department's** 13:6 22:6 109:1

**departmental** 134:20

**departments** 151:22 160:16

**depending** 23:7 114:8

**depends** 28:15,17 60:4 75:23

**depth** 22:21

**derived** 112:4

**describe** 20:24

**description** 20:20

**designated** 22:14

**designee** 139:24 140:2

**designees** 140:1

**destination** 109:16

**detail** 75:24 96:25

**determination** 32:3,5,6 37:8 157:12 174:7,14

**determine** 37:18 44:23 47:2,17 82:20 149:12 159:17,21 178:15

**determined** 9:23 168:10

**Devon** 128:9 138:25 139:6,9 143:11,23 146:18

**diagnosis** 40:5 76:6 94:15 108:14

**died** 181:2,4,11

**difference** 46:17 117:1 163:22 164:5,9

**directed** 133:24

**disagree** 91:24 120:3,6

**disciplinary** 159:19 183:21

**discipline** 36:24 171:2 178:13 184:16

**discrepancy** 115:23 165:12

**discuss** 40:10 78:14 159:12

**discussed** 114:2 174:25

**discussing** 114:25

**discussion** 159:6 165:2 170:19 173:17 181:13

**disorder** 76:7

**dispute** 10:21 11:1,4

**division** 134:24

**DNR** 110:4

**DOCKET** 54:1

**doctor** 67:17 69:15,21 72:5 109:5 110:17 144:4 152:20 154:10 155:4 164:19

**doctor's** 70:4 123:9

**doctors** 77:4

**document** 21:14 34:13 42:3,6 50:15,20 51:9 57:5 67:8 81:8 85:24,25 86:2 87:6 92:17,23 93:3, 13,20 100:22 104:13,14,16 115:2 165:10

**documentation** 38:22 39:2 68:24 162:25 163:4

**documents** 19:11 96:4 100:21 101:14 151:12 156:14 158:22 159:16

**dollars** 15:5,17 16:8 27:18 30:10, 19 31:5

**downtown** 140:6,8

**draw** 76:18

**drawing** 117:12

**drinking** 118:13

**drive** 133:23,24

**driven** 133:24

**driveway** 109:17

**Driving** 60:11

**drugs** 118:13

**dry** 134:12,13

**due** 96:25 173:23

**duties** 17:23 20:10 21:3,8,10,11 23:2 31:8 32:8 43:7,8 44:5 68:11 78:18 82:21 84:25 85:7 123:15 135:5,14,15,23 136:6,9,22 137:1, 4,10,14,15,18,19 142:16 157:15 164:11,24

**duty** 15:4 22:12 23:14,16,17,19, 23 24:1,15 30:12 32:15,16,20 33:5 34:7 35:24 40:11,16,20,22

41:9,13 43:1,2,10 44:9,20,24 46:12,17 47:3,8,10,18 55:15,18, 20,21 56:17,21 57:17,21 62:25 63:9,12,15,18,21,24 64:4,8 65:7, 15,19,25 66:22 67:22,23 68:8 69:24 70:17,24 71:2 73:3 78:6,8, 15 81:18 82:25 86:21 88:9 90:13, 16 91:9,15,19 98:21 99:10,15,18 100:8,13 102:9 108:25 109:3 110:19 111:1,2,3,5 112:3,9,10 116:7 121:22 133:16,20 135:12 136:2,4,5 143:3,17 149:5,13,15, 19 151:8 152:12 153:14 154:19, 25 156:16,19,24 163:21 164:1,14, 23 174:5,15 176:13 177:22 178:3

**DVT** 108:8,9

**E**

**e-mail** 60:25

**EAP** 169:15,16,20 183:25 186:11, 20

**earlier** 25:4 91:3 102:7 110:13 156:4 157:7

**ease** 95:4

**easier** 125:14

**eat** 164:20

**effect** 29:5 37:21 40:3 158:23

**effective** 22:15 66:19 82:7 108:15 150:8 168:6

**efficient** 22:15 29:5 159:23

**efforts** 125:4

**egregious** 183:5

**eight-hour** 88:25 89:1

**eight-hours** 95:15

**elaborate** 105:23

**eligibility** 14:2,16

**eligible** 123:19,23

**else's** 18:6

**emotional** 76:25 117:20

**employ** 30:11

**employed** 21:25 89:18 90:2 103:21 129:17,22 135:9,25 136:9 139:12

**employee** 22:22 28:13,18 31:2 34:10 38:21 43:6,7 86:8 105:5 130:13 160:21,24 161:2 164:10, 22

**employee's** 100:1,2,5 159:22

**employees** 13:19 14:18 16:13 22:9 27:9 29:19 31:1 36:12,13,18 46:2 73:3 148:7 156:8 160:21 167:1

**employer** 38:22

**employment** 10:22 46:23 47:19 82:25 103:23 104:1,4,12 114:21 130:17 154:20 178:23

**EMS** 21:8

**enable** 78:15

**end** 13:6 28:2 78:13 88:3 104:1 121:10 149:2 166:7 168:23

**ended** 76:6 104:4 110:16,18 111:4 113:5

**ending** 28:10 51:18 94:23

**enforced** 36:20

**engaged** 134:9

**engine** 133:13

**engineer** 8:16 10:19 12:8,15 13:13 15:19 20:11,14,16,25 21:2, 11 26:6,17,20 27:16,18,19 31:25 32:23 33:1,3 36:1,5 43:12 47:6 56:5 60:6 67:25 68:9 78:16,19 82:21,25 89:6,19 90:1 99:1,5,8 102:10 103:9 104:5,10 116:7 128:20 129:21 133:17,20,22 135:5,10,13,25 136:9,22 152:12 164:25

**engineers** 36:6 79:2

**enlarged** 105:15

**enroll** 183:24

**enrollment** 186:10

**ensure** 149:23 150:8

**enter** 159:5

**entered** 50:20

**entire** 37:14 64:8 106:10 168:8

**environment** 57:9

**EPA** 168:13,17

**episodes** 82:12

**equal** 162:9,19

**equation** 120:2

**equipment** 133:24

**error** 129:1

**essential** 22:13,24 26:9 60:8

**essentially** 94:21

**Eval** 65:9

**evaluate** 67:17 82:20

**evaluation** 39:9 49:1,6 64:16 65:8 66:10,21 82:25 109:1

**eventually** 153:13

**Everbridge** 29:15

**evidence** 11:17 31:20 37:24 54:13 65:18 148:3,20 150:23 159:2,25 160:8,12 161:22 162:1 170:18

**evolution** 110:13

**evolutions** 60:18

**exact** 28:14 90:22 141:7 144:1

**EXAMINATION** 12:2 38:9 61:23 69:13 72:1 75:11 80:4 85:20 90:9 92:14 96:2 97:15 103:18 119:18 129:15 133:9 136:19 139:9 143:11,23 146:18

**exceeded** 57:7 130:23 142:7

**excessive** 13:20 16:14 148:6 162:10,12

**exchange** 43:8

**excuse** 27:17 109:14 168:17

**excused** 35:7,16

**exhibit** 19:19 20:2,5,14,17 21:14, 16 24:21,25 31:16,18 33:21,25 42:11 44:16 45:14,23 48:19 49:1, 3,7,9 61:15,19 62:16,21 64:13 65:6,10,24 66:10 67:2 80:14 87:9 130:16 151:13 152:23 153:5,17, 19,20

**exhibits** 19:3,9,12 31:14 47:25 48:25 54:22

**expect** 88:17 127:7 175:6

**expectation** 115:1 154:13

**expected** 86:23 88:11 115:8 154:17 175:22

**expecting** 87:12

**experience** 15:21,25

**expert** 69:21

**explain** 12:17 13:22 16:21,22 31:23 32:13 59:18 107:6 112:4 115:6,8 169:3

**explained** 114:14 165:10

**explored** 173:23

**exposed** 110:25

**extend** 44:19

**extended** 30:8 44:13 46:2 68:8 70:24 131:12 137:21,23 141:20 170:9

**extension** 44:24

**extensions** 24:8

**extensive** 72:20 137:5,17

**extent** 37:12

**extenuating** 83:25 84:5

**extinguishers** 134:13,17

**extra** 104:19

**extreme** 77:19 154:1

**eye** 169:1

**F**

**F41** 98:4

**F41.1** 93:25

**F41.1.** 33:10

**face** 124:5,6

**facilitator** 177:11

**fact** 40:20 43:8 44:1 47:9 55:25 72:17 89:8 117:10 150:24 154:22

**factor** 58:12

**facts** 58:11

**fail** 156:19 173:16 174:16

**failed** 156:25 179:23 180:25

**fails** 183:1

**failure** 10:3,10

**fair** 29:18 30:13 123:2

**faith** 10:9,20 11:2 37:10,13,19 38:1 150:16 157:18 158:17 159:19 160:1,9 161:25 163:10 165:4 166:22 170:21 171:4,8,19, 24 172:4 173:4 177:6 178:12 179:7,9 180:8 183:20 184:22

**fall** 123:12 137:8 145:25

**falling** 123:6

**falls** 137:11

**familiar** 78:18

**family** 21:17

**fashion** 110:15

**father** 77:13,16 96:10 111:18

**father's** 97:2

**favor** 179:17

**February** 63:14 88:3,15,18 89:2, 4,15,16 94:5 95:14 106:17 114:17 120:12 127:8 154:15

**feel** 114:13,14 118:22 124:11 126:3

**feeling** 126:12

**Felicia** 8:16 12:8 13:13 17:1 18:18,20 75:13 103:9,15,18 119:18 129:25 144:14 145:1

**fell** 105:23 106:2,3

**felt** 72:13 114:8 126:7

**Ferguson** 140:11

**fide** 10:4,11 20:10 26:5 31:23 67:24 148:8 164:25

**fiduciary** 15:5 22:5

**fighter** 21:3

**fighters** 21:5

**file** 25:6 35:22 49:18 72:12,20

**files** 17:7,9,21

**fill** 23:4,6 27:9,22 29:19 32:3 76:8

**filled** 14:15 15:18 79:18,20

**filling** 17:22 112:17

**finances** 118:4

**find** 65:18 84:18 130:16 150:14 157:17

**fine** 50:1 112:18 129:5

**fire** 8:16 9:19 11:25 12:5,7,14,19 13:6,12,18 14:17,23 15:3,12,13, 19,25 16:3,6 18:8 20:11,14,16,21, 25 21:2,3,5,11,20,23,25 23:13 26:6 27:13,16,17 28:13 29:23 30:3 31:24 32:21,23 33:1,3 35:25 36:5 43:12 44:11,13 45:15 46:2 47:5 56:5 60:6,19 64:2 67:24 68:9 72:13 73:8,19 76:11 78:16,19 79:1 82:21,23,25 89:6,19 90:1 99:1,5,8 102:9 103:9,21,24 104:5, 9 105:24 110:25 113:5 123:4,16 124:4,6 128:20,21 129:18,21,23 130:18 133:13,17,20,22,23 134:5, 9,12,13,17,21 135:5,9,12 136:22 139:1,7,12,17,20 140:2 149:21 152:12 154:16 161:24 164:7,25 165:4,8 170:20 171:3 173:3 176:20,24 177:5 178:11

**fired** 124:2

**firefighter** 21:10 27:17,20,22 60:6

**firefighters** 29:14

**firefighting** 134:8

**fireman** 23:21

**firemen** 150:9

**fit** 41:13 47:3 65:7,15 67:21 69:24 82:21,24 108:25 132:1 155:8 156:16,19,23 174:15

**Fit-for-duty** 65:9

**fits** 151:22

**five-year** 64:4 84:1,15

**flare** 106:14

**flareups** 106:8

**floor** 181:20

**FMLA** 21:15,17

**follow** 55:12 71:22 90:8 92:9 105:7 170:8

**follow-up** 42:15 58:23 85:22 136:16 143:21

**follow-ups** 69:10 92:4

**force** 155:15

**forever** 47:8

**forget** 119:25

**forgotten** 43:19

**form** 31:15 33:15,19,20 79:24 81:4 86:5 87:9 88:2,7 92:21 94:5, 23 96:19 97:17 105:7 115:19

**formal** 105:3 113:13 115:16 125:5 132:8,17 140:15 143:1

**forms** 70:6 79:21 92:18 100:5,10, 11,14 153:18,23 155:3

**Fortune** 30:18

**Forty-five-day** 186:4

**forward** 96:13 107:4 112:13 122:7 168:10

**found** 78:8 106:10 165:19

**four-month** 148:23

**fourth** 153:21

**frames** 91:13

**fraudulent** 152:2 156:12

**fraudulently** 40:24

**free** 133:8

**freeze** 126:10

**friend** 18:13,14,20 169:1

**friendship** 18:12

**front** 87:7 90:22 92:16 97:3 104:15,16 152:25

**FTO** 99:23 100:17 102:1 146:7,11 162:5 167:5 172:6,24 174:1,9 176:10,16,21 177:1 182:9 185:9 186:19

**fulfill** 20:9 31:23 68:11 123:15

**fulfilled** 84:21

**fulfilling** 30:24 31:8 84:19

**full** 23:12 27:4,6 29:2,3 30:11 32:15,16,20 35:24 40:12 41:8 43:11 65:19 67:23 68:8 78:15 86:12,13,19,23 88:8,12 98:21 99:15,18 102:9 109:3 110:15 113:18 114:4,22 117:6 121:22 133:16,20 136:2,3,5 143:17 144:3 149:13 152:12 153:14 154:19 164:2 174:4 176:12 177:21 178:3

**full-time** 40:17 65:15 79:11 89:18 90:1 91:19 112:21 115:9

**fully** 127:7

**function** 23:20

**functions** 22:14 23:1,24 26:10 32:23 33:3 60:9,15

**fund** 22:8

**funds** 22:6

**future** 161:13

G

**gained** 122:2

**gains** 88:22

**gap** 18:7

**gathered** 132:4

**gathering** 156:14

**gave** 78:1 94:3

**gear** 110:15

**gel** 162:20

**general** 22:7 131:18 134:7

**generally** 24:5

**gift** 18:17

**give** 9:14 25:14 47:24 55:7 57:20 63:1 74:5 100:7,12 125:11 151:10

**good** 10:8,20 11:2 37:10,13,19 38:1 118:10 127:16,20,22 128:2 130:13 150:16 157:18 158:17 159:18 160:1,9 161:24 162:24 163:9,10 165:4,9 166:22 170:21 171:4,7,19,24 172:3 173:4 177:6 178:12 179:7,9 180:8 183:20 184:22,25

**governed** 132:7

**granted** 71:2

**grass** 134:14

**Greg** 140:11 145:4

**grief** 77:13,16,19,24 80:7 82:15 88:20,24 94:1,11,18,20 95:5,19 96:13,18,23 98:8 111:23 113:20 121:20 152:18 154:1,2

**grieve** 125:10 126:4

**grounds** 54:12

**guarantee** 54:11

**guess** 52:24 124:16 141:17

167:14 175:23

**guided** 44:23

**guise** 135:16

**guy** 17:14

**guys** 144:20

H

**half** 9:24 29:1 109:19 119:9 120:19 148:19 157:11

**hand** 168:5

**handling** 164:8

**hands** 145:8

**happen** 28:12 31:6 36:22 88:18 108:6 132:23 161:21 175:2

**happened** 16:22 26:14 131:15, 16,18,22,23 144:24,25 145:14 156:7,21

**happening** 124:9 184:3

**hard** 14:21 117:25 118:6

**head** 37:4 76:4 160:8

**health** 28:16 168:14,16

**healthcare** 151:21 152:6,11

**hear** 50:17 77:15 129:3,4,10 144:23 160:6

**heard** 32:11 54:13 106:23 159:25 161:23 162:1,3

**hearing** 9:10 173:15 177:12 184:9

**held** 31:10 104:3

**helps** 22:9

**Henderson** 128:8

**Henry** 128:9,10,14,19,20 129:15, 17 130:15 132:23 133:9 136:19, 21 138:18

**Hicks** 41:23 45:18 50:13,18 51:15 52:16 53:6 59:6,11 60:20 61:5,10,22 97:16 102:8,15 125:22 126:15,20 145:15,21 146:3 165:7 166:19 167:16 168:18 169:9 170:23 172:11,12 173:18 174:23 177:18,25 178:6,17 179:3,12 180:3 182:4,5 183:2,8,17 185:7, 18 186:8

**highly** 97:6
**hip** 105:22 162:15
**HIPAA** 96:25
**historically** 13:19
**history** 46:25 47:5 67:20 68:6,20 69:2,22 70:4,21 71:11 72:16 88:20 161:17,20 175:8,11 176:6
**holiday** 161:4
**home** 28:22 29:3 43:6 56:11 109:17 110:21 117:12 135:14,15 140:4 164:16
**homes** 109:19
**honestly** 122:5
**hose** 134:2,12,13
**hospital** 110:2
**hospitals** 109:19
**hour** 28:8,9 41:17 43:13,16 49:5 51:23 58:20 98:11,24 114:3
**hours** 34:10 40:12 42:13,18 43:11,12,23 44:2 50:25 51:1,4,6, 12,19 52:21,23 53:24 55:1,11,21, 24 56:14,15 57:11,19,21 60:17 67:5 87:12,15 90:20 95:2 98:14, 16,18,22 99:14 102:10,14 105:6 112:11,21,23 114:6,11 115:4 116:4,9,15,17,22,24 117:4
**house** 126:8
**HR** 168:12
**huge** 15:17
**hundred** 116:23 141:6,9,15
**hung** 18:14
**hurt** 146:1

I

**idea** 33:11
**identified** 50:7,8,9,10 85:25 148:11
**ill** 105:12
**illness** 96:6 97:2,7 162:14 163:6 166:3
**immediately** 17:12,13,17,20 107:13
**impaired** 159:22 160:5,11
**implement** 41:8
**implemented** 185:22
**important** 22:2 153:15
**inability** 10:10 137:19
**inaccurate** 109:8 115:25 150:22
**Inaudible** 159:9 176:3
**incapable** 24:11,12
**incidence** 100:2
**include** 22:16 28:16
**included** 29:25 48:24 101:20 142:19
**includes** 21:3,10
**increase** 163:24
**increased** 42:18 95:15
**increases** 28:4
**increasing** 15:10 16:1 28:10 49:4 87:14 166:3
**individual** 30:11 168:4
**individually** 161:9
**inform** 78:22
**information** 72:11 77:3,25 79:19 155:2,3,4 159:14
**informed** 154:16
**Initially** 76:5 78:4
**initiate** 148:12
**initiated** 46:8
**injured** 23:15,16 108:2 136:8
**injuries** 77:1 106:11 151:20 165:20
**injury** 17:10,21 24:3 96:6 106:6, 14 122:16 131:3 136:1 145:22,25 163:6
**inquiry** 85:15 132:4 142:23
**ins** 75:22
**instances** 27:12
**instant** 134:12
**insufficient** 58:25
**insurance** 28:16,17
**intended** 123:12
**intent** 41:12
**Inter-office** 31:17 61:18
**interoffice** 61:16
**intervals** 52:14
**interview** 47:1,15 140:13 144:15
**interviewed** 14:23
**introduce** 33:21 61:15
**introduced** 20:2
**introducing** 19:24
**investigated** 13:15 16:14,17,19 31:7 46:4,10 113:15 167:2
**investigation** 8:1,12,21,23 9:17, 23,25 10:2 11:6,8 12:12 13:14 17:1,3,11,24 18:23 20:3 25:5,7 28:4 29:10,22 46:8 73:7 91:1,11 105:3,4 113:13 115:16 125:6 132:9,18 137:25 139:25 140:15, 18 142:19,23 143:2,14 148:13 149:3,7 166:23 167:13
**investigations** 16:22
**invited** 18:19
**involved** 165:20
**issue** 10:7,18 84:6 148:5 149:1 156:17 157:3,4 165:23 166:21 169:15 174:18,19 178:25
**issued** 24:23 25:8 67:10,13 113:14
**issues** 12:20 19:23 33:1,18 65:18 72:4 82:17,18 84:8 91:13,14 109:23 110:1 118:8 121:20 144:13 148:17 161:5,8 166:12
**issuing** 25:4

J

**January** 8:17 12:7,14 31:11 34:18 41:16,18 42:5,8 45:16 51:14 52:5 63:11 67:4 68:5,25 75:20 76:19 77:7 78:13 81:5 86:4 87:2,3,4,11,13,15,25 88:18 89:1, 2,11 93:19 94:23 96:5 104:2 105:21 113:23 123:18,21
**job** 10:5,11 15:2,7 16:5,7 18:21 20:19 22:13,16 24:11,13 26:5,9,

19 30:1,17 31:24 32:7 60:8 82:21 83:8 84:5,25 85:7 97:22,25 98:7 99:5 105:24 106:4 118:8 124:10 129:20 136:6 155:25 156:21 157:1,6,15

**job-related** 122:9

**jobs** 23:21

**Jones** 8:19 10:14,16 11:7,12 19:4,15,16 32:11 34:3 36:25 37:16 38:8,10 39:23 40:2 41:21 42:2 45:22,25 47:23 48:4,7,9,13, 17,23 49:19,24 50:4,16 51:8,24 52:10 53:3,16,19 54:14,15,20 59:3 61:21 62:4 64:17,21 65:2 67:2 69:8,9,14 71:19 73:14,15,23, 24 74:4,9,16 75:10,12 77:18 80:18 85:8,21 92:3,8,15 93:9,14, 17 97:10 102:22 103:1,5,17,19 104:21 119:12 125:16 126:24 127:1,3,14,21 128:4,23 129:9,13, 16 136:17,20 138:13 139:10 143:22,24 146:19 147:9,14 150:18,19 157:20 169:14

**Jones'** 19:22

**judgment** 161:12

**July** 26:2 35:14,17 55:9 63:20,23 64:5 66:5,13,22 75:15 76:19 77:6 80:6,7 81:23 82:9 89:24 90:15 91:18 93:4 96:16 105:13 108:15, 20 111:12 120:22 121:6 122:1 150:25

**June** 25:12,15 62:8,23,24 63:4,7 105:9,10,13

**justify** 14:21 38:23 39:3 163:4

K

**Katina** 61:17

**keeping** 94:17

**Kennedy** 128:9 138:24,25 139:5, 6,7,9,11 143:6,11,23,25 144:12 145:18,23 146:9,18

**kill** 110:3 122:25

**kind** 50:22 97:18 106:13 110:8 130:10 142:22 164:13 173:19

**knee** 108:1,2,3,7,18,19,25 111:12,17 121:7 122:23

**knew** 113:3 124:10

**knowledge** 76:15 83:10,19 88:19 131:19,20,22

L

**lack** 17:24

**larger** 122:20

**largest** 12:20

**lateral** 108:1

**law** 31:9 175:4

**lay** 134:2

**leave** 9:21 10:23 12:22 13:3,20 14:1,7,13,25 16:11,14,15 18:3 21:17 23:11,19 24:4,13 25:23 28:1 30:2,8 32:24 33:8,15,19,22, 24 36:11,14,16 38:19,21,23 39:1, 3 40:4,24 41:2,3 42:7,9 44:15 46:2,15,18 47:2,16,18 49:3,8 52:13 55:18,21 57:2,4 66:25 67:3 70:6 71:9,13 76:8,12 79:17 81:23 82:5,8,13 85:11 86:2 87:9 91:1,11 92:18,21 94:4,23 97:18 99:24 100:2 103:7 111:19 122:12 124:18 130:19,23 131:2,4,12 132:6,24 133:16 135:17,18,21 136:8 137:7,10,12,21,23,25 139:17,20,21,25 141:2 146:21 148:6,24 149:18 151:5,6,23 152:2,4,5,8 153:18,22 155:2,16 156:12 159:3 160:15 164:16,17 169:23 170:10

**left** 17:12,14,20 32:24

**legitimate** 152:4

**legs** 108:10 122:25

**lengthy** 9:14 168:1

**letter** 36:15 47:4,7,20 112:3 152:24 168:5,9

**letting** 112:17 140:10

**level** 21:9 22:19

**licensed** 70:5 76:22

**lieu** 169:6

**life** 28:17 126:14

**life-saving** 134:8

**light** 19:21 23:14,17,19,23 24:1 33:4 40:11,16,20 43:1,2 44:19,24 46:11,17 55:15,18,20 56:17,21 57:17,21 62:25 63:9,12,15,18,21, 24 64:4,8 70:16,24 71:2 78:6,8 90:13,16 91:15 99:10 110:19 111:1,2,3,5 112:3,9,10 143:3 151:7 154:18 163:21 164:1,14,23

**light-duty** 34:21 42:21 56:20

**limit** 23:18 24:5,6 44:11 100:12

**limitation** 23:25 25:25 51:23 98:10

**limited** 23:14,23 24:1,15 33:5 34:7,21 35:23 43:10,11 44:9 86:20 88:9 91:9 98:21 99:12 100:7 101:10 134:23 149:5

**limiting** 112:11

**lines** 134:3

**list** 12:23 13:9,12,16 14:2,4,9,16 15:9,23 16:11 17:2,4,6 18:2,4 23:6 45:9 46:5,7 58:1,3 71:12 100:7 131:11,21 132:1,3,14 142:19 151:14 155:17 158:3

**listed** 24:11,16 56:21

**listening** 119:4

**listing** 105:4

**lists** 54:24 153:17

**litigation** 144:19

**loader** 160:5

**long** 23:7,25 70:16 71:2 129:22 130:8,19,20 139:11 143:16 144:2

**long-term** 13:25 14:7,14 71:9

**longer** 51:19 122:3

**longest** 130:4,11 131:2 141:25

**looked** 15:2 25:5 64:4 106:12 124:3,6 161:9

**lose** 26:11

**loss** 96:10 119:21

**lot** 27:19 117:8 118:7,15 123:5,8

**loud** 129:8 139:4

**Loudermill** 13:7

**loved** 112:16

**low** 129:2

**lower** 105:22

**lowest** 15:23 29:7

**lungs** 108:11 122:25

M

**machine** 133:23

**machines** 134:13

**Madam** 129:11 185:25 186:1

**made** 37:9,13 54:6 69:1,23 79:15 124:11 125:4 174:7,14 176:13 180:4,7,20

**main** 122:11

**maintain** 134:11 150:6,7

**maintenance** 134:23

**majority** 115:18

**make** 16:7 30:19 32:2,5,22 37:3 40:9 49:22,25 56:23 77:22 81:4 86:23 88:12 113:1 125:13 144:22 148:7 149:25 150:3,5 155:17 171:6 175:10 177:10,14 178:10 179:15 180:24 181:6,14 183:3,19 184:3 185:19

**makes** 119:2 126:10

**making** 21:4 54:8 60:10,13 88:21,22 178:21

**male** 155:14

**malingering** 151:25 156:12

**man** 161:19

**manage** 107:23 112:23

**mandatory** 30:4

**manner** 22:16

**March** 35:4,7,8,9 63:14,17 65:12, 21 80:17 81:2,13,19 90:11,12 91:18 106:17,20 120:15,21

**mark** 18:6

**marked** 47:25 48:8,10,18,20,25 64:13 80:14 87:7 88:11,14 92:17

**mask** 60:9 61:4 110:1,7,14 126:7

**math** 117:2 157:7

**mathematical** 155:10

**matter** 9:16 47:9 72:14 115:10 168:15 178:14

**maxed** 59:12,14

**mayor** 14:20,22,24

**maze** 60:10

**meaning** 151:4

**means** 23:8 28:20 59:24 113:12 123:13

**mechanic** 134:21

**medical** 35:22 46:24,25 47:15 67:19 69:15,21 72:4,5,20 77:4 123:3,19,22 124:15 125:2 126:1 142:15 143:3 155:20 157:4 169:4, 5,7

**medically** 125:9

**medicine** 164:20

**meet** 10:4 170:2

**meeting** 169:11

**meetings** 13:2

**meets** 135:17

**member** 21:25 60:3 97:15 162:3

**member's** 22:12

**members** 9:13,19 15:11 19:7 27:15 29:24 60:2 72:8 73:18 97:14 125:18,20 126:23 138:10 143:21 144:8 147:7 149:20,24 150:1 155:14 159:3,7 160:7 163:14 174:24 176:8

**Memo** 31:17 45:16 61:18

**memorandum** 61:16

**mental** 33:12 118:8 137:20 166:3 168:14,16

**mentally** 137:14

**mention** 40:13

**mentioned** 16:9 144:18

**message** 29:15

**messages** 27:15 29:11,17

**met** 11:5 114:16 132:15 142:20 158:16

**methodologies** 88:23

**mic** 139:3

**microphone** 74:13 129:2

**mid** 120:11

**middle** 74:11 86:9 88:6

**million-dollar** 164:7

**mind** 92:5 118:18 163:19

**mindfulness** 88:23

**mine** 64:18 115:24 169:1

**minimum** 11:5

**minor** 122:17

**minute** 32:11 39:19 53:18 74:6 95:19 110:11

**minutes** 53:23 127:20,22

**missed** 9:25 13:12,17 25:17,22 26:15 55:5,24 58:4 111:16 116:1 132:24 148:18 175:25

**misses** 27:14

**missing** 26:10

**mistaken** 55:22

**model** 30:21

**modification** 42:21

**modified** 34:7 40:22 86:21 88:9 100:7,13

**modify** 44:12 49:22

**moment** 120:2

**Monday** 51:13

**money** 16:4 73:4 149:23

**monitor** 110:6 183:10 186:10

**monitoring** 185:22

**month** 52:18 75:22 82:6 89:3 96:22 116:21 117:6 144:2

**monthly** 107:11 170:8 184:1 186:12

**months** 12:11 27:1 34:19,20 52:22 66:2,24 68:18,22 81:21 82:4 91:22 107:25 108:4 109:20 119:9 120:19 121:3,17 131:4,5,6, 7,8 132:16 133:4 136:24,25 137:6 141:20

**morale** 12:21 15:7 163:13

**morning** 140:6

**motion** 165:3 170:20,22 171:6 172:2 173:6,11,15 176:9 177:10,

14 178:10,11 179:15,18,21,23 180:2,4,7,19,20,25 181:2,4,11,14, 19 182:1,16 183:1,3,14,16,19 184:10 185:17,19 186:15

**motions** 180:11,16

**motor** 133:24

**move** 61:14 85:18 112:12 117:23 171:21,23 173:8 175:16 181:16

**moved** 107:12

**moving** 117:23

**multi-page** 92:17

**multiple** 48:5 74:14 85:25

**multiples** 52:8

N

**Nakia** 33:23 40:5 42:4 47:6 49:4 74:17,22 75:3,11 80:4 85:20 90:9 92:14 96:2 97:15 107:9 110:18,19 152:14

**names** 13:1 16:21

**narrative** 20:8

**nature** 156:13 163:21 173:24

**neat** 134:15

**necessarily** 15:24

**needed** 107:11,19 110:24 115:13 125:9 126:3,4 140:5 163:12 168:2

**NFPA** 22:13,21,24

**Ninety** 185:10

**nods** 76:4

**NOFI** 16:17 20:5 25:8 91:2 113:6, 7,10,12 114:24 132:10,19

**NOFIS** 17:8

**non-medical** 151:5

**normal** 23:20 43:12 57:8

**noted** 46:5 57:1,6

**notes** 70:5 72:15

**notice** 20:3 24:22,24 25:5,9,24 67:9,14 90:25 105:3 113:13 115:16 125:5 132:8,17 140:14 143:1,13

**notified** 145:4 149:6

**November** 25:12,15 55:10 63:23 64:6 81:3 82:7,9 108:20 120:1 121:9,13 151:1

**number** 28:14 45:8 55:4,24 57:19,20 59:7,12,15 80:20 87:14 104:23 112:11 115:24 123:14 132:24 140:25 141:1 142:6 150:21 155:10 161:7 162:8

**numbered** 104:22

**numbers** 27:23 50:6 61:14 160:18 162:21,22 175:1

**nursing** 109:19

O

**object** 71:15 85:9

**objection** 9:6,9 19:2,14,17 34:2, 4 37:1 48:1,3 61:21 64:15,23

**objections** 19:5

**obligation** 84:21

**obligations** 30:24 83:23 84:11, 14,20

**observing** 54:7

**obtain** 77:3

**obtained** 149:7

**occupation** 75:6

**occupational** 20:10 26:5 31:24 67:24 148:9 165:1

**occurred** 165:14

**October** 39:25 40:5 139:14 152:24 153:1,4,6

**offer** 124:13 168:13,17

**offered** 124:1,17,18 125:2,23 166:16,18 167:18,22 168:20 169:20,24 170:5,14

**office** 17:13 57:7 78:2 167:3,24

**officer** 110:10 125:13

**one-day** 111:6

**one-third** 30:12

**ongoing** 105:25 108:3

**open** 17:5,7 65:5

**opened** 111:3

**opening** 8:5 9:11,14 10:15 54:6

**operate** 21:4 134:5

**operating** 164:6

**operation** 21:12 29:6 159:23 160:4,10

**operations** 134:9

**opinion** 66:15 67:12 70:13 78:24 89:17,25 94:13 173:25 174:2 177:5,7 178:7,19

**opportunities** 162:17

**opportunity** 31:22 100:7,12 147:23

**option** 167:19 169:4

**options** 125:5

**oranges** 160:20

**order** 8:8 25:6 32:20 49:11,15 74:19 133:25 135:4,9,12 148:12 149:23 150:6 171:11

**ordered** 34:6

**orders** 112:17

**original** 51:4

**Orleans** 18:19

**overlapping** 50:22

**oversight** 37:13

**overtime** 27:8,22 29:9,12 30:5

**overturn** 36:23 179:6

**overturned** 186:5

**overwhelming** 107:9,16

**owed** 72:7

**oxygen** 110:3

P

**P1** 49:7

**P2** 49:9

**package** 28:15,18 48:25

**packer** 45:24

**packet** 42:11

**pages** 33:22 64:20,23 101:15

**paid** 27:24 28:6,21 30:23 73:4

85:2,6 164:12

**pain** 105:20,22,25 120:9,13 122:15 162:15

**Pam** 19:2 41:20 61:13 64:15

**Pamela** 8:19

**paperwork** 33:7 39:4 58:16,19 141:4,16

**paragraph** 65:16

**parameter** 137:11 163:12

**parameters** 13:10 16:9 132:7 135:20 163:3 186:21

**Pardon** 49:20 70:19 141:11

**part** 16:7 56:16 60:12 76:24 86:7 87:17 88:6 95:17 105:3 134:16 158:5 171:21 184:11 185:3,5

**part-time** 94:21

**pass** 19:8

**passed** 77:13,17 109:13,18 111:18 179:8 184:10

**passes** 173:3

**passing** 97:3

**past** 24:7 47:2,16,18 117:23 161:17 175:8

**patient** 101:9 126:9

**patient's** 74:21 77:4 101:3

**patients** 75:14,17 79:20 83:22 84:14,17

**pattern** 68:16 69:2 149:17

**patterns** 24:4

**pay** 14:10,12 23:12 27:8 28:2,4 29:2 30:14 43:9 117:12 163:24 164:2

**paycheck** 43:6

**paying** 164:10

**pays** 28:13

**PDC** 24:24 31:15 32:2 58:10 115:12 124:23,24,25 125:24 145:2 168:5,8,11

**PDCS** 168:12

**PE** 108:9,10

**pending** 149:7

**people** 13:15 15:11 16:16 17:19, 20 23:16 24:10 29:13,16 30:7 45:8 58:4 70:16,23 71:8,12 76:25 79:21 108:9 115:18,24 116:1 117:24 118:7,8,19,21 119:2,4,9 122:11 124:18,20 126:13 131:11 132:5 142:19 143:7 148:13 158:3 175:22,25

**percent** 9:25 13:11,17 16:10 18:7 22:7 25:21 29:20 30:14 31:4 36:16 72:24 83:17,22 84:3,16 148:18 150:11,21 157:9,10

**percentage** 25:20,21 163:8

**percentages** 162:23 163:11

**perform** 22:13 23:1,2,21 26:9,19 32:7,22,23 33:3 57:9 60:8 61:3 82:21,24 84:25 134:7 135:4,7,12, 14,15,23,24 136:9,25 137:3,13, 15,18,19 156:19,25 157:6,14

**performed** 136:6

**performing** 24:11 43:2,7,8,10 44:5 57:11 85:6 151:7 164:11,24

**performs** 136:22 137:10

**period** 16:18 27:25 35:1 44:4 53:2 55:9,15 56:1,15 57:14 64:4 68:8 75:23 76:19 77:6,11,12 78:12 82:2 83:12 84:1,15 93:11, 18 97:19,24 105:14,17,19 116:4, 14,20 119:22 130:4,7,16 131:2,8 132:5 139:15,16 141:25 142:16 147:2,3 148:19,23 149:13,16 150:25 157:11 186:12

**periodic** 52:14 106:7

**periods** 54:25 55:6 70:24 130:19, 23 131:7 133:16 136:23 137:2,5, 17 141:20

**Perkins** 14:22

**permanent** 104:9

**permission** 76:2 133:25

**person** 14:11,13 17:16 23:9,11, 18 43:1 44:19 71:3 118:6,16,20 124:22 155:7

**personal** 18:22 37:23 70:2 110:17 164:15

**personally** 166:14

**personnel** 13:9 17:4 29:8,12

**Ph.d.** 39:12

**phone** 140:4 145:3

**physical** 57:3 136:22 137:14,20 151:19

**physically** 137:13

**physician** 34:9 109:1 142:14 145:12

**pick** 164:19

**pictures** 119:7

**piggyback** 162:7

**Pinkston** 170:11

**place** 79:4 95:18 113:8 152:15, 16,19 154:5,8,12 184:4 186:18

**Plaintiff** 50:7,8,9,10 51:11

**plaintiff's** 153:19

**plan** 40:11,16 41:8,12 42:24 47:12 79:4 86:25 87:18,22 88:17, 24 89:8 95:18 99:7 112:5 113:18 152:11,15,21 153:8,10,11 154:4, 6,11 177:20 178:1 186:16

**playing** 175:21

**point** 8:8 30:2 33:14 49:11 53:17 54:8 56:19 57:15 60:22 61:2 75:22 107:22 122:7 125:24 126:6 148:17 152:13 170:17 171:11

**pointed** 162:11

**Police** 20:22

**policies** 38:19 85:12

**policy** 21:15,18,19,23 24:16 26:23 33:15 39:5 44:10,15,23 52:15 130:20 135:17,18 137:22 151:23

**position** 10:5,12 11:23 14:6,8,15 15:18,20 17:22 22:15 23:6,10 32:24 35:25 68:9 83:8 99:8 104:3, 6,9 121:20 128:18 129:20 175:16 177:10

**positions** 17:23

**positive** 124:21

**possibly** 68:18

**post** 153:24

**posttraumatic** 76:6

**power** 125:13

**practice** 23:17 76:24 85:13

**pre-disciplinary** 31:10 67:9,14 115:21

**precedence** 163:14

**preceding** 83:12

**predict** 22:8 36:4 70:10 175:8,9

**predictability** 38:16 72:17

**predictable** 21:24 22:3 26:22,25 27:2 36:1 68:13 174:17 175:7,13, 23 176:1

**predictably** 174:22

**predicted** 176:5

**predicting** 161:15 175:2

**prediction** 68:15 161:16,19 175:10 176:12

**predisciplinary** 24:22 25:9 57:25 115:7 140:20 142:23

**prefer** 49:25

**premises** 134:15

**prepared** 83:14

**present** 11:16 31:20 35:23 54:5 115:12,14 120:8,18 121:17,24 150:4,6

**presented** 37:25 51:22 52:25 61:16 78:1

**presenting** 91:13

**pretty** 21:3 24:12 26:10,13 60:16 148:4 164:21

**prevent** 65:19 66:18

**prevented** 123:14

**previous** 64:2 69:3 91:14

**previously** 50:6,9 80:13 101:14 103:20

**Primarily** 30:6

**prior** 18:8 46:23 67:19 80:10 82:14 96:22 97:2,5 105:2 113:14 121:23 167:11 174:2 177:20 178:2

**private** 76:23 85:13

**pro** 164:14

**problem** 13:19 117:25 118:1,20, 21

**problems** 77:1 108:3 122:5

**procedural** 13:5

**proceeded** 57:24

**process** 79:14 100:6 114:25 145:13 168:8

**produce** 157:25 158:1,2

**produced** 52:7 104:13

**productive** 22:16

**professional** 46:25 47:15 70:12 74:20 76:23 85:13 142:15 155:7, 20

**program** 168:14,17 178:21 183:9,24 185:21 186:7,9

**programs** 166:10,15

**progress** 88:20

**progressed** 115:20

**progression** 183:11

**progressive** 183:23 185:21 186:9,16

**promote** 163:23

**promoted** 12:10 14:1,8 23:10 104:7 175:14

**promotion** 163:24

**proof** 158:6

**protracted** 132:5

**provide** 12:23 13:7 14:2 44:11 52:13 83:21 84:22 115:2 152:11 159:2

**provided** 15:3,9 17:6 20:4 36:15 41:15 42:3 46:6 47:5 51:16 52:4, 6,9 68:25 69:12 105:1,2 156:22 158:22

**provider** 151:21 152:6 186:21

**providing** 21:7

**provision** 186:20

**prudent** 30:9

**psychiatrist** 33:16 39:6 41:11,14 70:5

**psychological** 66:18 77:1

**psychologist** 33:17 39:6,9 40:4 41:2 49:2 69:18,20

**psychotherapy** 88:23

**PTH** 125:24

**PTSD** 33:12,16 39:6 76:25 93:2,8 94:9,15 95:7,8 97:20,25 106:25 108:13 165:17 166:2,10

**public** 159:11

**pull** 15:22

**pulled** 12:25 13:9 132:5

**pump** 134:5

**pumping** 21:7 134:9

**punishment** 179:10

**punitive** 185:1

**purporting** 72:4

**purpose** 140:23,24

**pursue** 125:4

**put** 14:3 22:25 23:3 26:16 27:14 29:23 30:1 34:9 37:4 60:9 61:4 98:10 107:16 110:7,14,15,19 112:2,7,10,21 126:7 152:18 154:12 155:25 178:20 183:9

**puts** 29:11

Q

**qualification** 20:11

**qualifications** 10:4,11 16:6 22:17 26:5 31:24 67:24 148:9 156:20 165:1

**qualified** 15:19,20 23:5 82:24

**question** 37:12 41:25 47:14 50:14,19 68:4 79:24 84:9 99:24 100:9 102:6 111:10 112:2 126:18 135:8 136:7,11 137:16 145:16 146:20,21 169:16,17

**questioning** 71:16

**questions** 13:5 38:13 54:10,16 69:6 72:3 73:12,18 76:12 80:3 85:19,22 92:2 97:9,12 99:22 102:20 119:14,21 125:15,21 126:16,24 127:11,13 132:22 133:11 136:14,21 138:4,8,10 143:7,19,22 144:9 146:6

**quick** 157:7

**quid** 164:13

**quo** 164:14

**quote** 56:4

R

**ranged** 75:21

**rank** 27:16,17 56:5 138:23

**rate** 14:12 26:4,21 28:2,7 157:9

**raw** 160:17

**re-evaluate** 88:14

**reached** 170:7

**reaction** 77:20,24 88:20,24 94:1, 11,18,20 95:5,20 111:23 152:18 154:1,2

**reading** 68:1

**ready** 8:3 113:8 114:11,13,15,21 128:13 174:20

**real** 175:1

**reason** 12:17 18:24 33:9 35:22 41:5 67:22 68:6,12 91:24 93:1,7, 22 94:8 105:14 139:18 141:3 161:18 167:15 168:25 173:20

**reasonable** 24:3

**reasoning** 162:12

**reasons** 15:6 29:22 69:22 137:20 151:20 158:14 166:1

**rebuttal** 156:3

**recall** 33:6 71:4 105:10 131:2 133:3 140:3 142:1 143:13

**receive** 28:3 29:17

**received** 28:21 29:2 58:16,19 90:24 125:5 132:10,19 170:13

**receiving** 23:11 27:4,6 43:11

**recess** 53:18,22

**recognize** 55:18,19,20 163:20

**recognizing** 149:10

**recommend** 77:22

**recommendation** 40:10 42:22 78:7 79:9,15 81:1,12,18 82:1 91:4 99:3

**recommended** 67:21 81:22 90:12,16,20 91:8,15

**record** 54:3,4 75:1 103:12 113:11 128:2,18 159:12

**recordings** 119:7

**records** 25:23 71:6 72:12 149:8 156:22

**recovery** 86:24 88:12 143:3

**recurring** 122:15

**reduce** 179:1,4 183:3

**reentry** 32:21 56:20,25 57:3,6,8 59:8,13,14,19 60:3,13,21,25 61:2 62:1 64:10

**Reese** 9:18 11:20,24,25 12:2 37:10 38:9,11 52:12 54:17,21 59:2,17,20,25 60:23 61:17,23,25 69:13,15 72:1,3 110:13 115:6,11 128:24 131:10 139:23 148:4 149:9 150:4 154:23 156:3 157:18 158:24 167:21 168:21 169:12

**reevaluate** 87:1,10

**reevaluated** 95:14

**refer** 84:18,22

**reference** 31:13 50:14,19

**referred** 18:16 110:17

**referring** 97:17

**refill** 134:13,17

**reflect** 27:24

**refresher** 151:7

**refreshers** 155:24

**regard** 166:25

**regular** 21:24 22:3 26:22 36:1,4, 5,19 68:13 78:25 79:5 83:7 89:5 102:14 124:16 125:3 126:1 135:3, 6 174:17 175:6,12

**regularity** 75:19

**regularly** 22:9 161:15 174:22

**rehabilitated** 58:15

**rehabilitation** 58:18 71:10

**reinstated** 155:19

**related** 33:12 76:7 77:12,16 93:2, 8 96:18 97:2,5,6,22,25 98:7 159:2

**relationship** 18:11 124:8

**release** 108:1 109:3 128:6 138:11 144:3 146:16 147:8

**released** 66:16 91:18 99:15,18 102:25 103:6 107:21,22 108:5,24 109:8,12 111:11 114:8 115:9 122:2 127:8 136:2,3 142:15 145:5,6,10 154:14

**releasing** 87:15 89:5 99:12 128:7

**relevance** 37:1 85:9

**relevant** 37:6,15 85:14 156:9

**reload** 134:12

**rely** 150:1

**remain** 31:3 67:23 68:7

**remainder** 120:16 121:14

**remained** 66:7

**remaining** 100:4

**reminded** 110:2

**removed** 105:16

**removing** 157:8

**rendered** 40:5 47:18

**renumbered** 51:11

**repair** 134:21

**repeat** 28:24 100:9

**rephrase** 68:4 137:16

**report** 39:17 45:15 55:17 83:21 160:15

**reported** 78:21

**reporter** 129:4,10,11 138:23 185:25 186:1

**reporting** 22:12

**reports** 30:12 68:2 83:15

**represented** 8:18

**request** 78:9 147:21

**require** 21:24

**required** 20:10 26:23 29:19 36:19 38:22 67:16 70:14 83:8 133:22 134:2,5,7,11,20,22,25 136:8 156:20

**requirement** 36:20

**requirements** 32:4 36:8 157:1

**reserved** 23:15

**residual** 106:13

**resign** 167:18,23 168:4

**resignation** 168:9 169:8

**resigned** 17:15,17 167:3,9,11, 17,23 168:11

**respect** 14:18 15:14 22:23 72:3 156:13

**respective** 159:24

**responders** 166:4,10

**response** 78:3

**responsibilities** 15:14 30:25 163:16

**responsibility** 15:4,5 22:5 72:7

**responsibly** 16:8

**rest** 111:1 120:24 147:16

**restart** 53:23 60:24

**restriction** 24:16

**restrictions** 34:8 98:11,12,17, 18,23 99:13,14,17 100:8,13

**result** 112:3

**retire** 124:14,16,24 125:1,9 126:3 170:15

**retired** 17:15 124:21

**retirement** 123:19,22 124:15 125:3,23 126:1 168:7 169:4,5

**retraining** 26:17 56:25 109:10, 11,22,23 110:9 111:20,23

**retroactive** 186:24

**return** 35:24 41:8 51:12 58:18 65:15,19,25 66:18 67:5,21 70:11 78:10,15 79:10 81:18 86:10,11, 13,19 87:22 88:7 90:1,20 91:19 95:10,11 98:20 99:4,7 101:9 102:8 108:14,24 111:11,20 112:5 114:21 115:1,3 121:22 127:8,23 143:25 149:13,15 152:12,20 154:14 155:21,23 174:4 176:12

**returned** 32:15,16 66:22 70:9 89:18 91:21 105:5 108:23 109:17 115:9 120:11,21 133:16 136:5

143:14,17 154:17

**returning** 50:24,25 51:3,5 109:14,15 114:3,4

**revealed** 10:2

**revealing** 79:19

**reverse** 61:13

**reversed** 183:23 185:20

**review** 39:20 46:25 47:16,21

**reviewed** 42:6

**reviewing** 25:23 35:21 57:5 72:15

**riding** 23:8 27:12

**Rights** 11:10 19:23

**Robert** 39:11 40:9

**Robertson** 54:4

**role** 23:4 60:5

**roll** 172:10 182:3

**room** 110:5 168:13

**roster** 18:3

**rosters** 175:18

**rotate** 43:23

**rotation** 43:20

**rotator** 106:10

**rough** 140:24

**roughly** 17:12

**row** 120:1

**rule** 16:25 155:18 156:1 158:15

**run** 30:18 176:20

**running** 60:18

S

**safe** 22:15

**safely** 21:5,6

**safety** 12:25 150:8

**salaries** 22:8

**salary** 27:4 28:10,25 30:15

**salvage** 134:8

**sane** 119:10

**satisfy** 10:10 22:23 26:4 35:25 36:8 67:23 68:8

**satisfying** 83:23 84:14 148:8

**scene** 21:5 134:8

**scheduled** 107:25 108:4 113:24 124:23,25

**school** 23:22

**Scoggins** 152:8,17

**score** 104:7

**scratched** 34:9

**Scroggins** 8:16 9:22 10:20 12:8, 15 13:13 15:20 16:20 17:2 18:1,9 20:4 24:23 25:6,13 27:3,24 31:19 32:13 33:2 34:25 35:7,16,23 36:10,24 38:14,25 40:10,14,20 41:17 42:5 44:2 46:25 47:1,6,16 49:5 54:25 55:15 62:24 65:8,15 67:4,13,17 69:22 73:10 75:13,17, 25 76:2,3,5,9,20 77:8,23 78:3,4,9, 14,21,24 79:5,8,9,13,18 80:1,7 81:1,9 82:5,20 83:11 86:16,23 87:7,10 88:1,19 89:11,17,21 90:17,24 92:22 94:4,13,21 95:9, 13 96:5,16 97:1 100:8,13 103:8,9, 12,14,15,18,20 119:14,18,20 123:11 125:21 126:2 127:4,18 129:25 148:14 149:12 150:14,23 151:19 152:23 153:4,20,24 154:13,16 155:19 156:5,16,23 158:4 161:13 168:20 169:19,21

**Scroggins'** 96:10

**searching** 60:11

**seat** 138:22

**seconded** 182:16

**section** 21:22 22:11

**send** 29:14 32:21 39:8,14 55:21 112:22

**sending** 156:14

**seniority** 104:7

**sense** 30:20

**sentence** 65:17

**separate** 170:24 171:17 180:11, 16

**September** 56:24 57:1,15 61:25

63:8 105:18

**sequence** 151:17 162:6,16 163:2

**sequential** 132:16 137:6

**Sergeant** 172:11 182:4

**series** 107:5

**service** 17:7,13,23 20:22 22:14 23:6 30:1,17 84:22 117:18 163:20

**set** 16:5,9 22:17 31:8 32:8 37:22 45:2 62:8,23 63:2 64:5 108:5 109:6 115:23 148:9 156:5 163:3, 12,14 175:18

**settled** 144:19

**Seventeen** 24:19

**severe** 94:1,18

**SFD** 20:5 21:15 31:17 61:18

**Sgt** 41:23 45:18 50:13,18 51:15 52:16 53:6 59:6,11 60:20 61:5,10, 22 97:16 102:8,15 125:22 126:15, 20 145:15,21 146:3 165:7 166:19 167:16 168:18 169:9 170:23 172:12 173:18 174:23 177:18,25 178:6,17 179:3,12 180:3 182:5 183:2,8,17 185:7,18 186:8

**shared** 79:8

**sheet** 26:24 33:20 98:19

**sheets** 33:9

**Sheriff** 14:23

**shift** 29:6,7,8,10,17 43:17 56:6 79:6 102:14 105:11 113:18 114:4, 22 116:2 117:7 175:18

**shifts** 14:14 23:9 36:4 43:13 55:5,11 78:16 79:1 87:23 89:6 105:6 116:16 120:5

**shiftwork** 79:11 127:8

**shop** 112:16 164:8

**short** 27:12 53:2,14 127:17

**shortage** 30:6

**shoulder** 105:22 120:9,12 122:15 123:10 162:15

**show** 64:12 80:13 87:6 100:20 119:7 135:13 158:16 159:25 160:21 161:13

**showed** 18:19

**showing** 30:16 42:17 157:5 161:14

**shows** 55:10,11 56:14 148:20 150:23

**Shreveport** 9:19 11:25 12:5 13:6 15:12,15 16:6 20:21 21:19,23,25 23:13 27:13 30:10 31:2 72:9 73:5 82:23 103:21,24 123:4,16 125:14 128:21 129:18,23 130:18 139:1,7, 12 149:20,22

**sic** 8:20 117:5

**sick** 9:20 10:23 12:22 13:3,20,25 14:7,13,25 16:11,14,15 18:3 21:17 23:11,18 24:4,10,13 25:23 28:1 30:2,8 32:24 33:8,14,18,22, 24 36:11,14,16 38:19,21 39:1,3 40:4,24 41:2,3 42:6,9 44:15 46:2, 15,18 47:1,2,16,18 49:3,8 52:13 55:18,21 67:3 70:6 71:9,13 76:8, 12 79:17 85:11 86:2 87:9 91:1,11 92:18,21 94:4,22 97:18 99:24 100:2 130:19,23 131:2,12 132:6, 24 135:17,18,20 136:7 137:11,21, 23,25 139:21,25 141:2 148:6,24 151:23 152:2,3,5,7 153:18,22 155:2,16 159:3 160:15 164:16,17 170:9 175:23 176:1

**sickness** 131:3

**side** 23:21 164:15

**sidebars** 54:9

**sign** 81:7

**signed** 14:2 20:22 31:9 33:19,23 35:4,13 42:4 49:4 80:15 86:3

**significant** 34:25 66:17 149:16 155:16

**silenced** 110:6

**similar** 79:21 144:13

**simple** 9:16 71:22

**simply** 10:6 19:20 54:7 70:1 84:9 150:12 151:3 156:8 157:5,11,14 177:11

**single** 44:4

**sir** 8:10 9:2 11:13 49:13 53:11 128:15 138:16,21 139:4 147:12 171:13 180:14

**sister** 109:17

**sisters** 119:8

**sit** 47:14 73:9 74:10

**sitting** 43:6 119:3 164:8 176:8 177:9

**situation** 43:5 69:1 117:19 151:24 160:2

**situations** 82:12

**sixty** 116:24

**skills** 26:11 122:2,4 150:7

**Skip** 170:11

**slash** 86:20

**slot** 27:22

**SMITH** 61:8

**snapshot** 155:12

**Sneed** 71:5

**social** 70:5 75:8,10 76:23

**solely** 69:1

**somebody's** 126:8

**someone's** 30:15

**sounds** 146:16

**sources** 78:22

**spain** 130:11

**span** 58:13

**speak** 46:15 96:19 118:18,22,24 119:2 129:8 139:4

**speaking** 64:2 112:25 122:20

**special** 133:25

**specific** 41:12 119:22 151:11

**speculate** 142:9

**spend** 16:7

**spending** 15:17

**spent** 149:24

**spike** 37:5

**spoken** 124:9

**spouse** 118:14

**squarely** 151:22

**staff** 57:1

**stand** 73:9 134:25

**standalone** 94:4
**standard** 22:21
**standards** 11:5 22:24 37:23
**start** 8:4 13:14 60:21 61:1 105:9 152:16
**started** 17:1,3,9 28:5 29:10,22 61:6 107:14
**starting** 51:21 112:11
**starts** 51:20
**state** 11:22 75:1 100:4 103:12 128:17 138:22 162:21
**stated** 20:8 25:4 33:2 141:4 155:21 162:18
**statement** 9:15 19:22 41:15 162:4 176:11
**statements** 8:6 9:11 10:15 54:6 147:19,24 148:1
**states** 21:22 33:15 39:5 135:18 163:1,8
**stating** 41:16 87:10 115:3 165:13
**station** 130:12 134:14,25
**stations** 130:9
**status** 40:17 86:8 100:5 101:3
**statutes** 19:21,25
**stay** 72:18
**stayed** 112:15
**staying** 107:24
**stem** 118:13
**stepped** 110:11
**steward** 16:3 27:18 30:9 73:3
**story** 97:1
**stress** 76:7 106:21 107:8,23 122:2,8,9,11,13 131:4,6 137:7,10 146:21 153:25 162:16 169:23
**strictly** 155:9
**striking** 8:20
**strong** 118:5
**struggling** 119:5
**stuff** 109:24 117:21 124:9 164:4,15
**subjected** 137:24 142:22
**submit** 38:22
**submitted** 39:1 51:10,25 87:21
**subpoenaed** 128:5
**subsequent** 52:6
**successful** 30:21
**suffered** 106:7 111:23
**sufficient** 38:23 39:5
**suffocate** 110:7
**suggest** 158:5 162:1 167:13
**suggested** 107:9 113:4 152:8 153:6 161:10 167:19
**suggesting** 58:17 184:25
**suggestion** 112:1
**superior** 184:2
**supervised** 186:11
**supervision** 184:2 185:23
**supervisor** 100:1 186:12
**supplies** 164:8
**supported** 151:21
**supposed** 170:7,12
**surgeries** 165:20
**surgery** 105:15 108:1,4,7,18,19,25 111:12,17 121:7 122:23 162:15
**survey** 29:23,25
**survive** 118:5
**suspension** 185:21 186:4,6
**sustain** 38:4 85:17
**Sustained** 71:18
**symptoms** 66:18 108:15

T

**T-SHIRTS** 18:15
**table** 74:11
**takes** 68:22
**taking** 68:19 159:19 184:3
**talk** 109:24 118:7,9,12,17 124:22 127:17 152:19 160:5
**talked** 118:25
**talking** 55:23 59:19 91:12 113:16 117:21 145:8
**TALKOVERS** 178:8
**tallying** 133:1
**tanks** 134:14
**task** 22:13,24 57:3
**tax** 149:23
**taxpayer** 16:4 27:18 30:10 31:5
**taxpayers** 15:5,17 16:8 30:14 31:1 73:4 149:22
**team** 33:10
**tear** 131:5 135:21
**technical** 129:1
**telephone** 134:25
**telling** 118:20 140:5,17 180:19
**ten** 46:3,5 116:16
**tend** 30:18
**tender** 38:6 59:4 73:21 119:15
**tenure** 71:3
**term** 17:24 70:16 71:2
**terminate** 38:14 73:2,10 124:5
**terminated** 10:6,8 12:7,14 32:9,12 46:21 118:2 124:2,3,15 154:21 167:10 170:15 186:25
**terminating** 46:23
**termination** 8:13,17 10:19,22,24 11:1 12:18 36:10,24 40:19 41:7 47:19 57:15,16 58:10 83:12 114:20 150:14 151:2 157:16 165:25 166:21 167:11 168:23 169:7 171:8 173:8,12,21 174:3 177:7,20 178:2,22 179:1 180:5,9 181:16,21 182:2 183:4,7,22 184:12 185:20 186:5
**terms** 43:1 44:9 45:8 70:22 79:17 108:12 114:25 116:3
**test** 104:7 125:12
**testified** 45:9 52:12 148:4,14,21 149:19 150:5,22 153:2,8 154:24 155:22 156:4 158:24 168:3

**testifies** 53:13

**testify** 53:5 169:20

**testimony** 69:11 91:3 106:24 121:19 146:22 152:14 154:7 158:24 165:11,18 169:18

**therapist** 33:23 34:25 84:6,10,23 85:3,6

**thing** 13:6,10 94:17 95:13 100:4 106:19 119:2 155:14 157:21,23 160:16 163:9 164:18 167:12 185:6,8 186:17

**things** 14:19,22 50:23 106:1 114:25 118:10 119:8,10 153:15 163:21 168:1 185:13

**Thomas** 33:23 34:14,24 35:4,14 40:6,11 41:16 42:4 47:6 49:4 52:5 53:5 67:3,8,12 72:16 74:18,20,22, 25 75:3,5,11,13 80:3,4,6 82:19 85:12,20,23 90:4,9,11 92:14,16 96:2,4 97:11,15 100:20,24 101:11,16,22 102:3 103:6 111:24 112:2,4 113:17,22 115:3 127:7 153:1,7,8

**Thomas'** 39:15 42:20 106:24 152:14 153:18 154:7

**Thompson** 9:5 53:8,12 77:14 83:2 144:10 159:8,13 171:5,22 172:4,19,20 173:7,12 177:13 179:14 180:6,17 181:15,20 182:21,22

**thought** 133:1

**thyroid** 105:15,16 162:14

**tidy** 134:15

**tied** 144:19 145:8 170:13

**till** 63:4

**tiller** 133:23

**time** 10:24 13:24 14:10 15:11 16:24 17:4,15 19:8 24:3 25:7,8 27:25 28:1,4 29:2,20 30:3,12 31:4 32:12 33:22 35:1 40:12,19 41:7 44:4 47:19 53:2 55:5,9,16 56:1,15 57:8,14 64:1,3,9 65:20,25 68:8 70:24 74:15 75:23 76:18 77:11,12 78:12 80:11 82:2 83:11,17,18,22 84:1,3,15,16 87:12,21 89:14,23, 25 91:8,12,17 93:2,10,18,23 96:11 97:5 98:25 99:9 104:3 105:17 106:7,11 107:18 112:20 113:18 114:2,7,12,16,20 119:6,22 122:12 125:9,11 126:4 127:16 130:4,7,11,16 132:5 135:25 136:24 137:2,5,17 138:17 139:16 140:8,10 141:9,25 142:16 147:2, 3,13 149:4,16 150:25 154:12,20 155:12 163:1,3,9 164:3 169:2,22 175:16,20

**timely** 110:15

**times** 25:24 27:3,20 29:25 57:12 76:10 83:13 91:21 108:2 111:2 141:19 156:24 160:19 174:8,15

**Tisby** 168:22

**title** 99:6

**today** 29:16 73:9 161:23

**told** 112:25 113:2 115:11 142:20 144:15

**Tom** 14:24

**top** 13:12 17:2 18:1 86:5 88:2 118:4,11 158:7,9

**torn** 106:10 123:10 137:7,9

**total** 45:10,11,12 58:5 105:5 132:24 133:2 140:25 141:1,15 142:6

**totaled** 151:15

**tough** 130:10

**train** 57:1

**training** 17:16 32:17,18,22 56:25 60:2 61:1 64:1 99:9 110:10 125:12 150:7

**transition** 40:11,16 42:24 47:11, 12 64:1 78:14,25 79:10 87:17,22 91:10 95:18 99:7 107:12 110:23 112:5,20 113:1,8,17 152:15 153:8,10,11 154:4,6,11

**transitioned** 41:17 79:5

**transitioning** 58:20 154:19

**traumatic** 153:25

**treat** 76:25 84:6 111:24

**treated** 80:25 112:6

**treating** 77:7,10 80:7,10 81:9,10 106:24

**treatment** 76:1,5 82:14,17 83:21 96:13,18 113:19

**trickle** 163:16

**triggered** 110:8

**trouble** 110:9

**truck** 15:25 21:4,7,12 60:12,19 146:1 164:7

**true** 58:4 66:24 70:15 71:8 176:22

**turn** 20:13 21:13 24:21 25:11 35:3 39:4 43:22 60:14 61:3 66:9 81:16 93:3,10

**turned** 110:3,6

**Twenty** 25:2

**two-day** 105:18

**two-story** 105:23 106:2,3

**two-thirds** 28:19 29:2

**type** 23:14 33:4,12 90:12,16 91:10,15 149:5

**types** 85:10

**typically** 24:9 27:15 29:7,11

**U**

**Uh-huh** 43:18 142:11

**unable** 62:1 83:20 84:22 86:11, 13,19 88:7 98:20 101:9 136:25 137:3,9,18 149:11 157:14

**unacceptable** 150:12

**unanimously** 173:3 179:9

**understand** 31:6 38:4 44:10 59:23 76:22 83:3 84:9 102:16 117:24 148:16 159:16

**understanding** 97:18 99:2 108:13 132:13 165:16 167:8

**understands** 113:10

**understood** 146:22

**unfit** 47:8,9,18 154:25

**unnecessary** 48:20

**unwilling** 157:14

**updated** 100:6,12,14 101:19

**upheld** 157:17 171:9 173:9,12 177:8 180:9 181:17,21 182:2

**uphold** 150:13 179:1 180:4 184:12

**usage** 36:17 47:2,5,17 87:9 139:25 151:23 155:3,16

**usual** 99:1

**V**

**vacancy** 13:24 14:5

**vacation** 109:9,12,13,16 111:15, 16 151:6 164:3 175:19

**varies** 28:14

**versus** 126:13 164:7

**Vice** 173:2

**VICE-CHAIRMAN** 8:9,14,24 9:3, 8 10:13 11:3,9,14,21 19:13 34:1,5 38:3,7 48:6,11,15,21 49:12 53:10, 15,21 54:2,18 59:16,22 62:9,13, 17 69:7 71:17,24 73:13,17,22 74:7,12,23 75:4,9 85:16 90:5 92:6,12 93:12 95:25 97:13 99:21 102:12,19,24 103:3,10,16 119:16 125:19 126:22 127:12,19 128:1, 11,16,22 129:7 136:15 138:5,9, 15,20 139:2 143:9,20 144:7 146:5,13 147:6,11,17,22 150:17 158:19 159:4,10 160:13 163:18 166:24 167:7 170:16 171:1,12,18 172:1,8,14,18,22 173:1,10 174:6, 13 175:3 176:4,14,18,23 177:4,23 178:9,24 179:5,16,22 180:13,23 181:3,7,12,18,24 182:7,11,15,19, 24 183:15 184:5,14,19,23 185:4, 11,16,24 186:3

**violation** 11:11

**vision** 28:17

**visit** 113:24

**voiced** 169:10 173:19

**void** 27:9

**vote** 164:21 171:20 172:10 182:4 184:18

**votes** 173:2 182:25

**W**

**wages** 30:11

**wait** 64:22 132:22

**waiting** 74:21

**waived** 17:25

**Walker** 166:17 172:15,16 174:11 176:2 178:4 179:20 180:1 181:22 182:1,3,12,13,17 183:6,13 185:14

**wanted** 12:22 110:22 112:7,8 144:21 148:5

**wanting** 91:5

**Warfields** 140:5,11

**warranted** 178:14 179:11

**watch** 15:5 135:1

**watched** 15:8

**watching** 119:11

**Watson** 99:23 100:17 102:1 146:7,11 162:5 167:5 172:6,10, 23,24 174:1,9 176:10,16,21 177:1 182:8,9 185:9 186:19

**weather** 161:18

**wedding** 18:18

**week** 34:11 41:18 42:20 43:14, 16,23 44:3,4 49:5 51:13 52:21,23 58:20 67:6 87:12 90:21 102:14 114:3,10 115:4 116:4,9,10,23 117:5 153:12,13 175:21

**weekend** 161:4 162:20

**weekends** 163:7

**weekly** 75:21 107:10

**weeks** 43:24 114:10 116:13,23 120:8

**wheel** 15:25 60:14 61:3

**Whitehorn** 14:23

**window** 105:24 106:2,3 123:6

**windows** 18:18

**wise** 27:18

**wisely** 15:17 31:5

**witnesses** 74:14,19 127:16 128:5 147:15

**word** 8:1,20 183:18

**words** 117:4 142:6,12

**work** 10:25 13:12,17 17:22 18:15 21:2 22:9 25:19,21 26:10,15,18, 19 30:16,22 32:13 34:10 38:17 43:3,14,15,23,24 49:5 51:12 55:24 56:6,7,22 58:14,19 66:16, 19 67:5 72:18,19,25 76:7 77:23 78:5,10 79:6,10 81:13,22 82:2 83:11,21 85:11 86:8,10,11,12,13, 14,19,20 88:7,8 89:18 90:1 91:6 94:14,17 95:10,11 98:10,11,14, 18,22 99:4 100:5 101:3,9 102:14 107:13,15,19,20,24 108:2,12,14, 20,24 110:23 111:12,20 112:5,12, 23 113:2,18 114:4,8,22 115:1,3,9 116:2,4,11,16 117:7,22 118:11 123:15 125:12 126:5 134:8 135:13,24 142:15 143:2,14,25 145:10,22,24 148:18,24 150:12, 24 151:3 152:9,10,20 153:7 154:14,18 155:8,22,23 161:14 164:10,23 170:4 174:4,20 183:12

**work-related** 146:8 165:22

**work-week** 43:13

**workday** 43:12 98:24

**worked** 112:19 121:2 130:2,5,8 152:10

**worker** 75:8,10 76:23

**Worker's** 135:22 136:1 145:19

**workers** 70:5

**working** 10:1 36:4 40:12,17,20 41:7,11,14 44:2,3 46:11 55:15 56:1,2,9,11,12,16 57:17,21 78:15, 25 87:11 94:21 98:25 112:16 113:3,17 116:15,22 117:4,6,7,8, 10 121:25 133:19 139:3 143:3 153:2,3,9 154:18

**Workmen's** 145:17

**workplace** 17:10,21 95:5

**worse** 106:1

**written** 16:17

**wrong** 161:21

**wrote** 66:20

**Y**

**y'all** 13:3 14:2 119:7 125:10 170:1

**year** 12:24 15:10 27:2 28:20,25

58:5,13,14 70:25 83:12 106:4 120:25 121:6,10,14,25 122:22 130:12 142:2,16 148:19,22 157:11 160:15 161:3 186:13

**years** 9:24 13:11,16 15:8 16:10 17:13 26:11,14 28:10 29:2 41:11, 14 68:21 69:3 121:23 123:10 129:24 130:11 139:13 162:13