UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FELICIA SCROGGINS                         CIVIL ACTION NO. 23-1549

VERSUS                                    JUDGE S. MAURICE HICKS, JR

CITY OF SHREVEPORT                 MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 23) filed by Defendant, the City of Shreveport ("the City"). The City submits that *pro se* Plaintiff Felicia Scroggins ("Scroggins") cannot produce evidence to establish any viable claims for relief; thus, the City is entitled to judgment as a matter of law. Scroggins opposed the Motion for Summary Judgment and the City replied. See Record Documents 27 & 28. For the reasons set forth below, the City's Motion for Summary Judgment is **GRANTED** and all of Scroggins's claims are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Scroggins, an African American female, began employment with the Shreveport Fire Department ("SFD") on May 15, 2001. See Record Document 1 at ¶ 5. Scroggins's employment was terminated on January 19, 2023. See id. at ¶ 6; Record Document 23-3. The reason cited for Scroggins's termination was violation of "LA R.S. 33:2500 A. (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner." Record Document 23-2. At the time of her termination, Scroggins held the rank of Fire Engineer. See id. at ¶ 5.

The SFD's Administrative Procedure requires that "Fit for Duty" members "must be able to perform 14 essential job tasks according to NFPA 1582 and designated functions

of their civil service position in a safe, effective, efficient, and productive manner." Record Document 23-4 at 1-2. Essential functions for a member include "regular and predictable attendance." Id. at 2. A member, before returning from sick leave for a post-traumatic stress injury ("PTSD" or "PTSI"), must submit a Sick Leave Certificate and be diagnosed by a psychiatrist or a psychologist. See id. at 7. The Administrative Procedure further provides that members should not establish patterns of absenteeism, as this may indicate abuse of sick leave. See id. at 10.

In April 2022, Clarence Reese ("Chief Reese") was promoted to Fire Chief. See Record Document 23-5 at 12. Shortly thereafter, Chief Reese began to investigate excessive absenteeism in the SFD. See id. at 12-16. Chief Reese testified that when a Fire Engineer is absent, the SFD has to fill the vacancy from an eligibility list, sometimes resulting in an employee being promoted or bumped up in class. See id. at 13-14. He further explained that in such situations, the SFD has to pay both the "out of class" employee and the absentee employee. Id. at 14. He also described instances where pulling someone from the list means he or she does not "necessarily have the certifications or experience behind the wheel of a fire truck," thereby creating the potential for increased accidents. Id. at 15-16. Chief Reese further expounded on his concerns for department morale and his duty to spend taxpayer dollars wisely, all in relation to excessive absenteeism and/or the abuse of sick leave. See id. at 15.

Based on the parameters of missing 20% of available work days within the last five years, Chief Reese identified seven individuals and he began his investigation. See id. at 13, 16. On December 2, 2022, Scroggins received notice of formal investigation from the SFD for "LA R.S. 33:2500 A. (1) Unwillingness or failure to perform the duties of her

position in a satisfactory manner." Record Document 23-6. The investigation revealed she was at the top of the extended sick leave list with the highest number of days absent. See Record Document 23-3 at 2. From June 4, 2018, to November 14, 2022, Scroggins missed 1,153 work days out of 1,779 available work days. See id. She maintained full compensation as a Fire Engineer during this time. See id.; see also Record Document 23-5 at 26. This equates to 384 shifts of 594 available shifts and totals 64.6% of work. See Record Document 23-3 at 2. On two occasions, Scroggins returned to work just prior to the 52 weeks/365-days Civil Service Law requirement under LA R.S. 33:1995. See id. The specific dates Scroggins was absent from work included:

- June 4, 2018, to June 6, 2018 (2 calendar days, 1 shift)
- June 12, 2018, to July 23, 2018 (41 calendar days, 13 shifts)
- September 17, 2018, to September 19, 2018 (2 calendar days, 1shift)
- January 15, 2019, to January 21, 2019 (6 calendar days, 3 shifts)
- February 16, 2019, to March 10, 2019 (22 calendar days, 9 shifts)
- March 28, 2019, to March 23, 2020 (361 calendar days, 118 shifts)
- July 25, 2020, to July 15, 2021 (355 calendar days, 118 shits)
- November 15, 2021, to July 13, 2022 (240 calendar days, 79 shifts)
- July 13, 2022, to November 14, 2022 (124 calendar days, 42 shifts)

Id.

Scroggins returned to work on December 19, 2022 and worked light duty – four hours a days, five days a week. See Record Document 1 at ¶ 6. This schedule was to continue until January 2023. See id. Under SFD policy, limited duty is not to exceed 90 days. See Record Document 23-3 at 3. SFD policy concerning sick leave and Family Medical Leave Act further provides that members with "a serious health condition . . . must successfully complete 'Fit for Duty' evaluations to return or remain in their positions." Record Document 23-4 at 2. Members must not be released back from sick leave unless

they can perform the essential functions of their assigned positions, including regular and predictable attendance. See id.

On January 5, 2023, Scroggins was sent notice that her Pre-Disciplinary Conference ("PDC") would be held on January 19, 2023. See Record Document 23-3 at 1. At the PDC, Scroggins provided "the reasons [she had] been off and the reasons they will not allow [her] to perform as a Fire Engineer." Id. at 3. Scroggins "raised concerns about being triggered while in emergency and non-emergency incidents." Id. In the Personnel Action Regarding the PDC, Chief Reese stated:

> During the PDC you did not provide adequate information to substantiate the 64.6% of work missed and failure to fill the Bona Fide Occupational Qualification (BFOQ) listed within the job description of Fire Engineer, as defined by the Shreveport Municipal Fire and Police Civil Board (Board).
>
> I will sustain the charges related to LA R.S. 33:2500, A., 1
>
> For this infraction, your employment with the Shreveport Fire Department is terminated effective January 19, 2023.

Id. (emphasis in original). At this time, Scroggins had a discrimination and retaliation lawsuit, which was filed in 2018, pending against the City. See Record Document 23-1.

Scroggins appealed her termination and received a full Civil Service Board ("the Board") hearing on April 10, 2014. See Record Document 23-5. The Board unanimously found that Chief Reese acted appropriately – "in good faith and for cause" – in disciplining Scroggins. Id. at 171-173. The Board reduced the discipline from termination to a 45-day suspension. See id. at 189. The Board's decision was appealed to the First Judicial District Court. See Record Document 23-9. The Board's decision was upheld. See id.

Scroggins filed the instant lawsuit on October 31, 2023. See Record Document 1. In her Complaint, Scroggins alleges a violation of the Americans with Disabilities Act ("ADA"), arguing her termination discriminated against her due to a disability by refusing to accommodate her. She further alleges that her termination was purposeful harassment and discrimination in retaliation for prior protected Title VII activity. Finally, Scroggins seeks an order declaring that the termination of her sick leave and of her employment were absolute nullities and directing the City to fully restore her immediately. This final claim appears to be grounded in procedural due process.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard.**

Rule 56(a) of the Federal Rules of Civil Procedure provides, "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53 (1986) (finding such a showing may be made by a defendant pointing to a factual deficiency in the record that makes it apparent that the non-movant has failed to meet its burden of production rather than requiring the movant to negate each element of the non-movant's claim affirmatively). When the movant is a defendant, it may also satisfy its burden by successfully negating an element of the nonmovant's claim. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 158, 90 S. Ct. 1598, 1609 (1970) (finding that when a movant attempted to negate a conspiracy element essential to the nonmovant's § 1983 claim, the burden was not met because the movant only foreclosed the possibility that an officer conspired with one of the several potential actors involved). "Genuine disputes of material

fact are present where a reasonable jury could find for the nonmoving party." Deshotel v. Wal-Mart La., LLC, 850 F.3d 742, 745 (5th Cir. 2017) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When a movant attempts to make such a showing, the court must construe all facts and inferences in the light most favorable to the non-movant. See id. This remains true even when a motion for summary judgment is unopposed, and the motion may not be granted solely because there is no opposition. See Swafford v. Experian Info. Solutions, Inc., No. 18-789, 2019 WL 5597310, at *3 (M.D. La. Aug. 27, 2019); see also Day v. Wells Fargo Bank Nat'l Ass'n, 768 F.3d 435, 435 (5th Cir. 2014) (quoting Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985)). Still, this Court is not required to search the record for materials in support of the nonmovant's claim. See Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 (5th Cir. 1992), opinion corrected Mar. 26, 1992.

## II.   ADA

The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112 (West). "An employee may use direct or circumstantial evidence, or both to establish a case of discrimination." Gosby v. Apache Indus. Servs., Inc., 30 F.4th 523, 525 (5th Cir. 2022). When the plaintiff has only circumstantial evidence, courts apply the McDonnell Douglas burden shifting framework. See id.

Under this framework, the employee must first show a *prima facie* case of discrimination. See id. at 525-26. To establish a *prima facie* discrimination claim under the ADA, the employee "must show that she was disabled, was qualified for the job, and was the subject of an adverse employment action because of her disability." Dupre v. Charter Behav. Health Sys. of Lafayette Inc., 242 F.3d 610, 613 (5th Cir. 2001). If a *prima facie* case is established, then the employer has the burden of setting forth a legitimate, non-discriminatory reason for the adverse employment action. See id. If the employer does so, the burden returns to the plaintiff "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." Cannon v. Jacobs Field Servs. N.A., Inc., 813 F.3d 586, 590 (5th Cir. 2016).

### III.     Retaliation.

The antiretaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 576–77 (5th Cir. 2020), as revised (Aug. 14, 2020) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56, 126 S.Ct. 2405 (2006)). When a retaliation case is based on circumstantial evidence, courts apply the McDonnell Douglas framework. See Brown, 969 F.3d at 577. Under this framework, the plaintiff has the burden of proving a *prima facie* case of retaliation by demonstrating (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. See McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S.Ct. 2517 (2013). However, the but-for standard does not apply at the *prima facie* case stage. See Garcia v. Prof'l Cont. Servs., Inc., 938 F.3d 236, 242 (5th Cir. 2019). Rather, "[a]t the *prima facie* case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." Id. at 243.

If the plaintiff establishes a *prima facie* case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. See Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. See id. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013).

### IV.     Procedural Due Process/Nullity.

When addressing a procedural due process claim, courts "must determine, first, whether the plaintiff has a property or liberty interest that cannot be taken away without procedural protections; and second, if so, how much process is due." Maurer v. Town of Indep., La., No. CIV.A. 13-5450, 2015 WL 893481, at *2 (E.D. La. Mar. 2, 2015) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Louisiana law requires that "every fireman in the employ of a municipality, parish or fire protection district . . .

shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks." La. Stat. Ann. § 33:1995 (West). Thus, it is undisputed that firemen have a property interest in continued employment and sick leave.

Louisiana law further requires that the Civil Service Board "conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension, or dismissal of the officer or employee." La. Stat. Ann. § 33:2537(5). An "employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may . . . demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action." La. Stat. Ann. § 33:2501(A). The board must give "the employee a hearing and investigation within thirty days after receipt of the written request." Id. Additionally, the employee has the right to appeal the board's decision if it is prejudicial to the employee. See La. Stat. Ann. § 33:2501(E)(1). The appeal must be filed in the court of original and unlimited jurisdiction of the parish wherein the board is domiciled. See id.

**V.      Analysis.**

    **A.      ADA Claim.**

The City has moved for summary judgment on Scroggins's ADA claim on the ground that Scroggins is not a qualified employee because she cannot perform the essential functions of the job with or without reasonable accommodation. In response, Scroggins submits that she has a qualifying medical condition under the ADA, she was working on light duty at the time of her termination, she had requested reasonable

accommodations multiple times, and the City failed to engage in the mandatory interactive process under the ADA.  See Record Document 27 at 2-3.

Scroggins has the burden of establishing a *prima facie* case of discrimination under the ADA.  To do this, she "must show that she was disabled, was qualified for the job, and was the subject of an adverse employment action because of her disability." Dupre, 242 F.3d at 613.  The City challenges Scroggins's qualification for the job; thus, for Scroggins's ADA claim to survive summary judgment, the evidence must establish at least a genuine dispute as to whether she was a "qualified individual" at the time of her termination.  Starts v. Mars Chocolate N. Am., L.L.C., 633 F. App'x 221, 224 (5th Cir. 2015) (citing EEOC v. LHC Grp., Inc., 773 F.3d 688, 695 (5th Cir.2014)); see also Reeves v. Dollar Gen. Corp., 180 F.3d 264, 1999 WL 274587, at *2 n. 2 (5th Cir. Apr.23, 1999) ("In assessing whether the plaintiff is a qualified individual, we focus on whether he or she was qualified at the time of his or her termination.").

Under the ADA, an individual is qualified for her job if, "with or without reasonable accommodation," the individual "can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Hypes on Behalf of Hypes v. First Com. Corp., 134 F.3d 721, 726 (5th Cir. 1998).  Essential job functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." Weber v. BNSF Ry. Co., 989 F.3d 320, 323 (5th Cir. 2021).  "To avoid summary judgment on whether [she] is a qualified individual, [Scroggins] needs to show 1) that [she] could perform the essential functions of the job in spite of [her] disability or 2) that a reasonable accommodation of [her] disability would have enabled [her] to

perform the essential functions of the job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).

In Weber, a train dispatcher was terminated due to his violation of the company's attendance guidelines. 989 F.3d at 321. The written employee attendance guidelines prohibited "excessive absenteeism." Id. The train dispatcher, who had epilepsy, filed suit, alleging regular worksite attendance was not an essential job function. Id. at 325. The Fifth Circuit noted "there is a general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." Id.; see also Valdez v. City of McAllen, Texas, No. 7:21-CV-00367, 2023 WL 1867485, at *4 (S.D. Tex. Feb. 9, 2023) ("[E]xcessive absences, even if related to a disability, are not protected activity under the ADA because they render the plaintiff to be 'not otherwise qualified' to perform her job functions."). The Fifth Circuit stated that courts should look to several factors to determine whether a function is essential, "such as the employer's judgment as to which functions are essential' and 'the consequences of not requiring the incumbent to perform the function.'" Weber, 989 F.3d at 325. The court further remarked that "the text of the ADA and its regulations require [courts] to give [the] greatest weight to the employer's judgment factor" and to "evaluate the employer's words alongside its policies and practices." Id.

The train dispatcher in Weber argued that regular attendance may not be an essential job function when an employer grants employees frequent leave or when the employer shows "managerial leniency." Id. at 326. Additionally, he maintained "that, with his proposed reasonable accommodations—medical leave . . . and excused absences when 'he became sleep-deprived and was a risk to safety'—he could have performed the

essential functions of his job, including regular attendance." Id. The Fifth Circuit first observed that the train dispatcher could not support his positions with any Fifth Circuit caselaw. See id. Additionally, even assuming the train dispatcher's proposed accommodations were reasonable, the court believed they would not have enabled him "to perform the essential function of regular attendance." Id. The court focused on the fact that neither the employee nor the employer "could determine in advance how often [the train dispatcher] would become sleep-deprived . . . and would need to take medical leave." Id. Thus, because the train dispatcher could not "show that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job," the Fifth Circuit held that he had failed to show that he was a qualified individual. Id.; see also Starts, 633 F. App'x at 224 (reasoning that employee was not a qualified individual because even considering reasonable accommodations, there was no evidence that employee would have been able to work a reduced schedule without having to leave due to back pain – which could, and did, occur at unpredictable times.); Hypes, 134 F.3d at 727 (holding that, even if plaintiff's absences were linked to his alleged disability, plaintiff was still not a "qualified individual" for ADA purposes because (1) attendance was an essential function of his job and (2) plaintiff failed to show that he could have attended work as required even with the requested accommodation).

In this case, the written policy of the SFD requires "regular and predictable attendance from every member." Record Document 23-4 at 1. The policy further provides that "members who do not strictly adhere to this policy are subject to disciplinary action." Id. More specifically, Provision 4.2 of the Fire Department Administrative Procedure provides, in pertinent part:

> In the event a member has a serious health condition or upon reasonable cause, he or she must successfully complete "Fit for Duty" evaluations to return or remain in their positions as ordered by the Fire Chief. Members shall not be released back from sick leave unless they can perform the essential functions of their assigned positions. Essential functions include but are not limited to:
>
> 4.2.1   Have regular and predictable attendance.

Id. at 2.  During the five-year investigative period, Scroggins had been absent for 64% of the available workdays.  See Record Document 23-3 at 2.  She worked full hours no longer than four months consecutively in the five-year period.  See id.  Chief Reese stated that Scroggins "did not provide adequate information to substantiate the 64.6% of work missed."  Id. at 3.

At the PDC on January 19, 2023, Scroggins raised concerns about being triggered while in emergency and non-emergency incidents.  See id.  This is also reflected in the Fitness for Duty Evaluation performed by Robert Clanton, Ph.D., Licensed Psychologist, on October 17, 2022.  See Record Document 23-8.  During the evaluation, Scroggins reported the following:  continued "sleep disturbance[s] and crying spells"; "continued concern that she will be triggered on a call by something that reminds her of her father's death and will become overwhelmed"; and "belief that she is not prepared for resumption of her full duties."  Id.  Dr. Clanton suggested that Scroggins needed to work on developing coping strategies for dealing with triggers that might occur during performance of her regular duties.  See id.  Additionally, during her hearing before the Board, Scroggins described ongoing pain from a work-related injury that would be "worse on some days than others" and lead to residual or "flare up" pain that caused her to miss work.  Record Document 23-5 at 106.

Scroggins has failed to demonstrate that she could perform the essential functions of a Fire Engineer in spite of her disability or that reasonable accommodations of her disability would have enabled her to perform the essential functions of her job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).  Given Scroggins's circumstances, any proposed accommodation would fail to reasonably enable her to perform the essential function of regular and predictable attendance.  As shown by the evidence adduced at the PDC, the Fitness for Duty evaluation, and the hearing before the Board, Scroggins has sleep disturbances, crying spells, triggers that might occur during performance of her regular duties, residual pain, and flare ups that may cause her to miss work.  These facts are very similar to those of the train dispatcher in Weber, where neither the employee nor the employer "could determine in advance how often [the train dispatcher] would become sleep-deprived . . . and would need to take medical leave." 989 F.3d at 326.  Like Weber, any proposed accommodation in this case would not be reasonable as neither Scroggins nor the SFD can determine in advance how often these events will occur and the need for medical leave.  Thus, because there is no evidence of a reasonable accommodation for absenteeism, Scroggins is not qualified to be Fire Engineer because she cannot perform the essential function of regular and predictable attendance.[1]

---

[1] Even if Scroggins could have established a *prima facie* case, her ADA claim would still fail under the burden-shifting framework.  The SFD has offered Scroggins's absenteeism as a legitimate, non-discriminatory reason for her termination.  "It is well established in the Fifth Circuit that 'an employee's failure to show up for work is a legitimate reason for firing her.'" Valdez, 2023 WL 1867485, at *3 (citing Trautman v. Time Warner Cable Tex., L.L.C., 756 F. App'x 421, 428 (5th Cir. 2018)).  This Court's review of the summary judgment records shows that Scroggins was not in "a place of satisfactory dependability." Id.  She had missed 1,153 work days out of 1,779 available work days and 384 shigts out

### B.     Retaliation Claim.

Scroggins alleges that her termination was purposeful harassment and discrimination in retaliation for prior protected Title VII activity, namely the discrimination and retaliation lawsuit she filed against the SFD that was pending at the time of her termination. She has the burden of first proving a *prima facie* case of retaliation by demonstrating (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. See McCoy, 492 F.3d 551, 556-57 (5th Cir. 2007). The City has moved for summary judgment in relation to the third requirement, that is, Scroggins cannot establish that there was a causal connection between the action of the SFD and the protected activity.

Retaliation claims must be proved according to traditional principles of but-for causation. See Nassar, 570 U.S. 338 at 360. However, this standard does not apply at the *prima facie* case stage. See Garcia, 938 F.3d at 242. Instead, Scroggins can meet her burden of causation by showing close enough timing between her protected activity, i.e., the filing of her lawsuit in 2018, and the investigation and termination at issue in this case. See id. at 243. Yet, temporal proximity and "timing allegations standing alone

---

of 594 available shifts. See Record Document 23-3 at 2. Her excessive absenteeism over a five year period is both a legitimate and non-discriminatory reason for termination.

As to pretext, Scroggins must show, by a preponderance of the evidence, that the SFD's reason—excessive absenteeism—was a mere pretext for discrimination. "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Id. Here, the summary judgment record does not evince disparate treatment. Scroggins has not and cannot present evidence of an employee with a higher number of absences who was not terminated. Scroggins's "subjective belief of discrimination cannot be the basis of judicial relief." Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 480 (5th Cir. 2016).

cannot defeat summary judgment." Sansone v. Jazz Casino Co., LLC, No. 20-30640, 2021 WL 3919249, at *2 (5th Cir. Sept. 1, 2021).

Scroggins contends that the 2022 investigation, the SFD's disregard for its own sick leave provisions, and her January 2023 termination were in retaliation for her 2018 lawsuit. There is an almost four year gap between the filing of the lawsuit and the investigation/termination. Additionally, Scroggins was not the only member to undergo investigation. See Record Document 23-5 at 16-17. As explained by Chief Reese, the SFD took action in response to incidents of excessive sick leave and had nothing to do with Scroggins's pending action. The investigation would have taken place regardless of Scroggins's protected activity under Title VII. Thus, Scroggins cannot establish a causal connection between her termination and her protected activity.[2]

**C.    Procedural Due Process/Nullity Claim.**

The City acknowledges that Scroggins had an interest that required procedural protection because she had a property interest in continued employment and sick leave. Additionally, the City conceded process was due, but submits that Scroggins was afforded all of the procedural safeguards required by Louisiana statutes. She was sent notice of an investigation on December 2, 2022 and was informed that the nature of the investigation was "LA R.S. 33:2500 A. (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner." Record Document 23-6. She was provided notice of her PDC, the nature of the investigation, and the date of the conference. See

---

[2] Scroggins's opposition (Record Document 27) focuses almost exclusively on her ADA claim. "A party's failure to brief an argument in response to a summary judgment motion waives that argument." Christmas v. Mentor ABI, LLC, No. CIV.A. 14-1117, 2015 WL 5093457, at *6 (E.D. La. Aug. 28, 2015).

Record Documents 23-2 and 23-3. After the results of the PDC, Scroggins appealed Chief Reese's decision to the Board. See Record Document 23-7. The Board upheld Chief's Reese's decision to discipline Scroggins, specifically finding he acted in good faith, but imposed a 45-day suspension instead. See Record Document 23-5 at 178-189. The City and Scroggins appealed and the First Judicial District Court affirmed the Board's ruling. See Record Document 23-9. In Moreau v. St. Landry Par. Fire Dist. No. 3, a former fire captain who had been terminated asserted, *inter alia*, a procedural due process claim disputing the notice given to him. 413 F. Supp. 3d 550, 568 (W.D. La. 2019), aff'd, 808 F. App'x 225 (5th Cir. 2020). The Fifth Circuit held that he was given all the procedural due process to which he was entitled because he was "told of all the bases of his possible termination, he had a hearing before the BOC, he had an opportunity to respond and present his side of the story, and he had available to him an appeal to the Civil Service Board." Id. The same is true as to Scroggins, as she was told of the reason for the investigation and termination, had a hearing before the Board, had an opportunity to respond and present her side of the story, and ultimately appealed to the state district court. Thus, the City is entitled to summary judgment on Scroggins's nullity/procedural due process claim as well.

The Court further notes that Scroggins failed to respond to the City's summary judgment motion as to her nullity/procedural due process claim. "A party's failure to brief an argument in response to a summary judgment motion waives that argument." Christmas, 2015 WL 5093457, at *6; see also Ledet v. Fleetwood Enters., Inc., 245 F.3d 791, 2000 WL 1910173, at *4 (5th Cir.2000) (citation omitted) (A plaintiff's "complete failure to raise any legal or factual issue regarding that claim in his Opposition [to

defendant's summary judgment motion] constitutes a waiver of the issue."). Therefore, Scroggins is deemed to have abandoned her nullity/procedural due process claim.

## CONCLUSION

For the reasons set forth above, the Court finds that Scroggins's ADA claim, Title VII retaliation claim, and nullity/procedural due process claim are without merit. Thus, the City's Motion for Summary Judgment (Record Document 23) be and is hereby **GRANTED**. All of Scroggins's claims be and are hereby **DISMISSED WITH PREJUDICE**. A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of October, 2025.

_____
United States District Judge